1   Thomas H. Casey – Bar No. 138264
    LAW OFFICES OF THOMAS H. CASEY, INC.
2   A PROFESSIONAL CORPORATION
    26400 La Alameda, Suite 210
3   Mission Viejo, CA 92691
    Telephone:  (949) 766-8787
4   Facsimile:   (949) 766-9896
    Email:        TomCasey@tomcaseylaw.com
5
    Attorney for Jason M. Rund,
6   Chapter 7 Bankruptcy Trustee

7                  UNITED STATES BANKRUPTCY COURT
                   NORTHERN DISTRICT OF CALIFORNIA
8                      SAN FRANCISCO DIVISION

9
    In re                                    Case No. 22-30028-DM
10  E. LYNN SCHOENMANN,
                                             Chapter 7
11            Debtor.
                                             **CHAPTER 7 TRUSTEE'S MOTION FOR**
12                                           **ORDER: (1) APPROVING SALE OF REAL**
                                             **PROPERTY LOCATED AT 4200 N. MILLER**
13                                           **ROAD, #117, SCOTTSDALE, AZ 85251**
                                             **PURSUANT TO 11 U.S.C. §§ 363(b), (h), (i),**
14                                           **and (j) AND PERSONAL PROPERTY; (2)**
                                             **APPROVING STIPULATION BETWEEN**
15                                           **THE TRUSTEE AND EXECUTOR STUART**
                                             **SCHOENMANN; (3) APPROVING**
16                                           **COMPENSATION OF REAL ESTATE**
                                             **BROKER; (4) APPROVING OVERBID**
17                                           **PROCEDURES; (5) APPROVING**
                                             **DISTRIBUTION OF SALE PROCEEDS; (6)**
18                                           **FOR A GOOD FAITH FINDING PURSUANT**
                                             **TO 11 U.S.C. §363(m); AND (7) WAIVER OF**
19                                           **THE STAY RULE 6004(h); MEMORANDUM**
                                             **OF POINTS AND AUTHORITIES;**
20                                           **CONCURRENTLY FILED DECLARATIONS**
                                             **OF CHAPTER 7 TRUSTEE JASON M.**
21                                           **RUND, CPA DONALD T. FIFE, BROKER**
                                             **BETH JO ZEITZER, REAL ESTATE AGENT**
22                                           **REBECCA MARVEL, AND PROPOSED**
                                             **BUYER NMW1, LLC IN SUPPORT**
23
                                             Hearing Date
24                                           Date:  March 29, 2024
                                             Time: 10:00 a.m.
25                                           Location: Telephonic / Videoconference
                                                       450 Golden Gate Ave., 16th Fl.
26                                                     Courtroom 17
                                                       San Francisco, CA 94102
27

28

## TABLE OF CONTENTS

Page

Summary ................................................................................................................................................ 1

Factual Background ............................................................................................................................... 1

The Estate's ..........................................................................................................................................

The ........................................................................................................................................................

The ........................................................................................................................................................

The ........................................................................................................................................................

Memorandum Of Points And Authorities ............................................................................................

      Appropriate ..........................................................................................................................................

Conclusion ............................................................................................................................................

# TABLE OF AUTHORITIES

Page(s)

**CASES**

) ...............................................................................................................................................

**STATUTES**

11 U.S.C. §363 ..........................................................................................................................

11 U.S.C. §363(b) .....................................................................................................................

11 U.S.C. §363(h) .....................................................................................................................

11 U.S.C. §363(m) ....................................................................................................................

**OTHER AUTHORITIES**

C.C.P. §7 ...................................................................................................................................

C.C.P. §7 ...................................................................................................................................

C.C.P. §7 ...................................................................................................................................

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE, AND ALL CREDITORS AND PARTIES IN INTEREST:**

Jason M. Rund, Chapter 7 Trustee ("Trustee") of the bankruptcy estate of E. Lynn Schoenmann ("Debtor"), respectfully submits his Motion for Order (1) Approving Sale of Real Property Located at 4200 N. Miller Rd., #117, Scottsdale, AZ 85251 Pursuant to 11 U.S.C. §§ 363(b), (h), (i), and (j) And Personal Property (2) Approving Stipulation Between the Trustee and Executor Stuart Schoenmann; (3) Approving Compensation of Real Estate Agents; (4) Approving Overbid Procedures; (5) Approving Distribution of Sale Proceeds; (6) For a Good Faith Finding Pursuant to 11 U.S.C. §363(m); and (7) Waiver of the Stay Rule 6004(h) ("Sale Motion") and, in support thereof, submits the following:

## SUMMARY.

Subject to Court approval, the Trustee has accepted an offer from NMW1, LLC ("Proposed Buyer") to purchase the residential, rental property located at 4200 N. Miller Road, #117, Scottsdale, AZ 85251 ("Scottsdale Condo") and personal property in the Scottsdale Condo for the total amount of $376,000.00, subject to overbid. In furtherance of the sale and to meet the requirements of Section 363 (h), (i), and (j) the Trustee requests the approval of the Trustee's proposed stipulation with the co-owners. In the Trustee's business judgment, the proposed sale of the Scottsdale Condo and the personal property for the amount of $376,000.00, subject to overbid, is for fair market value. By this Sale Motion, the Trustee requests approval of the sale of the Scottsdale Condo and personal property, and the overbid procedures, and authority to pay real property taxes, real estate agent commissions, normal closing costs, the Debtor's scheduled exemption claims in the personal property in the Scottsdale Condo, and reimbursement of the Trustee's Broker for out-of-pocket costs. As discussed more fully below, this Sale Motion is in the best interests of the estate and should be approved.

## FACTUAL BACKGROUND.

1.      The Debtor filed a skeletal, voluntary petition under Chapter 11 of the Bankruptcy Code on January 14, 2022 ("Petition Date").

2.	On March 20, 2023, the Court entered an Order Granting a motion to convert this case from chapter 11 to one under chapter 7 (Doc 278) ("Order").

3.	On September 7, 2023, the Office of the United States Trustee filed the Notice of Appointment of Trustee; Acceptance of Appointment as Trustee (Doc 397).

4.	On October 4, 2023, the Debtor filed Amended Schedules A/B and C (Doc 422) ("Amended Schedules").

5.	Pursuant to the Amended Schedules, the Debtor listed an interest in a free and clear rental real property located at 4200 N. Miller Road, #117, Scottsdale, AZ 85251 ("Scottsdale Condo") with a value of $456,200.00 plus certain personal property.

## THE PROPERTY TO BE SOLD

6.	The Scottsdale Condo is legally described as follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF MARICOPA, STATE OF ARIZONA, AND IS DESCRIBED AS FOLLOWS:

Lot 117, of THE HERITAGE SCOTTSDALE, according to Amended and Restated Declaration recorded at Document No. 2014-255632 and plat recorded in Book 291 of Maps, page 35 and Amendment recorded in Document No. 86-269169 and Affidavit of Change recorded in Document No. 86-565551, records of Maricopa County, Arizona;

TOGETHER WITH an undivided interest in and to the common elements as set forth in said Declaration and as designated on said Plat and any annexations thereto.

7.	Pursuant to the preliminary title report ("PTR"), title to the Scottsdale Condo is currently held as "E. Lynn Schoenmann, a widow and the heir or devisees of the Estate of Donn R. Schoenmann, deceased" and it is not subject to liens or encumbrances. A copy of the PTR is attached hereto as **Exhibit "2"** and incorporated herein by this reference.

### A. The Proposed Stipulation Between The Trustee and The Executor For The Estate Of Donn R. Schoenmann Should Be Approved.

8.	Pursuant to the PTR, on February 1, 2019 a Notice of Pendency of Action was recorded against the Scottsdale Condo by counsel for Stuart Schoenmann, Executor for the Estate of

2

Donn R. Schoenmann, Instrument No. 20190072271 ("Lis Pendens"). A copy of the recorded Lis Pendens is attached hereto as **Exhibit "3"** and incorporated herein by this reference.

9. The Trustee of the bankruptcy estate of E. Lynn Schoenmann and Executor Stuart Schoenmann (collectively, the "Parties") have entered into a stipulation that will, among other things, release the Lis Pendens to allow a sale of the Scottsdale Condo free and clear of liens and meet the terms of Sections 363(h), (i), and (j) ("Stipulation"). A copy of the Stipulation is attached hereto as **Exhibit "4"** and incorporated herein by this reference.

10. The Stipulation provides the following terms:

    a. The Parties agree to the Trustee's sale of the Scottsdale condo per Section 363(h) and the Personal Property to the proposed buyer;

    b. The Parties agree the Trustee may sell their 100% title and equitable interests in the Scottsdale Condo and:

        1. Partition in kind of the Scottsdale Condo among the estate and the Executor is impracticable;

        2. Sale of the estate's undivided interest in the Scottsdale Condo would realize significantly less for the estate than sale of the Scottsdale Condo free of the interests of such co-owners;

        3. The benefit to the estate of a sale of the Scottsdale Condo free of the interest of the Executor as co-owner outweighs the detriment, if any, to the Executor; and

        4. The Scottsdale Condo is not used in the production, transmission, or distribution, for sale, of electric energy or of natural of synthetic gas for heat, light, or power.

    c. The Executor waives his rights to purchase the Scottsdale Condo per Section 363(i);

    d. The purchase price for the Scottsdale Condo and the Personal Property is $376,000 subject to overbid;

Case: 22-30028    Doc# 499    Filed: 03/01/24    Entered: 03/01/24 15:11:33    Page 6 of 107

1        e.   Total real estate commissions are six percent (6%) of the gross sales price.

2        f.   Per Section 363(j) fifty percent (50%) of the net sale proceeds shall be disbursed

3             from escrow to Estate of Donn Schoenmann, Stuart Gordon Schoenmann

4             Executor, SMBC Manubank, account #7369 and fifty percent (50%) of the net

5             sale proceeds shall be disbursed from escrow to Trustee Jason M. Rund.  Net sale

6             proceeds are defined as the gross sales price after deducting real estate

7             commissions, escrow fees, closing costs, homeowner association fees, and real

8             property taxes;

9        g.  The Trustee on the one hand, and Executor Stuart Schoenmann on the other

10           hand, are responsible for the potential capital gains taxes, if any, from the sale of

11           their respective interests in the Scottsdale Condo and the Personal Property;

12        h.  Executor Stuart Gordon Schoenmann will release his Lis Pendens recorded

13           against the Scottsdale Condo;

14        i.   The Parties will prepare and execute all documents necessary to close escrow

15           and as reasonably requested by the Trustee;

16        j.   This Stipulation shall be included in the Trustee's motion to sell the Scottsdale

17           Condo and the Personal Property; and

18        k.  This Stipulation is subject to approval of the Bankruptcy Court. Absent an order

19           of the Bankruptcy Court approving this Stipulation it is of no force and effect.

20      11.    The Stipulation satisfies Section 363 (h), (i) and (j), supports the sale and should be

21 approved by the Court.

22               **B.  Personal Property In The Scottsdale Condo**

23      12.    With the exception of certain items not included in the sale, the Trustee's proposed

24 sale of the Scottsdale Condo includes the personal property ("Personal Property") located in and on

25 the property.

26      13.    Pursuant to the Debtor's Amended Schedules, the Debtor lists certain personal

27 property items located in the Scottsdale Condo with a total value of $730.00 as follows:

28

4

|     |                                          |           |
|-----|------------------------------------------|-----------|
| a.  | Misc. household goods and furnishings    | $475.00   |
| b.  | Electronics                              | $ 15.00   |
| c.  | Collectibles of value                    | $240.00   |

14.     The personal property items include, but are not limited to, used household goods and furnishings, electronics, and books, CD's, DVD's, and knick-knacks. Attached hereto as **Exhibit "5"** and incorporated herein by this reference are photos of the personal property in all rooms in the Scottsdale Condo consisting of the living room, kitchen, the two bedrooms, the two bathrooms, the laundry, the patio, and the exterior storage closet.

15.     By her Amended Schedule C filed October 4, 2023, the Debtor claimed exemptions totaling $730.00 in the Personal Property in the Scottsdale Condo as follows:

|     |                                          |                                              |
|-----|------------------------------------------|----------------------------------------------|
| a.  | Misc. household goods and furnishings    | 100% of FMV, up to any applicable exemption  |
| b.  | Electronics                              | 100% of FMV, up to any applicable exemption  |
| c.  | Collectibles of value                    | 100% of FMV, up to any applicable exemption  |

16.     The Trustee requests authority to pay the Debtor her claimed exemptions in the Personal Property totaling $730.00 from the bankruptcy estate's 50% of the net proceeds.

17.     The Trustee's Broker has reviewed all personal property contents of the Scottsdale Condo and has advised that the contents are dated, not of the highest quality, and of negligible value and likely have a value of no more than $730.00. *See*, concurrently filed Declaration of Rebecca Marvel of R.O.I. Properties, LLC in support.

18.     Certain personal property items in and around the Scottsdale Condo have been removed by the Trustee and will not be included in the sale.

## THE PROPOSED SALE OF THE SCOTTSDALE CONDO IS FOR FAIR MARKET VALUE.

19.     $376,000.00 represents fair market value for the Scottsdale Condo.

20.     By Order entered December 21, 2023 (Doc 480), the Trustee was authorized to employ R.O.I. Properties, LLC as his broker ("Broker") to market and sell the Scottsdale Condo.

5

21.     The Broker has been marketing the Scottsdale Condo since approximately December 28, 2023.

22.     As evidence that the Scottsdale Condo is being sold for fair market value, and as provided in the attached Declaration of broker Beth Jo Zeitzer the following describes the marketing efforts undertaken by the Broker to market and sell the Scottsdale Condo.

23.     Broker has personally shown the Scottsdale Condo approximately one (1) time and the Scottsdale Condo was shown by cooperating brokerages approximately nineteen (19) times.

24.     Broker began marketing the Scottsdale Condo and listed the property on the MLS on or about December 28, 2023.  In addition to the MLS, the Scottsdale Condo also appears on the R.O.I. Properties, LLC website; Redfin.com; Zillow.com; Trulia.com; Realtor.com. The Scottsdale Condo was featured on the Broker's vast social media platforms and received exposure through the Broker's expansive email marketing database of local brokerages who regularly sell real estate in the Scottsdale market.

25.     As a result of the above marketing efforts, Broker received an offer to purchase the Scottsdale Condo, which they presented to the Trustee.  At the time of the filing of this Sale Motion, the Offer received from Proposed Buyer, NMW1, LLC, for the negotiated price of $376,000 subject to overbid, is the highest offer the Trustee has received and was accepted by the Trustee subject to Court approval and overbids.

26.     As further evidence the Scottsdale Condo is being sold for fair market value, the Scottsdale Condo continues to be marketed for overbids up until noon March 26, 2024.

## SALE TERMS.

27.     Subject to Court approval, the Trustee proposes to sell the Scottsdale Condo to the Proposed Buyer for $376,000.00, subject to overbid (the "Offer"). An executed copy of the Residential Purchase Contract, Trustee's Addendum, and Counter Offer No. 1 (together, "Purchase Agreement") are attached hereto as collective **Exhibit "1"** and incorporated herein by reference. The Proposed Buyer has deposited $5,000.00 with the escrow company.

28.     The Offer for the purchase of the Scottsdale Condo provides in part as follows:

6

1           a)     The Proposed Buyer acknowledges that they are buying the Scottsdale Condo

2 "as is" and "where is" without warranties of any kind, express or implied, being given by the

3 Trustee or his agents concerning the condition of the Scottsdale Condo or the quality of title;

4           b)     The Proposed Buyer is aware the Offer is contingent upon Bankruptcy Court

5 approval;

6           c)     The Proposed Buyer has no contingencies in this transaction;

7           d)     Should the successful bidder or back-up bidder default and fail to perform

8 their obligations and timely close escrow, their respective Deposits shall become nonrefundable and

9 shall be forfeited by the bidder and retained by the Trustee as liquidated damages in the event of

10 default by bidder; and,

11           e)     Any and all disputes which involve in any manner the bankruptcy estate or

12 the Trustee arising from the Purchase Agreement shall be resolved only in the United States

13 Bankruptcy Court.

14     29.     In the Trustee's judgment, and as discussed further below, the sale of the Scottsdale

15 Condo should be approved.

16                   **THE REQUESTED OVERBID PROCEDURES SHOULD BE APPROVED.**

17     30.     In order to obtain the highest and best offer for the benefit of the creditors of the

18 estate, the Trustee proposes that the foregoing Offer be subject to overbid.

19     31.     Notice is being provided of the opportunity for overbidding to all interested parties

20 in this matter. In order to obtain the highest and best price, the Trustee established a procedure for

21 the presentation of overbids to purchase the Scottsdale Condo and Personal Property.  The

22 provisions for submitting an overbid and the auction thereon are presented in the Notice of

23 Opportunity for Overbid submitted herewith. The Trustee's Broker continues to actively market the

24 Scottsdale Condo for overbids.

25     32.     At the hearing on March 29, 2024, the Trustee will present to the Court for

26 confirmation the proposed sale to NMW1, LLC or, if a timely overbid has been presented, the

27 Trustee will ask that the Court conduct an auction and confirm the sale to the winner of the auction.

28

Case: 22-30028    Doc# 499    Filed: 03/01/24    Entered: 03/01/24 15:11:33    Page 10 of
107

33.     The foregoing procedures will provide for an orderly completion of the sale of the Scottsdale Condo by permitting all bidders to compete on similar terms, and will allow interested parties and the Court to compare competing bids in order to realize the highest benefit for the estate.

**PROPOSED COMPENSATION FOR THE TRUSTEE'S REAL ESTATE BROKER.**

34.     By Court order entered December 21, 2023, the Trustee was authorized to employ R.O.I. Properties, LLC as his real estate broker ("Broker") to market and sell the Scottsdale Condo. Attached as **Exhibit "6"** is a copy of the December 21, 2023 Order.

35.     Through this Sale Motion, the Trustee seeks to compensate his Broker in an amount not greater than six percent (6%) of the respective purchase price or applicable overbid, which shall be shared equally with the Proposed Buyer's broker, if any.

36.     The Trustee also seeks to compensate his Broker for out-of-pocket expenses including, but not limited to, rekeying the Scottsdale Condo.

**THE PROPOSED SALE BENEFITS THE ESTATE.**

37.     The sale of the Scottsdale Condo will benefit creditors because substantial sale proceeds will be realized for the benefit of creditors.  The estimated net sale proceeds are approximately calculated as follows:

8

| | Amount | Total |
|---|---|---|
| Sales Price | | $376,000 |
| Less: 8% costs of sale, including 6% real estate commissions and 2% closing costs | $30,080 | |
| **Net Proceeds** | | **$345,920** |
| Less: | | |
| Real Property Taxes (estimated) | $1,500 | |
| Real Estate Broker Out of Pocket Expenses (estimated) | $225 | |
| **Total Deductions** | | **$1,725** |
| | | |
| **Net Proceeds (100%)** | | **$344,195** |
| | | |
| **Total Net Proceeds to Executor (50%)** | | **$172,097.50** |
| **Net Proceeds to the Bankruptcy Estate (50%)** | | **$172,097.50** |
| Less: Debtor's Exemption in Personal Property | $730 | |
| **Total Net Proceeds to the Bankruptcy Estate** | | **$171,367.50** |

## TAX CONSEQUENCES OF SALE.

38.     The Trustee's accountant, Donald T. Fife, CPA, has determined that the sale of the Scottsdale Condo will not result in a capital gains tax. *See*, Declaration of Donald T. Fife.

## PROPOSED DISTRIBUTION OF SALE PROCEEDS.

39.     The Trustee seeks authority to distribute the net sale proceeds as follows:

a)  For normal escrow and closing costs, including current and past due property estate taxes, if any;

b)  To R.O.I. Properties, LLC, the Trustee's Broker an amount not greater than six per cent (6%) of the sale price, in accordance with the terms of the Order employing the Broker, subject to the Trustee's review and approval prior to distribution.  The commission will be divided equally between the Trustee's Broker and the agent for the Proposed Buyer;

9

c) To Executor Stuart Schoenmann, fifty percent (50%) of the Net Proceeds, after payment of real estate commissions, closing costs, homeowner association fees, and real property taxes by check made payable to "Estate of Donn Schoenmann, Stuart Gordon Schoenmann Executor, SMBC Manubank, account #7369" and forwarded to counsel of record, Miriam Hiser, The Law Office of Miriam Hiser, 550 Montgomery Street, Suite 650, San Francisco, CA 94111;

d) To the Debtor, $730.00 representing her claimed exemptions in the Personal Property located in the Scottsdale Condo; and,

e) To the Trustee, fifty percent (50%) of the Net Proceeds, after payment of real estate commissions, closing costs, homeowner association fees, real property taxes, and the Debtor's claimed exemption in the Personal Property located in the Scottsdale Condo.

**DETERMINATION OF GOOD FAITH PURCHASER.**

40. The Trustee further seeks an Order finding that the Proposed Buyer is a "good faith purchaser" within the context of 11 U.S.C. Section 363(m), such that any appeal of the Order granting this Motion, even if successful, will not affect the validity of the sale unless a stay pending appeal is obtained.

41. The Proposed Buyer participated in the negotiation of the Purchase Agreement. The Proposed Buyer is not an "insider" as that term is defined in 11 U.S.C. Section 101(31), in that they are not a relative or general partner of the Debtor, nor is the Debtor their partner, director, officer, or person in control of them.

42. There is no relationship between the Trustee and the Proposed Buyer, and the Proposed Buyer is not an insider of the Debtor. Thus, the proposed sale is an arms-length transaction and is in good faith.

10

## **WAIVER OF THE STAY IS APPROPRIATE.**

43.     The waiver of the stay imposed by Rule 6004(h) is appropriate.  Time is of the essence on the Purchase Agreement because the Proposed Buyer is an all cash buyer who can immediately complete the sale.  Accordingly, the Trustee requests that the Court waive the stay imposed by Rule 6004(h).

## **REQUESTED RELIEF**

For all of the foregoing reasons, the Trustee respectfully requests that this Court enter an Order:

1.   Granting the Trustee's Sale Motion;

2.   Authorizing the sale of the Scottsdale Condo by the Trustee, free and clear of all liens and encumbrances, legally described as follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF MARICOPA, STATE OF ARIZONA, AND IS DESCRIBED AS FOLLOWS:

Lot 117, of THE HERITAGE SCOTTSDALE, according to Amended and Restated Declaration recorded at Document No. 2014-255632 and plat recorded in Book 291 of Maps, page 35 and Amendment recorded in Document No. 86-269169 and Affidavit of Change recorded in Document No. 86-565551, records of Maricopa County, Arizona;

TOGETHER WITH an undivided interest in and to the common elements as set forth in said Declaration and as designated on said Plat and any annexations thereto.

and Personal Property to Proposed Buyer, NWM1, LLC pursuant to *Section 363(b), (h), (i), and (j)* in the amount of $376,000;

3.   Approving the Stipulation between the Trustee and Executor Stuart Schoenmann;

4.   Approving the overbid procedures;

5.   Approving the Broker's compensation;

6.   Authorizing the distributions of sale proceeds as follows:

a.   For normal escrow and closing costs, including current and past due real estate taxes, and homeowners associations fees, if any;

b.   To R.O.I. Properties, LLC, the Trustee's Real Estate Broker, an amount not greater than six per cent (6%) of the sale price, in accordance with the terms

11

of the Order employing the Broker, subject to the Trustee's review and approval prior to distribution.  The commission will be divided equally between the Trustee's Broker and the agent for the Proposed Buyer;

c.   The R.O.I. Properties, LLC, out-of-pocket expenses in the estimated amount of $225.00, subject to the Trustee's review and approval prior to distribution;

d.   Per Section 363(j), after payment of normal escrow and closing costs, including current and past due real estate taxes, and homeowners associations fees, if any, fifty percent (50%) of the net sale proceeds shall be disbursed from escrow to Executor Stuart Gordon Schoenmann, by check made payable to Estate of Donn Schoenmann, Stuart Gordon Schoenmann Executor, SMBC Manubank, account #7369 and forwarded to his counsel of record, Miriam Hiser, The Law Office of Miriam Hiser, 550 Montgomery Street, Suite 650, San Francisco, CA 94111;

e.   To the Debtor, a check made payable to "E. Lynn Schoenmann" in the amount $730.00 disbursed from escrow and forwarded to Brent Meyer, Meyer Law Group LLP 268 Bush Street, #3639, San Francisco, CA 94104;

f.   To the Trustee, after payment of normal escrow and closing costs, including current and past due real estate taxes, and homeowners associations fees, if any, and the Debtor's claimed exemption, fifty percent (50%) of the net sale proceeds;

7.   Determining that the Proposed Buyer is a "good faith purchaser" under 11 U.S.C. Section 363(m);

8.   Authorizing the Trustee to sign any and all documents necessary, and to undertake any non-material amendments and modifications necessary, to complete the sale to the highest qualified bidder without further notice, hearing, or Court order;

///

///

///

12

1        9.   Authorizing the Trustee to hold the net sale proceeds pending further order of the

2            Bankruptcy Court; and,

3        10. For such other and further relief as this Court deems just and proper.

4

5                           Respectfully submitted,

6    DATED:  March 1, 2024             LAW OFFICE OF THOMAS H. CASEY,
                                      INC. A PROFESSIONAL CORPORATION

7

8                                By:   /s/Thomas H. Casey

9                                   Thomas H. Casey, Attorney for Jason M.
                               Rund, Chapter 7 Trustee of the bankruptcy

10                                  estate of E. Lynn Schoenmann

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

## MEMORANDUM OF POINTS AND AUTHORITIES

The applicable legal authorities support the granting of the Trustee's Sale Motion.

## THE PROPOSED SALE IS A SOUND EXERCISE OF THE TRUSTEE'S BUSINESS JUDGMENT.

Section 363 provides that a trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

Courts generally hold that approval of a proposed sale of assets of a debtor under section 363 of the Bankruptcy Code outside the ordinary course of business and prior to the confirmation of a plan of reorganization is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the trustee or debtor-in-possession. *See, e.g.*, *Fin. Assoc. v. Loeffler (In re Equity Funding Corp. of Am.)*, 492 F.2d 793 (9th Cir. 1974), cert. denied, 419 U.S. 964 (1974) (sale of assets approved for "cause shown"); *240 N. Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 N. Brand Partners, Ltd.)*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) ("debtors who wish to utilize §363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification").

The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See, e.g., *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand."). As long as the sale appears to enhance a debtor's estate, court approval of a debtor's decision to sell should only be withheld  if  the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code. *In re Lajijani,* 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *In re WPRV-TV, Inc.,* 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have  much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.").

Applying §363, the Proposed Sale of the Scottsdale Condo should be approved. As set forth above, the Trustee has determined that the best method of maximizing the recovery to the

Case: 22-30028    Doc# 499    Filed: 03/01/24    Entered: 03/01/24 15:11:33    Page 17 of 107

Debtor's creditors would be through a prompt sale of the Scottsdale Condo. As assurance of value, the Proposed Sale will be tested through an overbid and auction process; it already represents the highest and best offer the Trustee has obtained after a period of active marketing. Consequently, the fairness and reasonableness of the consideration to be paid has been demonstrated by adequate "market exposure" and will be demonstrated by an open and fair auction process – the best means, under the circumstances, for establishing whether a fair and reasonable price is being paid.

### THE STIPULATION SHOULD BE APPROVED.

The proposed sale contemplates selling the entirety of the Scottsdale Condo, not merely a partial interest. Thus, Court approval of the Stipulation with co-owner Executor Stuart Schoenmann, as Executor of the Probate Estate of Donn Schoenmann demonstrating compliance with Section 363 (h), (i) and (j), is warranted. A copy of the Stipulation is attached hereto as **Exhibit "4."**

### THE WINNING BIDDER SHOULD BE AFFORDED PROTECTION UNDER § 363(m) AS A GOOD FAITH PURCHASER.

Section 363(m) protects a good-faith purchaser's interest in property purchased from the debtor's estate notwithstanding that the sale conducted under § 363(b) is later reversed or modified on appeal.

Specifically, § 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale were stayed pending appeal.

11 U.S.C. § 363(m).

Section 363(m) "codifies Congress's strong preference for finality and efficiency" in bankruptcy proceedings. *In re Energytec, Inc.* 739 F.3d 215, 218-19 (5th Cir. 2013). The Ninth Circuit has repeatedly held that, under § 363(m), "[w]hen a sale of assets is made to a good faith purchaser, it may not be modified or set aside unless the sale was stayed pending appeal." *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.).,* 163 F.3d 570, 576 (9th Cir. 1998); *In re Ewell*, 958 F.2d 276, 282 (9th Cir. 1992) ("Because the Buyer was a good faith purchaser, under

15

11 U.S.C. § 363(m) the sale may not be modified or set aside on appeal unless the sale was stayed pending appeal."); *Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*, 846 F.2d 1170, 1172 (9th Cir. 1988)

("Finality in bankruptcy has become the dominant rationale for our decisions […]").

The selection of the Proposed Buyer was the product of arms' length, good faith negotiations in a purchasing process, which will be tested by an opportunity for overbids and an auction. The Trustee intends to request at the Sale Hearing a finding that the Proposed Buyer or the winning bidder, as applicable, is a good faith purchaser entitled to the protections of § 363(m).

## **RELIEF FROM THE 14-DAY WAITING PERIOD UNDER RULE 6004(h) IS APPROPRIATE.**

Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Trustee requests that the Order be effective immediately by providing that the 14-day stay under Rule 6004(h) is waived.

The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Note to Fed. R. Bankr. P. 6004(h). Although Rule 6004(h) and the Advisory Committee Note are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, Collier suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." COLLIER ON BANKRUPTCY, ¶ 6004.11 (16th Ed. 2019). Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id. The Trustee hereby requests that the Court waive the 14-day stay periods under Rule 6004(h) or, in the alternative, if an objection to the Sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

///

///

## CONCLUSION.

For all of the foregoing reasons, the Trustee respectfully requests that this Court enter an Order:

      1. Granting the Trustee's Sale Motion;

      2. Authorizing the sale of the Scottsdale Condo by the Trustee, free and clear of all liens and encumbrances, legally described as follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF MARICOPA, STATE OF ARIZONA, AND IS DESCRIBED AS FOLLOWS:

Lot 117, of THE HERITAGE SCOTTSDALE, according to Amended and Restated Declaration recorded at Document No. 2014-255632 and plat recorded in Book 291 of Maps, page 35 and Amendment recorded in Document No. 86-269169 and Affidavit of Change recorded in Document No. 86-565551, records of Maricopa County, Arizona;

TOGETHER WITH an undivided interest in and to the common elements as set forth in said Declaration and as designated on said Plat and any annexations thereto.

and Personal Property to Proposed Buyer, NWM1, LLC pursuant to *Section 363(b), (h), (i), and (j)* in the amount of $376,000;

      3. Approving the Stipulation between the Trustee and Executor Stuart Schoenmann;

      4. Approving the overbid procedures;

      5. Approving the Broker's compensation;

      6. Authorizing the distributions of sale proceeds as follows:

          a. For normal escrow and closing costs, including current and past due real estate taxes, and homeowners associations fees, if any;

          b. To R.O.I. Properties, LLC, the Trustee's Real Estate Broker, an amount not greater than six per cent (6%) of the sale price, in accordance with the terms of the Order employing the Broker, subject to the Trustee's review and approval prior to distribution. The commission will be divided equally between the Trustee's Broker and the agent for the Proposed Buyer;

          c. The R.O.I. Properties, LLC, out-of-pocket expenses in the estimated amount of $225.00, subject to the Trustee's review and approval prior to distribution;

          d. Per Section 363(j), after payment of normal escrow and closing costs, including current and past due real estate taxes, and homeowners associations

17

fees, if any, fifty percent (50%) of the net sale proceeds shall be disbursed from escrow to Executor Stuart Gordon Schoenmann, by check made payable to Estate of Donn Schoenmann, Stuart Gordon Schoenmann Executor, SMBC Manubank, account #7369 and forwarded to and forwarded to his counsel of record, Miriam Hiser, The Law Office of Miriam Hiser, 550 Montgomery Street, Suite 650, San Francisco, CA 94111:

e. To the Debtor, a check made payable to "E. Lynn Schoenmann" in the amount $730.00 disbursed from escrow and forwarded to Brent Meyer, Meyer Law Group LLP 268 Bush Street, #3639, San Francisco, CA 94104;

f. To the Trustee, after payment of normal escrow and closing costs, including current and past due real estate taxes, and homeowners associations fees, if any, and the Debtor's claimed exemption, fifty percent (50%) of the net sale proceeds;

7. Determining that the Proposed Buyer is a "good faith purchaser" under 11 U.S.C. Section 363(m);

8. Authorizing the Trustee to sign any and all documents necessary, and to undertake any non-material amendments and modifications necessary, to complete the sale to the highest qualified bidder without further notice, hearing, or Court order;

9. Authorizing the Trustee to hold the net sale proceeds pending further order of the Bankruptcy Court; and,

10. For such other and further relief as this Court deems just and proper.


Respectfully submitted,

DATED:  March 1, 2024                      LAW OFFICE OF THOMAS H. CASEY, INC. A PROFESSIONAL CORPORATION


By:   /s/Thomas H. Casey
Thomas H. Casey, Attorney for Jason M. Rund, Chapter 7 Trustee of the bankruptcy estate of E. Lynn Schoenmann

18

# Exhibit 1

At DocuSign Envelope ID: 2B25A1AB-8BC9-4007-B7A8-306E2FBB574B

# BUYER ATTACHMENT



**ARIZONA**
*association of*
**REALTORS**®
REAL SOLUTIONS. REALTOR® SUCCESS.

*This attachment should be given to the Buyer prior to the submission of any offer and is not part of the Residential Resale Real Estate Purchase Contract's terms.*

 

# ATTENTION BUYER!

## *You are entering into a legally binding agreement.*

☐ **1. Read the entire contract *before* you sign it.**

☐ **2. Review the Residential Seller's Property Disclosure Statement (See Section 4a).**
- This information comes directly from the Seller.
- Investigate any blank spaces, unclear answers or any other information that is important to you.

☐ **3. Review the Inspection Paragraph (see Section 6a).**

If important to you, hire a qualified:
- General home inspector
- Heating/cooling inspector
- Mold inspector
- Pest inspector
- Pool inspector
- Roof inspector

Verify square footage (see Section 6b)
Verify the property is on sewer or septic (see Section 6f)

☐ **4. Confirm your ability to obtain insurance and insurability of the property during the inspection period with your insurance agent (see Sections 6a and 6e).**

☐ **5. Apply for your home loan now, if you have not done so already, and provide your lender with all requested information (see Section 2f).**

It is your responsibility to make sure that you and your lender follow the timeline requirements in Section 2, and that you and your lender deliver the necessary funds to escrow in sufficient time to allow escrow to close on the agreed upon date. Otherwise, the Seller may cancel the contract and you may be liable for damages.

☐ **6. Read the title commitment within five (5) days of receipt (see Section 3c).**

☐ **7. Read the CC&R's and all other governing documents within five (5) days of receipt (see Section 3c), especially if the home is in a homeowner's association.**

☐ **8. Conduct a thorough pre-closing walkthrough (see Section 6l). If the property is unacceptable, speak up. After the closing may be too late.**

You can obtain information through the Buyer's Advisory at www.aaronline.com/manage-risk/buyer-advisory-3/.

**Remember, you are urged to consult with an attorney, inspectors, and experts of your choice in any area of interest or concern in the transaction.** Be cautious about verbal representations, advertising claims, and information contained in a listing.***Verify anything important to you.***

### WARNING: *WIRE TRANSFER FRAUD*

Beware of wiring instructions sent via email. Cyber criminals may hack email accounts and send emails with fake wiring instructions. ***Always independently confirm wiring instructions prior to wiring any money.*** Do not email or transmit documents that show bank account numbers or personal identification information.

✔ *Buyer's Check List*

Case: 22-30028   Doc# 499   Filed: 03/01/24   Entered: 03/01/24 15:11:33   Page 23 of
107
Keren Montandon | Shawn Bellamak Realty | 702-327-5957 |    EXHIBIT 1  PAGE 19

TRANSACTIONS
TransactionDesk Edition

# RESIDENTIAL RESALE REAL ESTATE
# PURCHASE CONTRACT

Document updated:
**October 2022**



*The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.*

 

## 1. PROPERTY

**1a.** 1. **BUYER:** NMW1, LLC
  BUYER'S NAME(S)

2. **SELLER:** Jason M Rund - Trustee _____ or ☐ as identified in section 9c.
  SELLER'S NAME(S)

3. Buyer agrees to buy and Seller agrees to sell the real property with all improvements, fixtures, and appurtenances thereon
4. or incidental thereto, plus the personal property described herein (collectively the "Premises").

**1b.** 5. Premises Address: 4200 N MILLER Road _____ 117 Assessor's #: 173-52-083-A

6. City: Scottsdale County: Maricopa AZ, Zip Code: 85251

7. Legal Description: LOT 117 HERITAGE SCOTTSDALE MCR 029135

8. _____

9. _____

**1c.** 10. $ 376,000.00 Full Purchase Price, paid as outlined below

11. $ 3,800.00 Earnest Money

12. $ 372,200.00 Cash to be paid at close of escrow

13. $ _____

14. _____

15. _____

16. _____

17. Earnest Money is in the form of: ☐ Personal Check ☒ Wire Transfer ☐ Other _____
18. Upon acceptance of this offer, the Earnest Money, if any, will be deposited with: ☒ Escrow Company ☐ Broker's Trust Account.
19. **IF THIS IS AN ALL CASH SALE:** A Letter of Credit or a source of funds from a financial institution documenting the availability of
20. funds to close escrow *is* attached hereto.

**1d.** 21. **Close of Escrow:** Close of Escrow ("COE") shall occur when the deed is recorded at the appropriate county recorder's office.
22. Buyer and Seller shall comply with all terms and conditions of this Contract, execute and deliver to Escrow Company all closing
23. documents, and perform all other acts necessary in sufficient time to allow COE to occur on
24. TBD by court _____, 20_____ ("COE Date"). If Escrow Company or recorder's office is closed on the COE Date,
  MONTH      DAY      YEAR
25. COE shall occur on the next day that both are open for business.

26. Buyer shall deliver to Escrow Company a cashier's check, wired funds or other immediately available funds to pay any down
27. payment, additional deposits or Buyer's closing costs, and instruct the lender, if applicable, to deliver immediately available funds to
28. Escrow Company, in a sufficient amount and in sufficient time to allow COE to occur on the COE Date.

29. Buyer acknowledges that failure to pay the required closing funds by the scheduled COE, if not cured after a cure notice is delivered
30. pursuant to Section 7a, shall be construed as a material breach of this Contract and the Earnest Money shall be subject to forfeiture.

31. All funds are to be in U.S. currency.

**1e.** 32. **Possession:** Seller shall deliver possession, occupancy, existing keys and/or means to operate all locks, mailbox, security
33. system/alarms, and all common area facilities to Buyer at COE or ☐ _____.
34. Broker(s) recommend that the parties seek independent counsel from insurance, legal, tax, and accounting professionals regarding
35. the risks of pre-possession or post-possession of the Premises.

**1f.** 36. **Addenda Incorporated:** ☐ Additional Clause ☐ Buyer Contingency ☐ Domestic Water Well ☒ H.O.A.
37. ☐ Lead-Based Paint Disclosure ☐ Loan Assumption ☐ On-site Wastewater Treatment Facility ☐ Seller Financing ☐ Short Sale
38. ☐ Solar Addendum ☒ Other: Addendum pertaining to Estate Bankruptcy

>>

Residential Resale Real Estate Purchase Contract • Updated: October 2022
Copyright © 2022 Arizona Association of REALTORS®. All rights reserved.

<Initials SELLER | SELLER    Initials> Buyer | BUYER

Keren Montandon | Shawn Bellamak Realty, 702-327-5957

*Residential Resale Real Estate Purchase Contract* >>

**1g.** 39. **Fixtures and Personal Property:** For purposes of this Contract, fixtures shall mean property attached/affixed to the Premises.
40. Seller agrees that all existing: fixtures on the Premises, personal property specified herein, and means to operate fixtures and
41. property (i.e., remote controls) shall convey in this sale. Including the following:

42. • built-in appliances, ceiling fans and remotes • media antennas/satellite dishes (affixed)  • storage sheds
43. • central vacuum, hose, and attachments  • outdoor fountains and lighting  • storm windows and doors
44. • draperies and other window coverings  • outdoor landscaping (i.e., shrubbery,  • stoves: gas-log, pellet, wood-burning
45. • fireplace equipment (affixed)      trees and unpotted plants)      • timers (affixed)
46. • floor coverings (affixed)       • shutters and awnings        • towel, curtain and drapery rods
47. • free-standing range/oven       • smart home devices, access to which  • wall mounted TV brackets and hardware
48. • garage door openers and remotes     shall be transferred (i.e., video doorbell,    (excluding TVs)
49. • light fixtures            automated thermostat)        • water-misting systems
50. • mailbox             • speakers (flush-mounted)       • window and door screens, sun shades

51. If owned by Seller, the following items also are included in this sale:
52. • affixed alternate power systems serving  • in-ground pool and spa/hot tub equipment • security and/or fire systems and/or alarms
53.   the Premises (i.e., solar)       and covers (including any mechanical or  • water purification systems
54.                other cleaning systems)       • water softeners

55. **Additional existing personal property included in this sale** (if checked):

56. ☒ refrigerator (description): _____

57. ☒ washer (description): _____

58. ☒ dryer (description): _____

59. ☐ above-ground spa/hot tub including equipment, covers, and any mechanical or other cleaning systems (description):

60. _____

61. ☒ other personal property not otherwise addressed (description): furniture and affects as seen at showing on Feb 10, 2024

62. ☐ other personal property not otherwise addressed (description): _____

63. **Additional existing personal property included shall not be considered part of the Premises and shall be transferred with no**
64. **monetary value, and free and clear of all liens or encumbrances.**

65. Leased items shall **NOT** be included in this sale. Seller shall deliver notice of all leased items within three (3) days after Contract
66. acceptance. Buyer shall provide notice of any leased items disapproved within the Inspection Period or five (5) days after receipt of the
67. notice, whichever is later.

68. **IF THIS IS AN ALL CASH SALE:** Section 2 does not apply - go to Section 3.

## 2. FINANCING

**2a.** 69. **Pre-Qualification:** An AAR Pre-Qualification Form *is* attached hereto and incorporated herein by reference.

**2b.** 70. **Loan Contingency:** Buyer's obligation to complete this sale is contingent upon Buyer obtaining loan approval without Prior to
71. Document ("PTD") conditions no later than three (3) days prior to the COE Date for the loan described in the AAR Loan Status
72. Update ("LSU") form or the AAR Pre-Qualification Form, whichever is delivered later. **No later than three (3) days prior to the**
73. **COE Date, Buyer shall either: (i) sign all loan documents; or (ii) deliver to Seller or Escrow Company notice of loan**
74. **approval without PTD conditions AND date(s) of receipt of Closing Disclosure(s) from Lender; or (iii) deliver to Seller or**
75. **Escrow Company notice of inability to obtain loan approval without PTD conditions.**

**2c.** 76. **Unfulfilled Loan Contingency:** This Contract shall be cancelled and Buyer shall be entitled to a return of the Earnest Money if
77. after diligent and good faith effort, Buyer is unable to obtain loan approval without PTD conditions and delivers notice of inability
78. to obtain loan approval no later than three (3) days prior to the COE Date. If Buyer fails to deliver such notice, Seller may issue a
79. cure notice to Buyer as required by Section 7a and, in the event of Buyer's breach, Seller shall be entitled to the Earnest Money
80. pursuant to Section 7b. If, prior to expiration of any Cure Period, Buyer delivers notice of inability to obtain loan approval, Buyer
81. shall be entitled to a return of the Earnest Money. Buyer acknowledges that prepaid items paid separately from the Earnest Money
82. are not refundable.

**2d.** 83. **Interest Rate / Necessary Funds:** Buyer agrees that (i) the inability to obtain loan approval due to the failure to lock the interest
84. rate and "points" by separate written agreement with the lender; or (ii) the failure to have the down payment or other funds
85. due from Buyer necessary to obtain the loan approval without conditions and close this transaction is not an unfulfilled loan
86. contingency.

**2e.** 87. **Loan Status Update:** Buyer shall deliver to Seller the LSU, with at a minimum lines 1-40 completed, describing the current status
88. of the Buyer's proposed loan within ten (10) days after Contract acceptance and instruct lender to provide an updated LSU to
89. Broker(s) and Seller upon request.

>>

Residential Resale Real Estate Purchase Contract • Updated: October 2022
Copyright © 2022 Arizona Association of REALTORS®. All rights reserved.

Case 22-30028   Doc# 499   Filed: 03/01/24   Entered: 03/01/24 15:11:33   Page 25 of
107
Keren Montandon | Shawn Bellamak Realty, 702-327-5957              Page 2 of 10

EXHIBIT 1 PAGE 21

*Residential Resale Real Estate Purchase Contract* >>

**2f.** 90. **Loan Application:** Unless previously completed, within three (3) days after Contract acceptance Buyer shall (i) provide lender
91. with Buyer's name, income, social security number, Premises address, estimate of value of the Premises, and mortgage loan
92. amount sought; and (ii) grant lender permission to access Buyer's Trimerged Residential Credit Report.

**2g.** 93. **Loan Processing During Escrow:** Within ten (10) days after receipt of the **Loan Estimate** Buyer shall (i) provide lender with
94. notice of intent to proceed with the loan transaction in a manner satisfactory to lender; and (ii) provide to lender all requested
95. signed disclosures and the documentation listed in the LSU at lines 32-35. Buyer agrees to diligently work to obtain the loan and
96. will promptly provide the lender with all additional documentation requested.

**2h.** 97. **Type of Financing:** ☐ Conventional ☐ FHA ☐ VA ☐ USDA ☐ Assumption ☐ Seller Carryback ☒ CASH
98. (If financing is to be other than new financing, see attached addendum.)

**2i.** 99. **Loan Costs:** All costs of obtaining the loan shall be paid by Buyer, unless otherwise provided for herein.

**2j.** 100. **Seller Concessions (if any):** In addition to the other costs Seller has agreed to pay herein, Seller will credit Buyer _____%
101. of the Purchase Price **OR** $ _____ (Seller Concessions). The Seller Concessions may be used for any Buyer fee, cost,
102. charge, or expenditure to the extent allowed by Buyer's lender.

**2k.** 103. **Changes:** Buyer shall immediately notify Seller of any changes in the loan program, financing terms, or lender described in the
104. Pre-Qualification Form attached hereto or LSU provided within ten (10) days after Contract acceptance and shall only make any
105. such changes without the prior written consent of Seller if such changes do not adversely affect Buyer's ability to obtain loan
106. approval without PTD conditions, increase Seller's closing costs, or delay COE.

**2l.** 107. **Appraisal Contingency:** Buyer's obligation to complete this sale is contingent upon an appraisal of the Premises acceptable to
108. lender for at least the purchase price. If the Premises fail to appraise for the purchase price in any appraisal required by lender,
109. Buyer has five (5) days after notice of the appraised value to cancel this Contract and receive a return of the Earnest Money or
110. the appraisal contingency shall be waived, unless otherwise prohibited by federal law.

**2m.** 111. **Appraisal Cost(s):** Initial appraisal fee shall be paid by ☐ Buyer ☐ Seller ☐ Other _____
112. at the time payment is required by lender and is non-refundable. If Seller is paying the initial appraisal fee, the fee ☐ will ☐ will not
113. be applied against Seller's Concessions at COE, if applicable. If Buyer's lender requires an updated appraisal prior to COE, it will be
114. performed at Buyer's expense. Any appraiser/lender required inspection cost(s) shall be paid for by Buyer.

## 3. TITLE AND ESCROW

**3a.** 115. **Escrow:** This Contract shall be used as escrow instructions. The Escrow Company employed by the parties to carry out the
116. terms of this Contract shall be:

117. Pioneer Title Agency / Jennifer Siverio
_____
ESCROW/TITLE COMPANY

118. _____
ADDRESS                                          CITY                      STATE      ZIP

119. jennifer.severio@ptaaaz.com
_____
EMAIL                                            PHONE                     FAX

**3b.** 120. **Title and Vesting:** Buyer will take title as determined before COE. If Buyer is married and intends to take title as his/her sole
121. and separate property, a disclaimer deed may be required. Taking title may have significant legal, estate planning and tax
122. consequences. Buyer should obtain independent legal and tax advice.

**3c.** 123. **Title Commitment and Title Insurance:** Escrow Company is hereby instructed to obtain and deliver to Buyer and Seller directly,
124. addressed pursuant to 8s and 9c or as otherwise provided, a Commitment for Title Insurance together with complete and legible copies
125. of all documents that will remain as exceptions to Buyer's policy of Title Insurance ("Title Commitment"), including but not limited to
126. Conditions, Covenants and Restrictions ("CC&Rs"); deed restrictions; and easements. Buyer shall have five (5) days after receipt of the
127. Title Commitment and after receipt of notice of any subsequent exceptions to provide notice to Seller of any items disapproved. Seller
128. shall convey title by warranty deed, subject to existing taxes, assessments, covenants, conditions, restrictions, rights of way, easements
129. and all other matters of record. Buyer shall be provided at Seller's expense an American Land Title Association ("ALTA") Homeowner's
130. Title Insurance Policy or, if not available, a Standard Owner's Title Insurance Policy, showing title vested in Buyer. Buyer may acquire
131. extended coverage at Buyer's own additional expense. If applicable, Buyer shall pay the cost of obtaining the ALTA Lender Title
132. Insurance Policy.

DS

MMR                     Residential Resale Real Estate Purchase Contract • Updated: October 2022
              <Initials    Copyright © 2022 Arizona Association of REALTORS®. All rights reserved.    Initials>    JRN

SELLER   SELLER                                    Page 3 of 10                                          BUYER   BUYER

*Residential Resale Real Estate Purchase Contract* >>

**3d.** 133. **Additional Instructions:** (i) Escrow Company shall promptly furnish notice of pending sale that contains the name and address of
134. Buyer to any homeowner's association(s) in which the Premises are located. (ii) If Escrow Company is also acting as the title agency
135. but is not the title insurer issuing the title insurance policy, Escrow Company shall deliver to Buyer and Seller, upon deposit of funds, a
136. closing protection letter from the title insurer indemnifying Buyer and Seller for any losses due to fraudulent acts or breach of escrow
137. instructions by Escrow Company. (iii) All documents necessary to close this transaction shall be executed promptly by Seller and
138. Buyer in the standard form used by Escrow Company. Escrow Company shall modify such documents to the extent necessary to be
139. consistent with this Contract. (iv) Escrow Company fees, unless otherwise stated herein, shall be allocated equally between Seller and
140. Buyer. (v) Escrow Company shall send to all parties and Broker(s) copies of all notices and communications directed to Seller, Buyer
141. and Broker(s). (vi) Escrow Company shall provide Broker(s) access to escrowed materials and information regarding the escrow. (vii)
142. If an Affidavit of Disclosure is provided, Escrow Company shall record the Affidavit at COE.

**3e.** 143. **Tax Prorations:** Real property taxes payable by Seller shall be prorated to COE based upon the latest tax information available.

**3f.** 144. **Release of Earnest Money:** In the event of a dispute between Buyer and Seller regarding any Earnest Money deposited with
145. Escrow Company, Buyer and Seller authorize Escrow Company to release the Earnest Money pursuant to the terms and conditions
146. of this Contract in its sole and absolute discretion. Buyer and Seller agree to hold harmless and indemnify Escrow Company against
147. any claim, action or lawsuit of any kind, and from any loss, judgment, or expense, including costs and attorney fees, arising from or
148. relating in any way to the release of the Earnest Money.

**3g.** 149. **Prorations of Assessments and Fees:** All assessments and fees that are not a lien as of COE, including homeowner's
150. association fees, rents, irrigation fees, and, if assumed, insurance premiums, interest on assessments, interest on encumbrances,
151. and service contracts, shall be prorated as of COE or ☐ Other: _____

**3h.** 152. **Assessment Liens:** The amount of any assessment lien or bond including those charged by a special taxing district, such as a
153. Community Facilities District, shall be prorated as of COE.

## 4. DISCLOSURE

**4a.** 154. **Seller's Property Disclosure Statement ("SPDS"):** Seller shall deliver a completed AAR Residential SPDS form to Buyer
155. within three (3) days after Contract acceptance. Buyer shall provide notice of any SPDS items disapproved within the Inspection
156. Period or five (5) days after receipt of the SPDS, whichever is later.

**4b.** 157. **Insurance Claims History:** Seller shall deliver to Buyer a written five (5) year insurance claims history regarding the Premises (or a
158. claims history for the length of time Seller has owned the Premises if less than five (5) years) from Seller's insurance company or an
159. insurance support organization or consumer reporting agency, or if unavailable from these sources, from Seller, within five (5) days
160. after Contract acceptance. Buyer shall provide notice of any items disapproved within the Inspection Period or five (5) days after
161. receipt of the claims history, whichever is later.

**4c.** 162. **Foreign Sellers:** The Foreign Investment in Real Property Tax Act ("FIRPTA") is applicable if Seller is a non-resident alien
163. individual, foreign corporation, foreign partnership, foreign trust, or foreign estate ("Foreign Person"). Seller agrees to complete,
164. sign, and deliver to Escrow Company a certificate indicating whether Seller is a Foreign Person. FIRPTA requires that a foreign
165. seller may have federal income taxes up to 15% of the purchase price withheld, unless an exception applies. Seller is responsible
166. for obtaining independent legal and tax advice.

**4d.** 167. **Lead-Based Paint Disclosure:** If the Premises were built prior to 1978, Seller shall: (i) notify Buyer of any known lead-based paint
168. ("LBP") or LBP hazards in the Premises; (ii) provide Buyer with any LBP risk assessments or inspections of the Premises in Seller's
169. possession; (iii) provide Buyer with the Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards, and any
170. report, records, pamphlets, and/or other materials referenced therein, including the pamphlet "Protect Your Family from Lead in Your
171. Home" (collectively "LBP Information"). Buyer shall return a signed copy of the Disclosure of Information on Lead-Based Paint and
172. Lead-Based Paint Hazards to Seller prior to COE.

173. ☐ LBP Information was provided prior to Contract acceptance and Buyer acknowledges the opportunity to conduct LBP risk
174. assessments or inspections during Inspection Period.

175. ☐ Seller shall provide LBP Information within five (5) days after Contract acceptance. Buyer may within ten (10) days

176. or _____ days after receipt of the LBP Information conduct or obtain a risk assessment or inspection of the Premises for the
177. presence of LBP or LBP hazards ("Assessment Period"). Buyer may within five (5) days after receipt of the LBP Information or five
178. (5) days after expiration of the Assessment Period cancel this Contract.

179. Buyer is further advised to use certified contractors to perform renovation, repair or painting projects that disturb lead-based paint in
180. residential properties built before 1978 and to follow specific work practices to prevent lead contamination.

181.  If Premises were constructed prior to 1978, **(BUYER'S INITIALS REQUIRED)** _____ _____
                                                                                       BUYER      BUYER

182.  If Premises were constructed in 1978 or later, **(BUYER'S INITIALS REQUIRED)** _____ _____
                                                                                       BUYER      BUYER

Residential Resale Real Estate Purchase Contract • Updated: October 2022
Copyright © 2022 Arizona Association of REALTORS®. All rights reserved.

SELLER | SELLER   <Initials                                        Initials>        BUYER | BUYER

Page 4 of 10

*Residential Resale Real Estate Purchase Contract* >>

**4e.** 183. **Affidavit of Disclosure:** If the Premises are located in an unincorporated area of the county, and five (5) or fewer parcels of
184. property other than subdivided property are being transferred, Seller shall deliver a completed Affidavit of Disclosure in the form
185. required by law to Buyer within five (5) days after Contract acceptance. Buyer shall provide notice of any Affidavit of Disclosure items
186. disapproved within the Inspection Period or five (5) days after receipt of the Affidavit of Disclosure, whichever is later.

**4f.** 187. **Changes During Escrow:** Seller shall immediately notify Buyer of any changes in the Premises or disclosures made herein,
188. in the SPDS, or otherwise. Such notice shall be considered an update of the SPDS. Unless Seller is already obligated by this
189. Contract or any amendments hereto, to correct or repair the changed item disclosed, Buyer shall be allowed five (5) days after
190. delivery of such notice to provide notice of disapproval to Seller.

## 5. WARRANTIES

**5a.** 191. **Condition of Premises: BUYER AND SELLER AGREE THE PREMISES ARE BEING SOLD IN ITS PRESENT PHYSICAL**
192. **CONDITION AS OF THE DATE OF CONTRACT ACCEPTANCE.** Seller makes no warranty to Buyer, either express or implied,
193. as to the condition, zoning, or fitness for any particular use or purpose of the Premises. However, Seller shall maintain and repair
194. the Premises so that at the earlier of possession or COE: (i) the Premises, including all personal property included in the sale, will
195. be in substantially the same condition as on the date of Contract acceptance; and (ii) all personal property not included in the sale
196. and debris will be removed from the Premises. Buyer is advised to conduct independent inspections and investigations regarding
197. the Premises within the Inspection Period as specified in Section 6a. Buyer and Seller acknowledge and understand they may,
198. but are not obligated to, engage in negotiations or address repairs/improvements to the Premises. Any/all agreed upon repairs/
199. improvements will be addressed pursuant to Section 6j.

**5b.** 200. **Warranties that Survive Closing:** Seller warrants that Seller has disclosed to Buyer and Broker(s) all material latent defects and
201. any information concerning the Premises known to Seller, excluding opinions of value, which materially and adversely affect the
202. consideration to be paid by Buyer. Prior to COE, Seller warrants that payment in full will have been made for all labor, professional
203. services, materials, machinery, fixtures, or tools furnished within the 150 days immediately preceding COE in connection with the
204. construction, alteration, or repair of any structure on or improvement to the Premises. Seller warrants that the information regarding
205. connection to a sewer system or on-site wastewater treatment facility (conventional septic or alternative) is correct to the best of
206. Seller's knowledge.

**5c.** 207. **Buyer Warranties:** Buyer warrants that Buyer has disclosed to Seller any information that may materially and adversely affect
208. Buyer's ability to close escrow or complete the obligations of this Contract. At the earlier of possession of the Premises or COE,
209. Buyer warrants to Seller that Buyer has conducted all desired independent inspections and investigations and accepts the Premises.
210. **Buyer warrants that Buyer is not relying on any verbal representations concerning the Premises except disclosed as follows:**

211. _____
212. _____

## 6. DUE DILIGENCE

**6a.** 213. **Inspection Period:** Buyer's Inspection Period shall be ten (10) days or ____7____ days after Contract acceptance. During the
214. Inspection Period Buyer, at Buyer's expense, shall:  (i) conduct all desired physical, environmental, and other types of inspections
215. and investigations to determine the value and condition of the Premises; (ii) make inquiries and consult government agencies,
216. lenders, insurance agents, architects, and other appropriate persons and entities concerning the suitability of the Premises and
217. the surrounding area; (iii) investigate applicable building, zoning, fire, health, and safety codes to determine any potential hazards,
218. violations or defects in the Premises; and (iv) verify any material multiple listing service ("MLS") information. If the presence of
219. sex offenders in the vicinity or the occurrence of a disease, natural death, suicide, homicide or other crime on or in the vicinity is
220. a material matter to Buyer, it must be investigated by Buyer during the Inspection Period. Buyer shall keep the Premises free and
221. clear of liens, shall indemnify and hold Seller harmless from all liability, claims, demands, damages, and costs, and shall repair all
222. damages arising from the inspections. Buyer shall provide Seller and Broker(s) upon receipt, at no cost, copies of all inspection
223. reports concerning the Premises obtained by Buyer. Buyer is advised to consult the Arizona Department of Real Estate *Buyer*
224. *Advisory* to assist in Buyer's due diligence inspections and investigations.

**6b.** 225. **Square Footage: BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE PREMISES, BOTH THE**
226. **REAL PROPERTY (LAND) AND IMPROVEMENTS THEREON, IS APPROXIMATE. IF SQUARE FOOTAGE IS A MATERIAL**
227. **MATTER TO BUYER, IT MUST BE INVESTIGATED DURING THE INSPECTION PERIOD.**

**6c.** 228. **Wood-Destroying Organism or Insect Inspection: IF CURRENT OR PAST WOOD-DESTROYING ORGANISMS OR INSECTS**
229. **(SUCH AS TERMITES) ARE A MATERIAL MATTER TO BUYER, THESE ISSUES MUST BE INVESTIGATED DURING THE**
230. **INSPECTION PERIOD.** Buyer shall order and pay for all wood-destroying organism or insect inspections performed during the
231. Inspection Period. If the lender requires an updated Wood-Destroying Organism or Insect Inspection Report prior to COE, it will be
232. performed at Buyer's expense.

**6d.** 233. **Flood Hazard: FLOOD HAZARD DESIGNATIONS OR THE COST OF FLOOD HAZARD INSURANCE SHALL BE**
234. **DETERMINED BY BUYER DURING THE INSPECTION PERIOD.** If the Premises are situated in an area identified as having
235. any special flood hazards by any governmental entity, **THE LENDER MAY REQUIRE THE PURCHASE OF FLOOD HAZARD**
236. **INSURANCE.** Special flood hazards may also affect the ability to encumber or improve the Premises.

>>

┌─ DS
│  *MMR*                         Residential Resale Real Estate Purchase Contract • Updated: October 2022
│           <Initials          Copyright © 2022 Arizona Association of REALTORS®. All rights reserved.      Initials>    *RM*

**SELLER** | **SELLER**                                                                                        **BUYER** | **BUYER**
Case 2:22-30028    Doc# 499    Filed: 03/01/24    Entered: 03/01/24 15:11:33    Page 28 of
Keren Montandon    Shawn Bellamak Realty    702-327-5957    107

EXHIBIT 1  PAGE 24

**Residential Resale Real Estate Purchase Contract** >>

**6e.** 237. **Insurance: IF HOMEOWNER'S INSURANCE IS A MATERIAL MATTER TO BUYER, BUYER SHALL APPLY FOR AND**
238. **OBTAIN WRITTEN CONFIRMATION OF THE AVAILABILITY AND COST OF HOMEOWNER'S INSURANCE FOR THE**
239. **PREMISES FROM BUYER'S INSURANCE COMPANY DURING THE INSPECTION PERIOD.** Buyer understands that any
240. homeowner's, fire, casualty, flood or other insurance desired by Buyer or required by lender should be in place at COE.

**6f.** 241. **Sewer or On-site Wastewater Treatment System:** The Premises are connected to a:

242. ☒ sewer system ☐ conventional septic system ☐ alternative system

243. **IF A SEWER CONNECTION IS A MATERIAL MATTER TO BUYER, IT MUST BE INVESTIGATED DURING THE INSPECTION**
244. **PERIOD.** If the Premises are served by a conventional septic or alternative system, the AAR On-site Wastewater Treatment Facility
245. Addendum is incorporated herein by reference.

246. **(BUYER'S INITIALS REQUIRED)** _____  _____
       BUYER            BUYER

**6g.** 247. **Swimming Pool Barrier Regulations:** During the Inspection Period, Buyer agrees to investigate all applicable state, county, and
248. municipal Swimming Pool barrier regulations and agrees to comply with and pay all costs of compliance with said regulations prior to
249. occupying the Premises, unless otherwise agreed in writing. If the Premises contains a Swimming Pool, Buyer acknowledges receipt
250. of the Arizona Department of Health Services approved private pool safety notice.

251. **(BUYER'S INITIALS REQUIRED)** _____  _____
       BUYER            BUYER

**6h.** 252. **BUYER ACKNOWLEDGMENT: BUYER RECOGNIZES, ACKNOWLEDGES, AND AGREES THAT BROKER(S) ARE NOT**
253. **QUALIFIED, NOR LICENSED, TO CONDUCT DUE DILIGENCE WITH RESPECT TO THE PREMISES OR THE SURROUNDING**
254. **AREA. BUYER IS INSTRUCTED TO CONSULT WITH QUALIFIED LICENSED PROFESSIONALS TO ASSIST IN BUYER'S**
255. **DUE DILIGENCE EFFORTS. BECAUSE CONDUCTING DUE DILIGENCE WITH RESPECT TO THE PREMISES AND THE**
256. **SURROUNDING AREA IS BEYOND THE SCOPE OF BROKER'S EXPERTISE AND LICENSING, BUYER EXPRESSLY**
257. **RELEASES AND HOLDS HARMLESS BROKER(S) FROM LIABILITY FOR ANY DEFECTS OR CONDITIONS THAT COULD**
258. **HAVE BEEN DISCOVERED BY INSPECTION OR INVESTIGATION.**

259. **(BUYER'S INITIALS REQUIRED)** _____  _____
       BUYER            BUYER

**6i.** 260. **Inspection Period Notice:** Prior to expiration of the Inspection Period, Buyer shall deliver to Seller a signed notice of any items
261. disapproved. AAR's Buyer's Inspection Notice and Seller's Response form is available for this purpose. Buyer shall conduct all
262. desired inspections and investigations prior to delivering such notice to Seller and all Inspection Period items disapproved shall be
263. provided in a single notice.

**6j.** 264. **Buyer Disapproval:** If Buyer, in Buyer's sole discretion, disapproves of items as allowed herein, Buyer shall deliver to Seller a
265. signed notice of the items disapproved and state in the notice that Buyer elects to either:
266.    (1) Immediately cancel this Contract, in which case:

267.       (a) If Buyer's notice specifies disapproval of items as allowed herein, the Earnest Money shall be released to Buyer.

268.       (b) If Buyer's notice fails to specify items disapproved as allowed herein, the cancellation will remain in effect but Buyer has
269.            failed to comply with a provision of this Contract and Seller may deliver to Buyer a cure notice as required by Section 7a.
270.            If Buyer fails to cure their non-compliance within three (3) days after delivery of such notice, Buyer shall be in breach and
271.            Seller shall be entitled to the Earnest Money. If, prior to expiration of the Cure Period, Buyer delivers notice specifying
272.            items disapproved as allowed herein, Buyer shall be entitled to a return of the Earnest Money.

273. **OR**

274.    (2) Provide Seller an opportunity to correct or address the items disapproved, in which case:

275.       (a) Seller shall respond in writing within five (5) days or _____ days after delivery to Seller of Buyer's notice of items
276.            disapproved. Seller's failure to respond to Buyer in writing within the specified time period shall conclusively be deemed
277.            Seller's refusal to correct or address any of the items disapproved.

278.       (b) **If Seller agrees in writing to correct items disapproved, Seller shall correct the items, complete any repairs in a**
279.            **workmanlike manner and deliver any paid receipts evidencing the corrections and repairs to Buyer three (3) days**
280.            **or _____ days prior to the COE Date.**

281.       (c) If Seller is unwilling or unable to correct or address any of the items disapproved, Buyer may cancel this Contract within
282.            five (5) days after delivery of Seller's response or after expiration of the time for Seller's response, whichever occurs
283.            first, and the Earnest Money shall be released to Buyer. If Buyer does not cancel this Contract within the five (5) days as
284.            provided, Buyer shall close escrow without those items that Seller has not agreed in writing to correct or address.

285. VERBAL DISCUSSIONS WILL NOT EXTEND THESE TIME PERIODS. Only a written agreement signed by both parties will extend
286. response times or cancellation rights.

287. BUYER'S FAILURE TO GIVE NOTICE OF DISAPPROVAL OF ITEMS OR CANCELLATION OF THIS CONTRACT WITHIN
288. THE SPECIFIED TIME PERIOD SHALL CONCLUSIVELY BE DEEMED BUYER'S ELECTION TO PROCEED WITH THE
289. TRANSACTION WITHOUT CORRECTION OF ANY DISAPPROVED ITEMS.

>>

SELLER   SELLER                                                          BUYER   BUYER
Case: 22-30028    Doc# 499    Filed: 03/01/24    Entered: 03/01/24 15:11:33    Page 29 of
Keren Montandon | Shawn Bellamak Realty 702-327-5957 |
107
EXHIBIT 1 PAGE 25
TRANSACTIONS
TransactionDesk Edition

*Residential Resale Real Estate Purchase Contract* >>

**6k.** 290. **Home Warranty Plan:** Buyer and Seller are advised to investigate the various home warranty plans available for purchase. The
291. parties acknowledge that different home warranty plans have different coverage options, exclusions, limitations, service fees and
292. most plans exclude pre-existing conditions.

293. ☐ A Home Warranty Plan will be ordered by ☐ Buyer or ☐ Seller with the following optional coverage

294. _____, to be issued by _____ at a cost

295. not to exceed $ _____, to be paid for by ☐ Buyer ☐ Seller ☐ Split evenly between Buyer and Seller

296. ☒ Buyer declines the purchase of a Home Warranty Plan.

297. **(BUYER'S INITIALS REQUIRED)** _____*RM*_____ _____
                                                                    BUYER           BUYER

**6l.** 298. **Walkthrough(s):** Seller grants Buyer and Buyer's inspector(s) reasonable access to conduct walkthrough(s) of the Premises for
299. the purpose of satisfying Buyer that any corrections or repairs agreed to by Seller have been completed, and the Premises are
300. in substantially the same condition as of the date of Contract acceptance. If Buyer does not conduct such walkthrough(s), Buyer
301. releases Seller and Broker(s) from liability for any defects that could have been discovered.

**6m.** 302. **Seller's Responsibility Regarding Inspections and Walkthrough(s):** Seller shall make the Premises available for all inspections
303. and walkthrough(s) upon reasonable notice by Buyer. Seller shall, at Seller's expense, have all utilities on, including any propane,
304. until COE to enable Buyer to conduct these inspections and walkthrough(s).

**6n.** 305. **IRS and FIRPTA Reporting:** The Foreign Investment in Real Property Tax Act ("FIRPTA") provides that, if a seller is a Foreign
306. Person, a buyer of residential real property must withhold federal income taxes up to 15% of the purchase price, unless an exception
307. applies. If FIRPTA is applicable and Buyer fails to withhold, Buyer may be held liable for the tax. Buyer agrees to perform any acts
308. reasonable or necessary to comply with FIRPTA and IRS reporting requirements and Buyer is responsible for obtaining independent
309. legal and tax advice.

# 7. REMEDIES

**7a.** 310. **Cure Period:** A party shall have an opportunity to cure a potential breach of this Contract. If a party fails to comply with any
311. provision of this Contract, the other party shall deliver a notice to the non-complying party specifying the non-compliance. If the
312. non-compliance is not cured within three (3) days after delivery of such notice ("Cure Period"), the failure to comply shall become a
313. breach of Contract. If Escrow Company or recorder's office is closed on the last day of the Cure Period, and COE must occur
314. to cure a potential breach, COE shall occur on the next day that both are open for business.

**7b.** 315. **Breach:** In the event of a breach of Contract, the non-breaching party may cancel this Contract and/or proceed against the
316. breaching party in any claim or remedy that the non-breaching party may have in law or equity, subject to the Alternative Dispute
317. Resolution obligations set forth herein. In the case of Seller, because it would be difficult to fix actual damages in the event of
318. Buyer's breach, the Earnest Money as Seller's sole right to damages; and in the event of Buyer's breach arising from Buyer's failure to deliver the
319. the Earnest Money as Seller's sole right to damages; and in the event of Buyer's breach arising from Buyer's failure to deliver the
320. notice required by Section 2b, or Buyer's inability to obtain loan approval due to the waiver of the appraisal contingency pursuant
321. to Section 2l, Seller shall exercise this option and accept the Earnest Money as Seller's sole right to damages. An unfulfilled
322. contingency is not a breach of Contract. The parties expressly agree that the failure of any party to comply with the terms and
323. conditions of Section 1d to allow COE to occur on the COE Date, if not cured after a cure notice is delivered pursuant to Section 7a,
324. will constitute a material breach of this Contract, rendering the Contract subject to cancellation.

**7c.** 325. **Alternative Dispute Resolution ("ADR"):** Buyer and Seller agree to mediate any dispute or claim arising out of or relating to this
326. Contract in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed. All mediation costs shall be paid
327. equally by the parties. In the event that mediation does not resolve all disputes or claims, the unresolved disputes or claims shall
328. be submitted for binding arbitration. In such event, the parties shall agree upon an arbitrator and cooperate in the scheduling of
329. an arbitration hearing. If the parties are unable to agree on an arbitrator, the dispute shall be submitted to the American Arbitration
330. Association ("AAA") in accordance with the AAA Arbitration Rules for the Real Estate Industry. The decision of the arbitrator shall be
331. final and nonappealable. Judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction.
332. Notwithstanding the foregoing, either party may opt out of binding arbitration within thirty (30) days after the conclusion of the
333. mediation conference by notice to the other and, in such event, either party shall have the right to resort to court action.

**7d.** 334. **Exclusions from ADR:** The following matters are excluded from the requirement for ADR hereunder: (i) any action brought in the
335. Small Claims Division of an Arizona Justice Court (up to $3,500) so long as the matter is not thereafter transferred or removed from
336. the small claims division; (ii) judicial or nonjudicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or
337. agreement for sale; (iii) an unlawful entry or detainer action; (iv) the filing or enforcement of a mechanic's lien; or (v) any matter that
338. is within the jurisdiction of a probate court. Further, the filing of a judicial action to enable the recording of a notice of pending action
339. ("lis pendens"), or order of attachment, receivership, injunction, or other provisional remedies shall not constitute a waiver of the
340. obligation to submit the claim to ADR, nor shall such action constitute a breach of the duty to mediate or arbitrate.

**7e.** 341. **Attorney Fees and Costs:** The prevailing party in any dispute or claim between Buyer and Seller arising out of or relating to this
342. Contract shall be awarded their reasonable attorney fees and costs. Costs shall include, without limitation, attorney fees, expert
343. witness fees, fees paid to investigators, and arbitration costs.

>>

*MR*
SELLER | SELLER    &gt;Initials
Residential Resale Real Estate Purchase Contract • Updated: October 2022
Copyright © 2022 Arizona Association of REALTORS®. All rights reserved.
Page 7 of 10
Initials&gt;  *RM*
BUYER | BUYER

Case: 22-50028   Doc# 499   Filed: 03/01/24   Entered: 03/01/24 15:11:33   Page 30 of
107
Keren Montandon | Shawn Bellamak Realty 1-702-327-5957

EXHIBIT 1 PAGE 26

TRANSACTIONS
TransactionDesk Edition

Ax DocuSign Envelope ID: 2B25A1AB-8BC9-4007-B7A8-306E2FBB574B

*Residential Resale Real Estate Purchase Contract* >>

## 8. ADDITIONAL TERMS AND CONDITIONS

8a. 344. Contract is subject to terms outlined in the Bankruptcy Addendum that is signed by
buyer and attached to this offer.

345.
346.
347.
348.
349.
350.
351.
352.
353.
354.
355.
356.
357.
358.
359.
360.
361.
362.
363.
364.
365.
366.
367.
368.
369.
370.
371.
372.
373.
374.
375.
376.
377.
378.
379.
380.
381.
382.
383.
384.
385.
386.
387.
388.
389.

>>

-DS
JMR

<Initials

Residential Resale Real Estate Purchase Contract • Updated: October 2022
Copyright © 2022 Arizona Association of REALTORS®. All rights reserved.

Initials>

RM

SELLER | SELLER                                                                    BUYER | BUYER
Keren Montandon | Shawn Bellamak Realty - 702-327-5957

Page 8 of 10

TRANSACTIONS
TransactionDesk Edition

### *Residential Resale Real Estate Purchase Contract* >>

**8b.** 390. **Risk of Loss:** If there is any loss or damage to the Premises between the date of Contract acceptance and COE or possession,
391. whichever is earlier, by reason of fire, vandalism, flood, earthquake, or act of God, the risk of loss shall be on Seller, provided,
392. however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the purchase price, either Seller or
393. Buyer may elect to cancel the Contract.

**8c.** 394. **Permission:** Buyer and Seller grant Broker(s) permission to advise the public of this Contract.

**8d.** 395. **Arizona Law:** This Contract shall be governed by Arizona law and jurisdiction is exclusively conferred on the State of Arizona.

**8e.** 396. **Time is of the Essence:** The parties acknowledge that time is of the essence in the performance of the obligations described
397. herein.

**8f.** 398. **Compensation:** Seller and Buyer acknowledge that Broker(s) shall be compensated for services rendered as previously agreed by
399. separate written agreement(s), which shall be delivered by Broker(s) to Escrow Company for payment at COE, if not previously paid.
400. If Seller is obligated to pay Broker(s), this Contract shall constitute an irrevocable assignment of Seller's proceeds at COE. If Buyer
401. is obligated to pay Broker(s), payment shall be collected from Buyer as a condition of COE. COMMISSIONS PAYABLE FOR THE
402. SALE, LEASING, OR MANAGEMENT OF PROPERTY ARE NOT SET BY ANY BOARD OR ASSOCIATION OF REALTORS®, OR
403. MULTIPLE LISTING SERVICE, OR IN ANY MANNER OTHER THAN BETWEEN BROKER AND CLIENT.

**8g.** 404. **Copies and Counterparts:** A fully executed facsimile or electronic copy of the Contract shall be treated as an original Contract.
405. This Contract and any other documents required by this Contract may be executed by facsimile or other electronic means and in any
406. number of counterparts, which shall become effective upon delivery as provided for herein, except that the Disclosure of Information
407. on Lead-Based Paint and Lead-Based Paint Hazards may not be signed in counterpart. All counterparts shall be deemed to
408. constitute one instrument, and each counterpart shall be deemed an original.

**8h.** 409. **Days:** All references to days in this Contract shall be construed as calendar days and a day shall begin at 12:00 a.m. and
410. end at 11:59 p.m.

**8i.** 411. **Calculating Time Periods:** In computing any time period prescribed or allowed by this Contract, the day of the act or event from
412. which the time period begins to run is not included and the last day of the time period is included. Contract acceptance occurs on the
413. date that the signed Contract (and any incorporated counter offer) is delivered to and received by the appropriate Broker. Acts that
414. must be performed three (3) days prior to the COE Date must be performed three (3) full days prior (i.e. – if the COE Date is Friday
415. the act must be performed by 11:59 p.m. on Monday).

**8j.** 416. **Entire Agreement:** This Contract, and any addenda and attachments, shall constitute the entire agreement between Seller and
417. Buyer, shall supersede any other written or oral agreements between Seller and Buyer and can be modified only by a writing signed
418. by Seller and Buyer. The failure to initial any page of this Contract shall not affect the validity or terms of this Contract.

**8k.** 419. **Subsequent Offers:** Buyer acknowledges that Seller has the right to accept subsequent offers until COE. Seller understands that
420. any subsequent offer accepted by Seller must be a backup offer contingent on the cancellation of this Contract.

**8l.** 421. **Cancellation:** A party who wishes to exercise the right of cancellation as allowed herein may cancel this Contract by delivering
422. notice stating the reason for cancellation to the other party or to Escrow Company. Cancellation shall become effective immediately
423. upon delivery of the cancellation notice.

**8m.** 424. **Notice:** Unless otherwise provided, delivery of all notices and documentation required or permitted hereunder shall be in writing
425. and deemed delivered and received when: (i) hand-delivered; (ii) sent via facsimile transmission; (iii) sent via electronic mail, if email
426. addresses are provided herein; or  (iv) sent by recognized overnight courier service, and addressed to Buyer as indicated in Section
427. 8q, to Seller as indicated in Section 9a and to Escrow Company indicated in Section 3a.

**8n.** 428. **Release of Broker(s):  Seller and Buyer hereby expressly release, hold harmless and indemnify Broker(s) in this**
429. **transaction from any and all liability and responsibility regarding financing, the condition, square footage, lot lines,**
430. **boundaries, value, rent rolls, environmental problems, sanitation systems, roof, wood infestation, building codes,**
431. **governmental regulations, insurance, price and terms of sale, return on investment or any other matter relating to the value**
432. **or condition of the Premises. The parties understand and agree that Broker(s) do not provide advice on property as an**
433. **investment and are not qualified to provide financial, legal, or tax advice regarding this real estate transaction.**

434. **(SELLER'S INITIALS REQUIRED)** _____  _____  **(BUYER'S INITIALS REQUIRED)** *KM* _____  _____
                  SELLER       SELLER                                      BUYER       BUYER

**8o.** 435. **Terms of Acceptance:** This offer will become a binding Contract when acceptance is signed by Seller and a signed copy delivered
436. in person, by mail, facsimile or electronically, and received by Broker named in Section 8q
437. by _____ **February** _____ 17 __, 2024 ___ at __ 11:59 __ a.m./p.m., Mountain Standard Time.
438. Buyer may withdraw this offer at any time prior to receipt of Seller's signed acceptance. If no signed acceptance is received by this
439. date and time, this offer shall be deemed withdrawn and Buyer's Earnest Money shall be returned.

**8p.** 440. THIS CONTRACT CONTAINS TEN (10) PAGES EXCLUSIVE OF ANY ADDENDA AND ATTACHMENTS. PLEASE ENSURE
441. THAT YOU HAVE RECEIVED AND READ ALL TEN (10) PAGES OF THIS OFFER AS WELL AS ANY ADDENDA AND
442. ATTACHMENTS.

>>



DS
JMR
<Initials
Residential Resale Real Estate Purchase Contract • Updated: October 2022
Copyright © 2022 Arizona Association of REALTORS®. All rights reserved.
Initials> *KM*

SELLER | SELLER
BUYER | BUYER

Case. 22-30028    Doc# 499    Filed: 03/01/24    Entered: 03/01/24 15:11:33    Page 32 of 107

Keren Montandon | Shawn Bellamak Realty, 702-327-5957 | Page 9 of 10

EXHIBIT 1 PAGE 28

TRANSACTIONS
TransactionDesk Edition

*Residential Resale Real Estate Purchase Contract* >>

**8q.** 443. **Broker on behalf of Buyer:**

444. Keren Montandon | KM746 | SA704278000
PRINT AGENT'S NAME | AGENT MLS CODE | AGENT STATE LICENSE NO.

445. Shawn Bellamak | SB179 | BR523891000
PRINT AGENT'S NAME | AGENT MLS CODE | AGENT STATE LICENSE NO.

446. Shawn Bellamak Realty | | 144045621
PRINT FIRM NAME | | FIRM MLS CODE

447. 5749 N 78th Place    Scottsdale    AZ    85250    CO709956000
FIRM ADDRESS    STATE    ZIP CODE    FIRM STATE LICENSE NO.

448. 702-327-5957 | | keren@bellamak.com
PREFERRED TELEPHONE    FAX | | EMAIL

**8r.** 449. **Agency Confirmation:** Broker named in Section 8q above is the agent of (check one):
450. ☒ Buyer; ☐ Seller; or ☐ both Buyer and Seller

**8s.** 451. **The undersigned agree to purchase the Premises on the terms and conditions herein stated and acknowledge receipt of**
452. **a copy hereof including the Buyer Attachment.**

453. *James K. Nichols-Member*    02/15/2024 | 
^ BUYER'S SIGNATURE    MO/DA/YR | ^ BUYER'S SIGNATURE    MO/DA/YR

454. NMW1, LLC | 
^ BUYER'S NAME PRINTED | ^ BUYER'S NAME PRINTED

455. 4808 N 83rd Street | 
ADDRESS | ADDRESS

456. Scottsdale    az    85251 | 
CITY, STATE, ZIP CODE | CITY, STATE, ZIP CODE

## 9. SELLER ACCEPTANCE

**9a.** 457. **Broker on behalf of Seller:**

458. Beth Jo Zeitzer | bz003 | BR044331000
PRINT AGENT'S NAME | AGENT MLS CODE | AGENT STATE LICENSE NO.

459. Rebecca Marvel | rm838 | BR678016000
PRINT AGENT'S NAME | AGENT MLS CODE | AGENT STATE LICENSE NO.

460. R.O.I. Properties | roip01
PRINT FIRM NAME | FIRM MLS CODE

461. 5090 N 40th St    Phoenix    AZ    85018    LC541770000
FIRM ADDRESS    STATE    ZIP CODE    FIRM STATE LICENSE NO.

462. (602) 319-1326    (602) 522-2014    bethjozeitzer@roiproperties.com
PREFERRED TELEPHONE    FAX    EMAIL

**9b.** 463. **Agency Confirmation:** Broker named in Section 9a above is the agent of (check one):
464. ☒ Seller; or ☐ both Buyer and Seller

**9c.** 465. **The undersigned agree to sell the Premises on the terms and conditions herein stated, acknowledge receipt of a**
466. **copy hereof and grant permission to Broker named in Section 9a to deliver a copy to Buyer.**

467. ☒ Counter Offer is attached, and is incorporated herein by reference. Seller must sign and deliver both this offer and the Counter
468. Offer. If there is a conflict between this offer and the Counter Offer, the provisions of the Counter Offer shall be controlling.
469. *Jason M Rund*    2/16/2024
SELLER'S SIGNATURE    MO/DA/YR    ^ SELLER'S SIGNATURE    MO/DA/YR

470. Jason M Rund - Trustee | 
Jason M Rund, Chapter 7 Trustee for the Bankruptcy Estate of Lynn Schoenmann, Case #22-30028 | ^ SELLER'S NAME PRINTED

471. | 
ADDRESS | ADDRESS

472. | 
CITY, STATE, ZIP CODE | CITY, STATE, ZIP CODE

473. ☐ **OFFER REJECTED BY SELLER:** _____ , 20 _____
MONTH    DAY    YEAR    (SELLER'S INITIALS)

**For Broker Use Only:**
Brokerage File/Log No. _____ Manager's Initials _____ Broker's Initials _____ Date _____
MO/DA/YR

Residential Resale Real Estate Purchase Contract • Updated: October 2022
Copyright © 2022 Arizona Association of REALTORS®. All rights reserved.

Page 10 of 10
Case: 22-30028   Doc# 499   Filed: 03/01/24   Entered: 03/01/24 15:11:33   Page 33 of
Keren Montandon | Shawn Bellamak Realty, 702-327-5957 | 107
EXHIBIT 1  PAGE 29

TRANSACTIONS
TransactionDesk Edition

DocuSign Envelope ID: 2B25A1AB-8BC9-4007-B7A8-306E2FBB574B

# H.O.A. CONDOMINIUM / PLANNED COMMUNITY ADDENDUM

Document updated: October **2021**

**ARIZONA** *association of* **REALTORS®** REAL SOLUTIONS. REALTOR® SUCCESS.

*The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.*

 

## SELLER'S NOTICE OF H.O.A. INFORMATION

1. Seller: Jason M Rund, Ch 7 Trustee for the Bankruptcy Estate of Lynn Schoenmann, Case #22-30028
2. Premises Address: 4200 N Miller Rd #117, Scottsdale, AZ  85251
3. Date: October 26, 2023
4. **INSTRUCTIONS:** (1) Homeowner's association ("H.O.A.") information on page 1 to be completed by Seller at the time of listing the
5. Premises for sale. (2) Upon completion, this Addendum shall be uploaded to the multiple listing service, if available, or delivered to
6. prospective buyers upon request prior to prospective buyer's submission of a Residential Resale Real Estate Purchase Contract to Seller.

### ASSOCIATION(S) GOVERNING THE PREMISES

7. **H.O.A.:** Scottsdale Marquessa    Contact Info: 480-945-5400
8. Management Company (if any): Ogden & Co    Contact Info: 480-396-4567
9. Amount of Dues: $ 500.00    How often? Monthly
10. Amount of special assessments (if any): $ _____ How often? _____ Start Date: _____ End Date: _____
    MO/DA/YR    MO/DA/YR

11. **Master Association** (if any): _____    Contact Info: _____
12. Management Company (if any): _____    Contact Info: _____
13. Amount of Dues: $ _____ How often? _____
14. Amount of special assessments (if any): $ _____ How often? _____ Start Date: _____ End Date: _____
    MO/DA/YR    MO/DA/YR

15. **Other:** _____    Contact Info: _____
16. Amount of Dues: $ _____ How often? _____

### FEES PAYABLE UPON CLOSE OF ESCROW

17. **Transfer Fees:** Association(s) fees related to the transfer of title: H.O.A.: $ _____ Master Association: $ _____ .

18. **Capital Improvement Fees,** including but not limited to those fees labeled as community reserve, asset preservation, capital reserve,
19. working capital, community enhancement, future improvement fees, or payments: H.O.A.: $ 150.00 Master Association: $ _____ .

20. **Prepaid Association(s) Fees:** Dues, assessments, and any other association(s) fees paid in advance of their due date:
21. H.O.A.: $ 1,000.00 Master Association: $ _____ .

22. **Disclosure Fees:** Association(s)/Management Company(ies) costs incurred in the preparation of a statement or other documents
23. furnished by the association(s) pursuant to the resale of the Premises for purposes of resale disclosure, lien estoppels and any other
24. services related to the transfer or use of the property. Pursuant to Arizona law, Disclosure Fees cannot be more than an aggregate
25. of $400.00 per association. As part of the Disclosure Fees, each association may charge a statement or other documents update fee of
26. no more than $50.00 if thirty (30) days or more have passed since the date of the original disclosure statement or the date the documents
27. were delivered. Additionally, each association may charge a rush fee of no more than $100.00 if rush services are required to be
28. performed within seventy-two (72) hours after the request. H.O.A.: $ 400.00 Master Association: $ _____ .

29. **Other Fees:** $ _____ Explain: _____ .

30. **SELLER CERTIFICATION:** By signing below, Seller certifies that the information contained above is true and complete to the best of
31. Seller's actual knowledge as of the date signed. Broker(s) did not verify any of the information contained herein.

32. *DocuSigned by:* Jason Rund    12/26/2023
33. ^ SELLER'S SIGNATURE    MO/DA/YR    ^ SELLER'S SIGNATURE    MO/DA/YR
    Jason M Rund, Ch 7 Trustee for the Bankruptcy Estate of Lynn Schoenmann, Case #22-30028

    >>

H.O.A. Condominium / Planned Community Addendum • October 2021 • Copyright © 2021 Arizona Association of REALTORS®. All rights reserved.

R.O.I. Properties, 5090 N 40th St, Ste 190 Phoenix AZ 85016
Phone: 6023191326    Fax: 6027946389    Beth Jo Zeitzer    4200 N Miller Rd
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Au DocuSign Envelope ID: 2B25A1AB-8BC9-4007-B7A8-306E2FBB574B

## H.O.A. Condominium / Planned Community Addendum >>

## ADDITIONAL OBLIGATIONS

34. **If the homeowner's association has less than 50 units,** no later than ten (10) days after Contract acceptance, the Seller shall provide
35. in writing to Buyer the information described below as required by Arizona law.

36. **If the homeowners association has 50 or more units,** Seller shall furnish notice of pending sale that contains the name and address
37. of the Buyer to the homeowner's association within five (5) days after Contract acceptance and pursuant to Section 3d of the Contract.
38. Escrow Company is instructed to provide such notice on Seller's behalf. The association is obligated by Arizona law to provide information
39. described below to Buyer within ten (10) days after receipt of Seller's notice.

40. **BUYER IS ALLOWED FIVE (5) DAYS AFTER RECEIPT OF THE INFORMATION FROM THE SELLER(S) OR HOMEOWNER'S**
41. **ASSOCIATION TO PROVIDE WRITTEN NOTICE TO SELLER OF ANY ITEMS DISAPPROVED.**

---

42. ### INFORMATION REQUIRED BY LAW TO BE PROVIDED TO BUYER:

43. 1. A copy of the bylaws and the rules of the association.

44. 2. A copy of the declaration of Covenants, Conditions and Restrictions ("CC&Rs").

45. 3. A dated statement containing:

46. (a) The telephone number and address of a principal contact for the association, which may be an association manager, an
47. association management company, an officer of the association or any other person designated by the board of directors.

48. (b) The amount of the common expense assessment and the unpaid common expense assessment, special assessment or
49. other assessment, fee or charge currently due and payable from the Seller.

50. (c) A statement as to whether a portion of the unit is covered by insurance maintained by the association.

51. (d) The total amount of money held by the association as reserves.

52. (e) If the statement is being furnished by the association, a statement as to whether the records of the association reflect any
53. alterations or improvements to the unit that violate the declaration. The association is not obligated to provide information
54. regarding alterations or improvements that occurred more than six years before the proposed sale. Seller remains obligated
55. to disclose alterations or improvements to the Premises that violate the declaration. The association may take action
56. against the Buyer for violations apparent at the time of purchase that are not reflected in the association's records.

57. (f) If the statement is being furnished by the Seller, a statement as to whether the Seller has any knowledge of any alterations
58. or improvements to the unit that violate the declaration.

59. (g) A statement of case names and case numbers for pending litigation with respect to the Premises or the association,
60. including the amount of any money claimed.

61. 4. A copy of the current operating budget of the association.

62. 5. A copy of the most recent annual financial report of the association. If the report is more than ten pages, the association may
63. provide a summary of the report in lieu of the entire report.

64. 6. A copy of the most recent reserve study of the association, if any.

65. 7. Any other information required by law.

66. 8. A statement for Buyer acknowledgment and signature are required by Arizona law.

---

>>

H.O.A. Condominium / Planned Community Addendum • October 2021 • Copyright © 2021 Arizona Association of REALTORS®. All rights reserved.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

4200 N Miller Rd

Case: 22-30028    Doc# 499    Filed: 03/01/24    Entered: 03/01/24 15:11:33    Page 35 of
107

EXHIBIT 1  PAGE 31

At DocuSign Envelope ID: 2B25A1AB-8BC9-4007-B7A8-306E2FBB574B

## H.O.A. Condominium / Planned Community Addendum >>

---

## BUYER'S ACKNOWLEDGMENT AND TERMS

67. Buyer: __NMW1, LLC__

68. Seller: __Jason M Rund, Ch 7 Trustee for the Bankruptcy Estate of Lynn Schoenmann, Case #22-30028__

69. Premises Address: __4200 N Miller Rd #117, Scottsdale, AZ 85251__

70. **NOTE: LINES 71-76 TO *ONLY* BE COMPLETED BY BUYER, AND *NOT* SELLER!**

71. **The following additional terms and conditions are hereby included as a part of the Contract between Seller and Buyer for the**
72. **above referenced Premises.**

73. **Transfer Fees** shall be paid by: ☐ Buyer ☐ Seller ☐ Other N/A

74. **Capital Improvement Fees** shall be paid by: ☒ Buyer ☐ Seller ☐ Other _____

75. Any additional fees not disclosed on page 1 and payable upon close of escrow shall be paid by: ☐ Buyer ☒ Seller ☐ Other _____

76. _____

77. Buyer shall pay all **Prepaid Association Fees.**

78. Seller shall pay all **Disclosure Fees** as required by Arizona law.

79. In a financed purchase, Buyer shall be responsible for all lender fees charged to obtain Association(s)/Management Company(ies) documents.

80. **BUYER VERIFICATION:** Buyer may contact the Association(s)/Management Company(ies) for verbal verification of association
81. **FEES PAYABLE UPON CLOSE OF ESCROW.**

82. **ASSESSMENTS:** Any current homeowner's association assessment which is a lien as of Close of Escrow shall be paid in full by Seller.
83. Any assessment that becomes a lien after Close of Escrow is Buyer's responsibility.

## ADDITIONAL TERMS AND CONDITIONS

84. _____
85. _____
86. _____
87. _____

88. **BUYER ACKNOWLEDGEMENT:** By signing below, Buyer acknowledges receipt of all three (3) pages of this addendum and acknowledges
89. that, although Seller has used best efforts to identify the amount of the fees stated herein, the precise amount of the fees may not be known
90. until written disclosure documents are furnished by the Association(s)/Management Company(ies) per Arizona law (A.R.S. § 33-1260 and
91. §33-1806). Buyer further acknowledges that Broker(s) did not verify any of the information contained herein. Buyer therefore agrees to
92. hold Seller and Broker(s) harmless should the **FEES PAYABLE UPON CLOSE OF ESCROW** prove incorrect or incomplete.

93. The undersigned agrees to the additional terms and conditions set forth above and acknowledges receipt of a copy hereof.

94. *James R. Nichols - Member*                    02/15/24
95. ^ BUYER'S SIGNATURE                    MO/DA/YR          ^ BUYER'S SIGNATURE                    MO/DA/YR

96. **SELLER'S ACCEPTANCE:**
97. *Jason M Rund*                    2/16/2024
98. ^ SELLER'S SIGNATURE                    MO/DA/YR          ^ SELLER'S SIGNATURE                    MO/DA/YR
Jason M Rund, Ch 7 Trustee for the Bankruptcy Estate of Lynn Schoenmann, Case #22-30028

| For Broker Use Only: | | | |
|---|---|---|---|
| Brokerage File/Log No. _____ | Manager's Initials _____ | Broker's Initials _____ | Date _____ MO/DA/YR |

H.O.A. Condominium / Planned Community Addendum • October 2021 • Copyright © 2021 Arizona Association of REALTORS®. All rights reserved.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          4200 N Miller Rd



AutoDocuSign Envelope ID: 2B25A1AB-8BC9-4007-B7A8-306E2FBB574B

R.O.I. Properties

# COUNTER OFFER __1__

Document updated:
**June 2021**



*The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.*

 

1. This is a Counter Offer originated by: ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant
2. This is a Counter Offer to the ☒ Offer ☐ Counter Offer dated __02/15/2024__ between the following Parties:
   <sub>MO/DA/YR</sub>
3. Seller/Landlord: **Jason Rund, BK Trustee**
4. Buyer/Tenant: **NMW1, LLC**
5. Premises Address: **4200 N Miller Rd #117, Scottsdale, AZ 85251**
6. Acceptance of the above Offer and/or Counter Offer is contingent upon agreement to the following:
7. **1-Line 11 of the Purchase Contract shall be amended to: $5,000 earnest money.**
8. **2-All other agreed to terms and conditions remain unchanged.**
9. _____
10. _____
11. _____
12. _____
13. _____
14. _____
15. _____
16. _____
17. _____
18. _____

19. Terms of Acceptance: Unless acceptance of this Counter Offer is signed by all parties and a signed copy delivered in person, by mail,
20. facsimile or electronically, and received by the originating party's Broker named in the Contract Section 8q or 9a as applicable
21. by __02/17/2024__ at __5__ ☐ a.m. ☒ p.m., Mountain Standard Time, this Counter Offer shall be considered withdrawn.
22. Except as modified by this Counter Offer, all other terms and conditions of the above referenced Offer/Counter Offer(s) shall remain
23. unchanged and deemed accepted. Until this Counter Offer has been accepted in the manner described above, the Parties understand
24. that the Party originating this Counter Offer may withdraw the offer to buy, sell, or lease the Premises.
25. The undersigned acknowledges receipt of a copy hereof.

2/16/2024

26. *Jason M Rund*           Date: _____ Time: _____
   <sub>83D05BD15320417</sub>
27. ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant
28. Jason M Rund, Ch 7 Trustee for the Bankruptcy Estate of Lynn Schoenmann, Case #22-30028
        Date: _____ Time: _____
29. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant

30. ☐ **RESPONSE**

31. An additional Counter Offer is attached, and is incorporated by reference. If there is a conflict between this Counter Offer and the
32. additional Counter Offer, the provisions of the additional Counter Offer shall be controlling.

33. _____ Date: _____ Time: _____
34. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant

35. _____ Date: _____ Time: _____
36. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant

37. ☒ **ACCEPTANCE**

38. The undersigned agrees to the terms and conditions of this Counter Offer and acknowledges receipt of a copy hereof.
39. *James R. Nichols - Member*        Date: **02/16/24** Time: **2:37 PM**
40. ☐ Seller ☒ Buyer ☐ Landlord ☐ Tenant
41. NMW1, LLC          Date: _____ Time: _____
42. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant

| For Broker Use Only: | | | | |
|---|---|---|---|---|
| Brokerage File/Log No. _____ Manager's Initials _____ Broker's Initials _____ Date _____ | | | | <sub>MO/DA/YR</sub> |

Counter Offer • Updated: June 2021 • Copyright © 2021 Arizona Association of REALTORS®. All rights reserved.



R.O.I. Properties, 5090 N 40th St, Ste 190 Phoenix AZ 85016     Phone: 6023191326    Fax: 6027946389
Beth Jo Zeitzer    Produced with zipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    4200 N Miller Rd

Aï DocuSign Envelope ID: 2B25A1AB-8BC9-4007-B7A8-306E2FBB574B

# BANKRUPTCY ADDENDUM

This Bankruptcy Addendum (the "Bankruptcy Addendum") is hereby incorporated into and made part of the Residential Resale Real Estate Purchase offer (the "Offer") for the real property commonly known as **4200 N Miller Rd #117, Scottsdale, AZ 85251** (the "Premises" or "Property") between Seller, **Jason M Rund, Ch 7 Trustee for the Bankruptcy Estate of Lynn Schoenmann, Case #22-30028**, and Buyer, ___NMW1, LLC___.

**1.    Subject to Higher and Better Bids:** Any sale is subject to Bankruptcy Court approval (which the Trustee shall seek upon conditional acceptance of the Offer), and may be subject to higher bids at a Bankruptcy Court hearing to approve the sale. Buyer, and potential bidders, will receive notice of the date of the hearing and should be present at the time of the hearing in order to bid on the Property, if necessary.

**2.    As-Is/ Where-Is Sale:** In a sale of a property in a bankruptcy case, the Buyer is purchasing the property in "AS-IS, WHERE-IS" condition and NO WARRANTIES OR GUARANTEES. Buyer represents and warrants that Buyer will perform the Buyer's own inspection, if any, and will use such consultants, contractors, and engineers as Buyer deems appropriate at Buyer's own cost.

Buyer agrees Seller has no obligation to institute any repairs, refurbishment, or any other action to conform the Premises to the requirements of any public regulation, rule, building code, or other standard or publicly known restrictions

**3.    Closing:** The Offer shall be amended to provide that the COE shall occur not later than fourteen (14) calendar days, after the United States Bankruptcy Court for the District of California has entered an order approving the Contract. Extension(s) may only be granted by consent of both parties, in writing.

**4.    Title Company:** Unless a federally-related mortgage loan is utilized to acquire the Property, Seller open escrow and began title work with Pioneer Title Agency (Title Company), Jennifer Siverio, Escrow Agent, jennifer.siverio@ptaaaz.com, Escrow #72502832. Seller makes no representations or warranties regarding same.

**5.    Conveyance:** Notwithstanding anything herein to the contrary, Seller shall convey the Property to Buyer by Trustee's Deed.

**6.    Release of Earnest Money:** Earnest Money is to be non-refundable upon expiration of the Inspection Period, except in the event the Bankruptcy Court does not approve the sale or the buyer is out bid at the court hearing**.**

**7.    Disclosures / No Representations or Warranties / Condition of Property:** Buyer acknowledges that there is no duty on the part of Seller to discover any defect in the Premises or verify any information obtained by Buyer. Buyer has made an independent and informed decision to purchase. Buyer is not relying on any representation of the Seller, real estate agents, or attorneys. The Seller is a Bankruptcy Trustee who acquired the right to sell the Premises as a matter of law. The Trustee has never occupied the Premises and has no historical knowledge about the Premises, other than what may have been provided to the Buyer from the Debtors, which disclosures the Trustee does not represent or warrant as her own. Buyer specifically waives any "Seller's Property Disclosure Statement" from the Trustee, and any disclosure or warranties of any matter involving termites, structural, soils, building code compliance, plumbing, pipes, sprinklers, environmental hazard/ contaminants/toxic substances, septic or sewer connections, inspections or certification for flood

Buyer  Buyer

Seller Seller

EXHIBIT 1  PAGE 34

Al DocuSign Envelope ID: 2B25A1AB-8BC9-4007-B7A8-306E2FBB574B

plain, or asbestos disclosures. Seller has no reports or disclosures regarding lead-based paint on the Premises.

Buyer specifically waives and acknowledges that no Insurance Claims History will be delivered to Buyer from the Trustee.

**8.** **Fixtures and Personal Property:** Nothing herein contained shall be deemed a representation by Seller that any of the listed items in the Offer herein exist or are a part of the Premises.

**9.** **HOA Disclosures/Cost Allocation:** The Property may be governed by a Homeowner's Association. Buyer acknowledges and recognizes that the Seller is acting in a bankruptcy trustee capacity and, thus, lacks personal knowledge of the fees and restrictions associated with the H.O.A. Buyer to be responsible for all fees including but not limited to Transfer Fees, Disclosure Fees, Capital Improvement Fees, and Prepaid Fees at close of escrow. Any current homeowner's association assessment which is a lien as of the close of escrow shall be paid by Seller. Buyer to be solely responsible for verifying all Homeowner's Association fees and information.

**10.** **Utilities:** If the Premises are unoccupied and the utilities are not on, Buyer will, at Buyer's expense, place the utilities, including propane, if applicable, in Buyer's name to perform any required inspections or walkthroughs unless otherwise agreed to by the Trustee.

**11.** **United States Bankruptcy Court for the District of California Jurisdiction:** Lines 325 through 340 of the Offer are deleted in their entirety. If a dispute arises regarding this Contract, the dispute shall be decided by the United States Bankruptcy Court for the District of California. Buyer understands that the Premises are an asset of a bankruptcy estate in a Chapter 7 bankruptcy case pending in California and that jurisdiction is exclusively conferred on the United States Bankruptcy Court for the District of California.

**12.** **Release:** Seller is hereby released from all responsibility and liability to Buyers, their successors or assigns, or Seller's broker or Buyers' Broker regarding: (A) the condition (including without limitation, title defects other than monetary liens and encumbrances, the presence of environmental hazards or substances upon, about or beneath the Property or migrating or threatening to migrate to or from the Property, or the existence of a violation of any present or future statutes, regulations, rules, ordinances, codes, licenses, permits, orders, approvals, plans or authorizations of any applicable governmental authority or body relating to the protection of human health or the environment), nature, quality, value, suitability or utility of the Property; (B) the contents or accuracy of any title report, survey, soils test or environmental study, including, but not limited to, the Report, and the Property Information; and (C) the compliance of or by the Property with any laws, rules, ordinances or regulations of any applicable governmental authority or body, including without limitation, compliance with any environmental, pollution or land use laws, rules, ordinances or regulations. The Seller shall not be liable to the Buyers for any prospective or speculative profits, or special, indirect or consequential damages, whether based upon contract, tort, or negligence or in any other manner arising from the transactions contemplated by this Agreement. Seller shall not be liable to Buyers, Seller's Broker or Buyers' Broker for any indemnification

**13. Line-Item Amendments to the Offer:**
In light of the foregoing provisions and Seller's limited knowledge of the Property, Buyer and Seller hereby agree to the following line-item amendments to the Offer:

^At DocuSign Envelope ID: 2B25A1AB-8BC9-4007-B7A8-306E2FBB574B

Lines 146 – 148 are hereby deleted to the extent that they require the Trustee to indemnify or hold harmless any parties to the Agreement.

Lines 154 – 156 are deleted in their entirety.

Lines 187 – 190 are deleted in their entirety.

Lines 200 – 206 are deleted in their entirety.

Lines 341 – 343 are deleted in their entirety.

Lines 398 – 403 are deleted in their entirety. Broker's compensation is subject to notice and Bankruptcy Court Order.

Lines 428 – 433 are hereby deleted to the extent that they require the Trustee to indemnify or hold harmless any parties to the Agreement.

**Seller:**
**Jason M Rund, Ch 7 Trustee for the Bankruptcy Estate of Lynn Schoenmann, Case #22-30028**

**By:** _Jason M Rund_

**Dated:** 2/16/2024

**Buyer:** NMW1, LLC

**By:** _James R. Nichols - Member_

**Dated:** 02/15/24

**Buyer:** _____

**By:** _____

**Dated:** _____



Buyer   Buyer



Seller   Seller

R.O.I. Properties

# COUNTER OFFER ___1___

Document updated:
**June 2021**



*The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.*

 

1. This is a Counter Offer originated by:  ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant
2. This is a Counter Offer to the  ☒ Offer ☐ Counter Offer dated __02/15/2024__ between the following Parties:
   MO/DA/YR
3. Seller/Landlord: **Jason Rund, BK Trustee**
4. Buyer/Tenant: **NMW1, LLC**
5. Premises Address: **4200 N Miller Rd #117, Scottsdale, AZ  85251**
6. Acceptance of the above Offer and/or Counter Offer is contingent upon agreement to the following:
7. **1-Line 11 of the Purchase Contract shall be amended to: $5,000 earnest money.**
8. **2-All other agreed to terms and conditions remain unchanged.**
9. _____
10. _____
11. _____
12. _____
13. _____
14. _____
15. _____
16. _____
17. _____
18. _____

19. Terms of Acceptance: Unless acceptance of this Counter Offer is signed by all parties and a signed copy delivered in person, by mail,
20. facsimile or electronically, and received by the originating party's Broker named in the Contract Section 8q or 9a as applicable
21. by __02/17/2024__ at __5__ ☐ a.m. ☒ p.m., Mountain Standard Time, this Counter Offer shall be considered withdrawn.
22. Except as modified by this Counter Offer, all other terms and conditions of the above referenced Offer/Counter Offer(s) shall remain
23. unchanged and deemed accepted. Until this Counter Offer has been accepted in the manner described above, the Parties understand
24. that the Party originating this Counter Offer may withdraw the offer to buy, sell, or lease the Premises.
25. The undersigned acknowledges receipt of a copy hereof.

2/16/2024

26. *Jason M Rund* _____ Date: _____ Time: _____
    89D05BD15320417...
27. ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant
28. Jason M Rund, Ch 7 Trustee for the Bankruptcy Estate of Lynn Schoenmann, Case #22-30028  Date: _____ Time: _____
29. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant

30. ☐ **RESPONSE**

31. An additional Counter Offer is attached, and is incorporated by reference. If there is a conflict between this Counter Offer and the
32. additional Counter Offer, the provisions of the additional Counter Offer shall be controlling.

33. _____ Date: _____ Time: _____
34. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant

35. _____ Date: _____ Time: _____
36. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant

37. ☒ **ACCEPTANCE**

38. The undersigned agrees to the terms and conditions of this Counter Offer and acknowledges receipt of a copy hereof.
39. *James R. Nichols - Member* _____ Date: __02/16/24__ Time: __2:37 PM__
40. ☐ Seller ☒ Buyer ☐ Landlord ☐ Tenant
41. NMW1, LLC _____ Date: _____ Time: _____
42. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant

| For Broker Use Only: | | | | |
| --- | --- | --- | --- | --- |
| Brokerage File/Log No. _____ Manager's Initials _____ Broker's Initials _____ Date _____ |
| MO/DA/YR |

Counter Offer • Updated: June 2021 • Copyright © 2021 Arizona Association of REALTORS®. All rights reserved.

R.O.I. Properties, 5090 N 40th St, Ste 190 Phoenix AZ 85016          Phone: 6023191326        Fax: 6027946389
Beth Jo Zeitzer          Produced with zipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com        4200 N Miller Rd



# Exhibit 2



## ALTA COMMITMENT FOR TITLE INSURANCE
### issued by
### WESTCOR LAND TITLE INSURANCE COMPANY
### (ALTA Adopted 07-01-2021)

### NOTICE

**IMPORTANT—READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

### COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and the Commitment Conditions, Westcor Land Title Insurance Company, a South Carolina Corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Amount of Insurance and the name of the Proposed Insured.

If all of the Schedule B, Part I—Requirements have not been met within (6) months after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

*Issued through the Office of:*  **WESTCOR LAND TITLE INSURANCE COMPANY**

Pioneer Title Agency, Inc.
*1550 E. Missouri Ave.*
*Phoenix, AZ 85014*

By: *Mary O'Donnell*
Mary O'Donnell - President

Attest: _____
Donald A. Berube - Secretary

_____
*Authorized Signatory*

*This page is only a part of a 2021 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN LAND TITLE ASSOCIATION

CM-37 ALTA Commitment for Title Insurance (ALTA Adopted 07-01-2021)          (WLTIC Edition 08/25/2021)

## COMMITMENT CONDITIONS

1. **DEFINITIONS**
   a. "Discriminatory Covenant": Any covenant, condition, restriction, or limitation that is unenforceable under applicable law because it illegally discriminates against a class of individuals based on personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or other legally protected class.
   b. "Knowledge" or "Known": Actual knowledge or actual notice, but not constructive notice imparted by the Public Records.
   c. "Land": The land described in Item 5 of Schedule A and improvements located on that land that by State law constitute real property. The term "Land" does not include any property beyond that described in Schedule A, nor any right, title, interest, estate, or easement in any abutting street, road, avenue, alley, lane, right-of-way, body of water, or waterway, but does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
   d. "Mortgage": A mortgage, deed of trust, trust deed, security deed, or other real property security instrument, including one evidenced by electronic means authorized by law.
   e. "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
   f. "Proposed Amount of Insurance": Each dollar amount specified in Schedule A as the Proposed Amount of Insurance of each Policy to be issued pursuant to this Commitment.
   g. "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.
   h. "Public Records": The recording or filing system established under State statutes in effect at the Commitment Date under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge. The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters.
   i. "State": The state or commonwealth of the United States within whose exterior boundaries the Land is located. The term "State" also includes the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and Guam.
   j. "Title": The estate or interest in the Land identified in Item 3 of Schedule A.

2. If all of the Schedule B, Part I—Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   a. the Notice;
   b. the Commitment to Issue Policy;
   c. the Commitment Conditions;
   d. Schedule A;
   e. Schedule B, Part I—Requirements; and
   f. Schedule B, Part II—Exceptions; and
   g. a signature by the Company or its issuing agent that may be in electronic form.

This page is only a part of a 2021 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**CM-37 ALTA Commitment for Title Insurance (ALTA Adopted 07-01-2021)**      **(WLTIC Edition 08/25/2021)**

EXHIBIT 2 PAGE 39

**4. COMPANY'S RIGHT TO AMEND**

The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company is not liable for any other amendment to this Commitment.

**5. LIMITATIONS OF LIABILITY**

a. The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:

i. comply with the Schedule B, Part I—Requirements;

ii. eliminate, with the Company's written consent, any Schedule B, Part II—Exceptions; or

iii. acquire the Title or create the Mortgage covered by this Commitment.

b. The Company is not liable under Commitment Condition 5.a. if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.

c. The Company is only liable under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.

d. The Company's liability does not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Condition 5.a. or the Proposed Amount of Insurance.

e. The Company is not liable for the content of the Transaction Identification Data, if any.

f. The Company is not obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I—Requirements have been met to the satisfaction of the Company.

g. The Company's liability is further limited by the terms and provisions of the Policy to be issued to the Proposed Insured.

**6. LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT; CHOICE OF LAW AND CHOICE OF FORUM**

a. Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

b. Any claim must be based in contract under the State law of the State where the Land is located and is restricted to the terms and provisions of this Commitment. Any litigation or other proceeding brought by the Proposed Insured against the Company must be filed only in a State or federal court having jurisdiction.

c. This Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

d. The deletion or modification of any Schedule B, Part II—Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

e. Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

f. When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**CM-37 ALTA Commitment for Title Insurance (ALTA Adopted 07-01-2021)** (WLTIC Edition 08/25/2021)

*This page is only a part of a 2021 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

**CM-37 ALTA Commitment for Title Insurance (ALTA Adopted 07-01-2021)**          **(WLTIC Edition 08/25/2021)**

**7. IF THIS COMMITMENT IS ISSUED BY AN ISSUING AGENT**

The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for closing, settlement, escrow, or any other purpose.

**8. PRO-FORMA POLICY**

The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

**9. CLAIMS PROCEDURES**

This Commitment incorporates by reference all Conditions for making a claim in the Policy to be issued to the Proposed Insured. Commitment Condition 9 does not modify the limitations of liability in Commitment Conditions 5 and 6.

**10. CLASS ACTION**

ALL CLAIMS AND DISPUTES ARISING OUT OF OR RELATING TO THIS COMMITMENT, INCLUDING ANY SERVICE OR OTHER MATTER IN CONNECTION WITH ISSUING THIS COMMITMENT, ANY BREACH OF A COMMITMENT PROVISION, OR ANY OTHER CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THE TRANSACTION GIVING RISE TO THIS COMMITMENT, MUST BE BROUGHT IN AN INDIVIDUAL CAPACITY. NO PARTY MAY SERVE AS PLAINTIFF, CLASS MEMBER, OR PARTICIPANT IN ANY CLASS OR REPRESENTATIVE PROCEEDING. ANY POLICY ISSUED PURSUANT TO THIS COMMITMENT WILL CONTAIN A CLASS ACTION CONDITION.

**11. ARBITRATION**

The Policy contains an arbitration clause. All arbitrable matters when the Proposed Amount of Insurance is $2,000,000 or less may be arbitrated at the election of either the Company or the Proposed Insured as the exclusive remedy of the parties. A Proposed Insured may review a copy of the arbitration rules at http://www.alta.org/arbitration.

.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

**CM-37 ALTA Commitment for Title Insurance (ALTA Adopted 07-01-2021)**          **(WLTIC Edition 08/25/2021)**



**WESTCOR**
LAND TITLE INSURANCE COMPANY

**ALTA COMMITMENT FOR TITLE INSURANCE**
**(ALTA Adopted 07-01-2021)**

*Transaction Identification Data, for which the Company assumes no liability as set forth in Commitment Condition 5.e.:*

Issuing Agent: Pioneer Title Agency, Inc.
Issuing Office: 1550 E. Missouri Ave., Phoenix, AZ 85014
ALTA® Universal ID: 0000097
Loan ID Number:
Issuing Office File Number: 72502832-025-JS1
Property Address: 4200 N. Miller Road, Unit 117, Scottsdale, AZ 85251
Revision Number:

# SCHEDULE A

1.   Commitment Date: **October 24, 2023 at 7:30 AM**

2.   Policy to be issued:

   (a)   **ALTA Homeowners Policy 9-21-21**

   Proposed Insured:

   Proposed Amount of Insurance: **$To Come**

   The estate or interest to be insured: **FEE SIMPLE**

   (b)   **ALTA Loan Policy 7-1-21 Extended Coverage**

   Proposed Insured:

   Proposed Amount of Insurance: **$To Come**

   The estate or interest to be insured: **FEE SIMPLE**

   (c)   **None**

   Proposed Insured:

   Proposed Amount of Insurance: **$0.00**

   The estate or interest to be insured:

3.   The estate or interest in the Land at the Commitment Date is:

   **FEE SIMPLE**

4.   The Title is, at the Commitment Date, vested in:

   **E. Lynn Schoenmann, a widow and the heir or devisees of the Estate of Donn R. Schoenmann, deceased**

This page is only a part of a 2021 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

**CM-37S ALTA Commitment for Title Insurance (ALTA Adopted 07-01-2021)-SCHEDULES A, BI and BII    (WLTIC Edition 08/25/2021)**



**ALTA COMMITMENT FOR TITLE INSURANCE**
**(ALTA Adopted 07-01-2021)**

## SCHEDULE A
(Continued)

5.      The Land is described as follows:

   **See Exhibit A attached hereto and made a part hereof.**

Countersigned:

By: _____

   Authorized Officer or Agent

---

*This page is only a part of a 2021 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**CM-37S ALTA Commitment for Title Insurance (ALTA Adopted 07-01-2021)-SCHEDULES A, BI and BII      (WLTIC Edition 08/25/2021)**



**ALTA COMMITMENT FOR TITLE INSURANCE**
**(ALTA Adopted 07-01-2021)**

# EXHIBIT A
# LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF MARICOPA, STATE OF ARIZONA, AND IS DESCRIBED AS FOLLOWS:

Lot 117, of THE HERITAGE SCOTTSDALE, according to Amended and Restated Declaration recorded at Document No. 2014-255632 and plat recorded in Book 291 of Maps, page 35 and Amendment recorded in Document No. 86-269169 and Affidavit of Change recorded in Document No. 86-565551, records of Maricopa County, Arizona;

TOGETHER WITH an undivided interest in and to the common elements as set forth in said Declaration and as designated on said Plat and any annexations thereto.

This page is only a part of a 2021 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**CM-37S ALTA Commitment for Title Insurance (ALTA Adopted 07-01-2021)-SCHEDULES A, BI and BII     (WLTIC Edition 08/25/2021)**



**ALTA COMMITMENT FOR TITLE INSURANCE**
**(ALTA Adopted 07-01-2021)**

# SCHEDULE B – PART I
## REQUIREMENTS

All of the following Requirements must be met:

1.    The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2.    Pay the agreed amount for the estate or interest to be insured.

3.    Pay the premiums, fees, and charges for the Policy to the Company.

4.    Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5.    PAY first installment 2023 taxes.

6.    Proper showing that all assessments due and payable, levied by The Heritage-Scottsdale Owners Association, have been paid through the closing date of this transaction.

7.    No open deeds of trust were found of record.  Provide written verification by the principals and/or their agents that the subject property is free and clear of any voluntary encumbrances and advise the Title Department accordingly prior to close of escrow.

8.    PROPER PROCEEDINGS in the United States District Court, Arizona District, in the matter of the Estate of E. Lynn Schoenmann debtor, Case No. 22-30028, leading to the recordation of a certified copy of an Order authorizing or approving this transaction.

      NOTE: Escrow shall not close and policy issue until 14 days from the date of said Order confirming sale has been entered with the Clerk of the Bankruptcy Court, with no appeal from said Order or request to extend the 14 day period having been filed.  Prior to close of escrow and no sooner than 14 days subsequent to entry of the Order, Escrow must request a Company employee to verify that the appeal period has expired and no appeal or request to extend the 14 day period has been filed.

9.    RECORD Release of Lis Pendens
      Recorded                 February 1, 2019
      Document No.         2019-72271

This page is only a part of a 2021 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**CM-37S ALTA Commitment for Title Insurance (ALTA Adopted 07-01-2021)-SCHEDULES A, BI and BII    (WLTIC Edition 08/25/2021)**



**ALTA COMMITMENT FOR TITLE INSURANCE**
**(ALTA Adopted 07-01-2021)**

## SCHEDULE B
## PART I – REQUIREMENTS
(Continued)

10.  PROPER proceedings in the Superior Court of Arizona, Maricopa County, in the matter of the Estate of Donn R. Schoenmann, deceased, Probate No.    leading to issuance of Letters without restrictions.
-or-
In lieu thereof, provide such alternative documentation acceptable to the Company.

11.  RECORD certified copy of Letters of Appointment of Personal Representative entered in the Superior Court of Arizona, Maricopa County, in the matter of the Estate of Donn R. Schoenmann, deceased, Probate No.    . Certification must be within 60 days of closing.

12.  Record Deed from    , as Personal Representative of the Estate of Donn R. Schoenmann, deceased, Maricopa County Probate Case No.    and E. Lynn Schoenmann, a widow, to the proposed insured owner.

NOTE:  ARS 11-1133 may require the completion and filing of an Affidavit of Value.

13.  RECORD Deed of Trust to be insured.

NOTE:  If Pioneer Title Agency, Inc. is named Trustee under the Deed of Trust, the correct name and address is:

Pioneer Title Agency, Inc., an Arizona Corporation
P.O. Box 1900
Sierra Vista, AZ  85636

TAX NOTE:

| | |
|---|---|
| Year | 2023 |
| Parcel No. | 173-52-083A |
| Total Tax | $1,453.32 |
| First Half | $726.66 |
| Second Half | $726.66 |

*This page is only a part of a 2021 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



CM-37S ALTA Commitment for Title Insurance (ALTA Adopted 07-01-2021)-SCHEDULES A, BI and BII      (WLTIC Edition 08/25/2021)



**ALTA COMMITMENT FOR TITLE INSURANCE**
**(ALTA Adopted 07-01-2021)**

## SCHEDULE B
## PART I – REQUIREMENTS
(Continued)

PRIOR to recording, obtain current tax information from:

Maricopa County Treasurer Phone: (602) 506-8511
301 W. Jefferson website: http://treasurer.maricopa.gov/index.htm
Phoenix, AZ 85003

NOTE: The only conveyance(s) affecting said land recorded within 24 months of the date of this commitment is (are) as follows:

NONE.

NOTE: The address of said land is purported to be: 4200 N. Miller Road, Unit 117, Scottsdale, AZ 85251 The Company assumes no liability as to the validity and/or accuracy of any such address.

NOTE: In the event a CLTA 116 or ALTA 22-06 endorsement is required for any ALTA Loan Policy to be issued, the following description of improvements and location will appear therein:

Single Family Residence purportedly known as: **4200 N. Miller Road, Unit 117, Scottsdale, AZ 85251.**

The Company assumes no liability as to the validity and/or accuracy of any such address. This information is provided solely for the convenience of, and at the request of the proposed insured lender herein.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



CM-37S ALTA Commitment for Title Insurance (ALTA Adopted 07-01-2021)-SCHEDULES A, BI and BII     (WLTIC Edition 08/25/2021)



**ALTA COMMITMENT FOR TITLE INSURANCE**
**(ALTA Adopted 07-01-2021)**

## SCHEDULE B
## PART I – REQUIREMENTS
(Continued)

NOTE: The owner's policy of title insurance committed to be issued will contain Deductible Amounts and Liability Limits relative to certain Covered Risks as follows:

Covered Risk 16 has a deductible of 1% of the Policy Amount or $2,500 whichever is lesser, and a Maximum Dollar Limit of Liability of $10,000.

Covered Risk 18 has a deductible of 1% of the Policy Amount or $5,000 whichever is lesser, and a Maximum Dollar Limit of Liability of $25,000.

Covered Risk 19 has a deductible of 1% of the Policy Amount or $5,000 whichever is lesser, and a Maximum Dollar Limit of Liability of $25,000.

Covered Risk 21 has a deductible of 1% of the Policy Amount or $2,500 whichever is lesser, and a Maximum Dollar Limit of Liability of $5,000.

**<u>Note: Pursuant to Arizona Revised Statutes 11-480, effective January 1, 1991, the County Recorder may not accept documents for recording that do not comply with the following:</u>**

- **<u>Print must be ten-point type (pica) or larger.</u>**
- **<u>Margins of at least one-half inch along the left and right sides one-half inch across the bottom and at least two inches on top for recording and return address information.</u>**
- **<u>Each instrument shall be no larger than 8 ½ inches in width and 14 inches in length.</u>**

---

**END OF SCHEDULE B – Part I**

---

*This page is only a part of a 2021 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**CM-37S ALTA Commitment for Title Insurance (ALTA Adopted 07-01-2021)-SCHEDULES A, BI and BII (WLTIC Edition 08/25/2021)**



**WESTCOR**
LAND TITLE INSURANCE COMPANY

**ALTA COMMITMENT FOR TITLE INSURANCE**
**(ALTA Adopted 07-01-2021)**

# SCHEDULE B – PART II

# EXCEPTIONS

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage.**

The Policy will not insure against loss or damage resulting from the terms and conditions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1.     Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I—Requirements are met

2.     Rights or Claims of parties in possession not shown by the public records.

3.     Easements or claims of easements not shown by the public records.

4.     Discrepancies, conflicts in boundary lines, encroachments, overlaps, variations or shortage in area or content, party walls and any other matters that would be disclosed by a correct survey and/or physical inspection of the land.

5.     Any lien, or right to lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public record.

6.     Any water or well rights, or rights or title to water or claims thereof, in, on or under the land.

7.     Unpatented mining claims; reservations or exceptions in patents or in the Acts authorizing the issuance of said patents.

8.     All taxes, assessments, levies and charges which constitute liens or are due or payable including unredeemed tax sales.

(Note:  The above Exceptions Nos. 2 through 8, inclusive, will be eliminated from any A.L.T.A. Extended Coverage Policy, A.L.T.A. Homeowner's Policy, A.L.T.A. Expanded Coverage Residential Loan Policy and any short form versions thereof. However, the same or similar exception may be made in Schedule B of those policies in conformity with the remaining Exceptions of this Commitment shown below.)

9.     Reservations or exceptions in Patents or in Acts authorizing the issuance thereof.

This page is only a part of a 2021 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a signature by the Company or its issuing agent that may be in electronic form.

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.


AMERICAN
LAND TITLE
ASSOCIATION

**CM-37S ALTA Commitment for Title Insurance (ALTA Adopted 07-01-2021)-SCHEDULES A, BI and BII     (WLTIC Edition 08/25/2021)**



**ALTA COMMITMENT FOR TITLE INSURANCE**
**(ALTA Adopted 07-01-2021)**

# SCHEDULE B
# PART II – EXCEPTIONS
(Continued)

10.  WATER RIGHTS, claims or title to water, and agreements, covenants, conditions or rights incident thereto, whether or not shown by the public records.
This exception is not limited by reason of the disclosure of any matter relating to Water Rights as may be set forth elsewhere in Schedule B.

11.  OBLIGATIONS imposed upon said land by its inclusion within any district formed pursuant to Title 48, Arizona Revised Statutes, excluding however Municipal or County Improvement Districts.

12.  TAXES AND ASSESSMENTS collectible by the County Treasurer, a lien payable but not yet due for the following year:

Second half of 2023

13.  EASEMENTS as shown on the recorded plat of said subdivision.

14.  Liabilities and obligations imposed upon the land, or the owner thereof, by reason of inclusion or membership in The Heritage-Scottsdale Owners Association.

15.  RESTRICTIONS, CONDITIONS, COVENANTS, RESERVATIONS, LIABILITIES AND OBLIGATIONS, including but not limited to any recitals creating easements or party walls, omitting, if any, from the above, any restrictions based on race, color, religion, sex, handicap, familial status or national origin contained in instrument:

Recorded in Document No.      2014-255632
and as shown on the recorded plat of said subdivision.

---

### END OF SCHEDULE B – PART II

---

*This page is only a part of a 2021 ALTA Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**CM-37S ALTA Commitment for Title Insurance (ALTA Adopted 07-01-2021)-SCHEDULES A, BI and BII      (WLTIC Edition 08/25/2021)**



## Notice of Privacy Policy

### of

## Westcor Land Title Insurance Company

Westcor Land Title Insurance Company ("WLTIC") values its customers and is committed to protecting the privacy of personal information. In keeping with that philosophy, we have developed a Privacy Policy, set out below, that will ensure the continued protection of your nonpublic personal information and inform you about the measures WLTIC takes to safeguard that information.

### Who is Covered

We provide our Privacy Policy to each customer when they purchase an WLTIC title insurance policy. Generally, this means that the Privacy Policy is provided to the customer at the closing of the real estate transaction.

### Information Collected

In the normal course of business and to provide the necessary services to our customers, we may obtain nonpublic personal information directly from the customer, from customer-related transactions, or from third parties such as our title insurance agents, lenders, appraisers, surveyors or other similar entities.

### Access to Information

Access to all nonpublic personal information is limited to those employees who have a need to know in order to perform their jobs. These employees include, but are not limited to, those in departments such as legal, underwriting, claims administration and accounting.

### Information Sharing

Generally, WLTIC does not share nonpublic personal information that it collects with anyone other than its policy issuing agents as needed to complete the real estate settlement services and issue its title insurance policy as requested by the consumer. WLTIC may share nonpublic personal information as permitted by law with entities with whom WLTIC has a joint marketing agreement. Entities with whom WLTIC has a joint marketing agreement have agreed to protect the privacy of our customer's nonpublic personal information by utilizing similar precautions and security measures as WLTIC uses to protect this information and to use the information for lawful purposes. WLTIC, however, may share information as required by law in response to a subpoena, to a government regulatory agency or to prevent fraud.

### Information Security

WLTIC, at all times, strives to maintain the confidentiality and integrity of the personal information in its possession and has instituted measures to guard against its unauthorized access. We maintain physical, electronic and procedural safeguards in compliance with federal standards to protect that information.

*The WLTIC Privacy Policy can also be found on WLTIC's website at www.wltic.com.*

# Pioneer Title Agency, Inc.
### *Commitment to Service*

## Privacy Policy Statement

The Financial Services Modernization Act, known as the Gramm-Leach-Bliley Act, requires us to explain to our customers the ways in which we collect and use customer information.

### We are committed to Safeguarding Customer Information
In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with your personal and/or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, **Pioneer Title Agency, Inc.** has adopted this Privacy Policy to govern the use and handling of your personal information.

### Personal Information Collected
- Information we receive from you on applications or other forms, such as your name, address, social security number, tax identification number, asset information, and income information;
- Information about your transactions with or services performed by us, our affiliates, or others, such as information concerning your policy, premiums, payment history, information about your home or other real property, information from lenders and other third parties involved in such transaction, account balances, and credit card information; and
- Information we receive from consumer or other reporting agencies and publicly recorded documents.

### Use of Information
We may disclose the above information (excluding information we receive from consumer or other credit reporting agencies) about our customers or former customers to our affiliates or nonaffiliated third parties as permitted by law. Disclosures may include, without limitation, the following:
- To insurance agents, brokers, representatives, support organizations, or others to provide you with services you have requested, and to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure in connection with an insurance transaction;
- To third party contractors or service providers for the purpose of determining your eligibility for an insurance benefit or payment and/or providing you with services you have requested;
- To an insurance regulatory authority, or a law enforcement or other governmental authority, in a civil action, in connection with a subpoena or a governmental investigation;
- To lenders, lien holders, judgment creditors, or other parties claiming an encumbrance or an interest in title whose claim or interest must be determined, settled, paid or released prior to a title or escrow closing.

### Links to Other Websites
Our websites contain links to websites that are provided and maintained by third parties and that are not subject to our Privacy Policy Statement. Please review the privacy policy statements on those websites. We make no representations concerning and are not responsible for any such third party websites or their privacy policies or practices.

### Confidentiality and Security
We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees to ensure that your information will be handled responsibly and in accordance with the Privacy Policy Statement. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

**WE DO NOT DISCLOSE ANY NONPUBLIC PERSONAL INFORMATION ABOUT YOU WITH ANYONE FOR ANY PURPOSE THAT IS NOT SPECIFICALLY PERMITTED BY LAW.**

# Exhibit 3

Case: 22-30028    Doc# 499    Filed: 03/01/24    Entered: 03/01/24 15:11:33    Page 59 of
107

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
ADRIAN FONTES
20190072271  02/01/2019  11:29
PAPER RECORDING

0109109-6-1-1
crocfers

**RECORDING REQUESTED BY**
Alicia M. Gámez, Esq.
220 Montgomery Street, Suite 1200
San Francisco, CA 94104

**AND WHEN RECORDED MAIL TO**
Alicia M. Gámez, Esq.
220 Montgomery Street, Suite 1200
San Francisco, CA 94104

APN: 173-52-083A

Space above line for Recorder's Use

Property Address:
4200 N. Miller Road, Unit 117, Scottsdale, AZ 85251

## NOTICE OF PENDENCY OF ACTION
## (LIS PENDENS)

ALICIA M. GÁMEZ (State Bar No. 244948)
Law Office of Alicia M. Gámez
220 Montgomery Street, Suite 1200
San Francisco, California 94104
Telephone: 415.341.8143
Email: alicia@gamezlaw.com

Attorney for
        Executor Stuart Gordon Schoenmann

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF MARIN

| | |
|---|---|
| IN THE<br><br>ESTATE OF<br><br>DONN R. SCHOENMANN | Case No. PR1801087<br><br>**NOTICE OF PENDENCY OF ACTION (LIS PENDENS)** |

[Names of the parties to the proceeding:
**Plaintiffs / Petitioners:**
Celeste Lytle,
Colette Sims,
Beth Schoenmann,
Stuart Gordon Schoenmann, and
Stuart Gordon Schoenmann, Executor of the Estate of Donn R. Schoenmann
**Defendants / Respondents:**
E. Lynn Schoenmann
920 Powell Street, LLC]

1

Case No: PR1801087

1 NOTICE IS HEREBY GIVEN that the above-entitled action concerning and affecting

2 real property as described herein was commenced on January 11, 2019 by the Plaintiffs /

3 Petitioners, **Celeste Lytle, Colette Sims, Beth Schoenmann, Stuart Gordon Schoenmann,**

4 and **Stuart Gordon Schoenmann as Executor of the Estate of Donn R. Schoenmann,**

5 against the Defendants / Respondents, **E. Lynn Schoenmann** and **920 Powell Street, LLC,**

6 and is now pending in Department J of this Court, located at 3501 Civic Center Drive, San

7 Rafael, California, 94913.

8 The action affects title to or right to possess that certain real property commonly

9 known as 4200 N. Miller Road, Unit 117, Scottsdale, Arizona, 85251, and said ownership

10 that was created by Instrument recorded March 4, 2014 in Document No. 20140139932,

11 among the land records of Maricopa County, Arizona ("Scottsdale Condo") and described as

12 follows:

13
14 LOT 117, of THE HERITAGE SCOTTSDALE, ACCORDING TO DECLARATION OF HORIZONTAL PROPERTY REGIME RECORDED IN DOCUMENT NO. 90-0261768, DOCUMENT NO. 91-0578637,
15 DOCUMENT NO. 91-0578638, DOCUMENT NO. 92-0144638, DOCUMENT NO. 92-0144640, DOCUMENT NO. 92-0277321,
16 DOCUMENT NO. 92-0277322, DOCUMENT NO. 93-0024944,
17 DOCUMENT NO. 93-0786432, DOCUMENT NO. 96-0864288 AND IN DOCUMENT NO. 96-0849545, AND PLAT RECORDED IN BOOK 291 OF
18 MAPS, PAGE 35, RECORDS OF MARICOPA COUNTY ARIZONA.

19 TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMON ELEMENTS AS SET FORTH IN SAID DECLARATION AND PLAT.
20
21 [APN: 173-52-083A]
[Commonly known as: 4200 N. Miller Road, Unit 117, Scottsdale, AZ 85251]
22

23 The property is designated as Assessor's Parcel No. 173-52-083A in the Maricopa

24 County Assessor's office.

25 The parties to said action are set forth below the title to the action.

26

27 Dated: January **16**, 2019

Alicia M. Gamez, Attorney for
28 Executor Stuart Gordon Schoenmann

2

Case No: PR1801087

# PROOF OF SERVICE

*In the Estate of Donn R. Schoenmann*, Marin County Superior Court Case No. **PR1801087**

1. I am over the age of 18 and not a party to this cause. I am a resident of or employed in the county where the mailing occurred.

2. My business address is:  Law Office of Alicia M. Gámez
220 Montgomery Street, Suite 1200
San Francisco, CA 94104

3. I served the following documents on each person named below by E-Mail (Courtesy Copy, where email address indicated) and U.S. Mail, certified, return-receipt (where indicated) or U.S. Mail (where indicated) enclosing a copy in an envelope addressed and shown below AND deposited the sealed envelope with the United States Post Office on the date and at the place shown in item 4, with the postage fully prepaid;

   • NOTICE OF PENDENCY OF ACTION (LIS PENDENS)

4. The date mailed: 1/ 1 ᒼ /2019.  Place mailed: SAN FRANCISCO, CALIFORNIA.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at SAN FRANCISCO, CALIFORNIA.

Date: 1/ 1 ᒼ /2019          Signature: _____
                                            Alicia M. Gámez

---

3                                     Case No: PR1801087

**SERVICE LIST**

| | |
|---|---|
| *By U.S. MAIL*<br>Celeste Lytle, Colette Sims, and Beth Schoenmann, Beneficiaries<br>*via*<br>Frank Busch<br>WVBR LLP<br>100 Pine St., Suite 725<br>San Francisco, CA 94111<br>(These parties have requested that they are not contacted directly) | *By U.S. MAIL*<br>Jason Schoenmann and Anna Schoenmann, Beneficiaries<br>*Via*<br>Richard T. Franceschini<br>Guardian Ad Litem for Minor Children<br>Ragghiati Freitas LLP<br>1101 Fifth Avenue, Suite 100<br>San Rafael, CA 94901-3046<br>(These parties have requested that they are not contacted directly) |
| *By U.S. MAIL*<br>Stuart Gordon Schoenmann, Beneficiary<br>10157 Masters Drive NE<br>Albuquerque, NM 87111-5894 | *By U.S. MAIL*<br>James P. Lamping<br>Law Office of James P. Lamping<br>100 Pine Street, Suite 1250<br>San Francisco, CA 94111<br>Stuart Gordon Schoenmann, Beneficiary |
| *By U.S. MAIL, Certified, Return Receipt*<br><br>Eunice Lynn Schoenmann<br>39 Ethel Avenue<br>Mill Valley, CA, 94941 | *By U.S. MAIL, Certified, Return Receipt*<br>First Republic Bank<br>c/o Liza C Bunker, Esq.<br>Hanson Bridgett LLP<br>500 Capitol Mall, Suite 1500<br>Sacramento, CA 95814-4740<br>By Email To:<br>Mwalizadeh@hansonbridgett.com<br>LBunker@hansonbridgett.com |
| *By U.S. MAIL, Certified, Return Receipt*<br>Philip Goldstein (Agent for Service of Process)<br>920 POWELL STREET, LLC<br>414 Gough Street, Suite 2<br>San Francisco, CA 94102<br><br>920 POWELL STREET, LLC<br>294 29TH ST<br>SAN FRANCISCO, CA 94131-2407 | *By U.S. MAIL, Certified, Return Receipt*<br>920 Powell Street, LLC<br>Jeffrey H. Lowenthal<br>Thomas J. Lloyd<br>STEYER LOWENTHAL<br>One California Street, Third Floor<br>San Francisco, California 94111 |
| *By U.S. MAIL*<br>State of California Franchise Tax Board<br>PO BOX 2952 MS A454<br>Sacramento, CA 95812-2952 | *By U.S. MAIL*<br>Alicia M. Gamez<br>220 Montgomery Street, Suite 1200<br>San Francisco, CA 94104<br>[Attorney for Executor Stuart Gordon Schoenmann] |

4

Case No: PR1801087

EXHIBIT 3  PAGE 58

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA              )

COUNTY OF SAN FRANCISCO          )        SEAL

                                 )

On *January 16, 2019* before me, *S͟U͟R͟I͟N͟D͟E͟R͟ ͟K͟u͟m͟a͟n͟ ͟N͟o͟t͟a͟r͟y͟ ͟P͟u͟b͟l͟i͟c͟.*, personally appeared *Alicia M. Gamez* proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within Notice of Pendency of Action (Lis Pendens) and acknowledged to me that *[he/she]* executed the same in *[his/her]* authorized capacity, and that by *[his/her]* signature on the instrument the person, or the entity on behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Date: January 16, 2019

_____
*[Signature of Notary Public]*

SURINDER KUMAR
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2257423
SAN FRANCISCO COUNTY
My Comm. Exp. October 2, 2022

# Exhibit 4

Thomas H. Casey – Bar No. 138264
LAW OFFICE OF THOMAS H. CASEY, INC.
A PROFESSIONAL CORPORATION
26400 La Alameda, Suite 210
Mission Viejo, CA 92691
Telephone:     (949) 766-8787
Facsimile:     (949) 766-9896
Email:         TomCasey@tomcaseylaw.com

Attorneys for Jason M. Rund
Chapter 7 Bankruptcy Trustee

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 22-30028-DM |
| E. LYNN SCHOENMANN, | Chapter 7 |
| Debtor. | **STIPULATION BETWEEN THE CHAPTER 7 TRUSTEE AND STUART SCHOENMANN AS EXECUTOR OF THE PROBATE ESTATE OF DONN R. SCHOENMANN REGARDING THE TRUSTEE'S SALE OF THE REAL PROPERTY LOCATED AT 4200 NORTH MILLER ROAD, #117, SCOTTSDALE, AZ PURSUANT TO SECTION 363(h) AND PERSONAL PROPERTY** |
| | [No Hearing Required] |

This stipulation ("Stipulation") is entered into by and between Jason M. Rund in his capacity as Chapter 7 Trustee ("Trustee") of the bankruptcy estate of E. Lynn Schoenmann and Stuart Schoenmann in his capacity as Executor of the probate estate of Donn R. Schoenmann (collectively the "Parties") regarding the Trustee's sale of the real property located at 4200 North Miller Road, #117, Scottsdale, AZ ("Scottsdale Condo") and the personal property in the

1

Scottsdale Condo ("Personal Property") to the proposed buyer as follows:

**BACKGROUND FACTS.**

1.     On January 31, 2019, Executor Stuart Gorden Schoenmann, beneficiaries Stuart Schoenmann, Celeste Lytle, Beth Schoenmann, and Collete Sims ("Petitioners") per Order of the Marin County Probate Court amended their petitions to one petition and filed their First Amended Verified Petition For Order To Establish Estate's Claim Of Ownership To Property; Directing Its Transfer To Estate; Enforcing Agreement; For Damages;  For Attorney's Fees; For Financial Elder Abuse; For Breach Of Fiduciary Duty; For Fraud; For Allocation;  Voidable Transfer; And Recover Of Estate Assets; Probate Code §§ 850, 859, 11444; Civil Code §§ 1575; 3294, 3345, 3439; Family Code §§ 1101, 1102; W&I Code §§ 15610.07, 15610.30, 15610.70, 15657.50 against E. Lynn Schoenmann in the Marin County Probate Court, Case No. PRO 1801087 ("First Amended Verified Petition").

2.     On February 1, 2019 the Petitioners caused a lis pendens to be recorded against the Scottsdale Condo in the Maricopa County Recorder's Office, Arizona.

3.     On December 27, 2021 the Probate Court entered a twenty-six (26) page Tentative Decision and Proposed Statement of Decision On Petitioner's Motion To Invalidate The Post Marital Agreement Between Donn and Lynn Schoenmann in favor of the Petitioners ("Tentative Decision").

4.      On January 14, 2022 the Debtor filed her Chapter 11 petition in this Bankruptcy Court.

5.     In the Bankruptcy Court adversary proceeding Plaintiff Debtor E. Lynn Schoenmann v.  Stuart Gordon Schoenmann, Celeste Lytle, Beth Schoenmann, and Collete Sims, Adv. Pro. No. 22-3024, and by Judgment entered December 5, 2022, the Bankruptcy Court ordered in pertinent part: "…the so called March Deeds..,.are validated and upheld in this adversary proceeding, with no right of survivorship in favor of Plaintiff, but subject to administration in this bankruptcy estate via Plaintiff's undisputed one-half interest as jointly

EXHIBIT 4  PAGE 61

owned property." (Doc. 22).

6. By Order Approving And Authorizing Sale of Real Property (39 Ethel, Mill Valley, CA) ("Mill Valley Property") entered July 17, 2023 (Doc. 340) and Order In Aid Of Order Approving And Authorizing Sale of Real Property entered August 2, 2023 (Doc. 353), the Bankruptcy Court approved the Debtor's sale of the Mill Valley Property and ordered the disbursement of half of the net sale proceeds to be disbursed to counsel for Executor Stuart Schoenmann. By Motion in Adversary Proceeding No. 22-03024, Debtor moved to stay distribution of these sale proceeds to Defendant the Probate Estate pending appeal of the bankruptcy court's December 5, 2022 judgment. The Court denied this motion and by Order dated August 22, 2023 in Adversary Proceeding 22-03017, the Court ordered disbursement of the Probate Estate's net sale proceeds to it.

7. Upon the filing of the Debtor's Notice of Conversion in the Bankruptcy Court on September 7, 2023, the Debtor's Chapter 11 case was converted to one under Chapter 7.

8. On September 7, 2023, and on behalf of Chapter 7 Trustee Jason M. Rund, the Office of the United States Trustee filed the Notice of Appointment of Trustee.

9. On October 4, 2023, the Debtor filed her Amended Schedule A/B listing the bankruptcy estate's interest in the Scottsdale Condo and personal property in the Scottsdale Condo.

10. Executor Stuart Schoenmann asserts a Fifty Percent (50%) interest in the Scottsdale Condo and the Personal Property in the Scottsdale Condo.

11. The Trustee's real estate agent has marketed the Scottsdale Condo and the Personal Property for sale and has accepted an offer subject to certain terms and conditions.

12. The Parties have agreed to the Trustee's sale of the Scottsdale Condo and the Personal Property in the Scottsdale Condo subject to the following terms and conditions.

## **STIPULATION.**

The Parties hereby stipulate as follows:

3

a.) The Parties agree to the Trustee's sale of the Scottsdale condo per Section 363(h) and the Personal Property to the proposed buyer:

b.) The Parties agree the Trustee may sell their 100% title and equitable interests in the Scottsdale Condo and:

1. Partition in kind of the Scottsdale Condo among the estate and the Executor is impracticable;

2. Sale of the estate's undivided interest in the Scottsdale Condo would realize significantly less for the estate than sale of the Scottsdale Condo free of the interests of such co-owners;

3. The benefit to the estate of a sale of the Scottsdale Condo free of the interest of the Executor as co-owner outweighs the detriment, if any, to the Executor; and

4. The Scottsdale Condo is not used in the production, transmission, or distribution, for sale, of electric energy or of natural of synthetic gas for heat, light or power.

c.) The Executor waives his rights to purchase the Scottsdale Condo per Section 363(i);

d.) The purchase price for the Scottsdale Condo and the Personal Property is $376,000 subject to overbid;

e.) Total real estate commissions are six percent (6%) of the gross sales price.

f.) Per Section 363(j) Fifty Percent (50%) of the net sale proceeds shall be disbursed from escrow to the Estate of Donn Schoenmann, Stuart Gordon Schoenmann Executor, SMBC Manubank, account #7369 and Fifty Percent (50%) of the net sale proceeds shall

4

be disbursed from escrow to Trustee Jason M. Rund. Net sale proceeds are defined as the gross sales price after deducting real estate commissions, escrow fees, closing costs, homeowner associate fees and real property taxes;

g.) The Trustee on the one hand, and Executor Stuart Schoenmann on the other hand, are responsible for the potential capital gains taxes, if any, from the sale of their respective interests in the Scottsdale Condo and the Personal Property;

h.) Executor Stuart Gordon Schoenmann will release his lis pendens recorded against the Scottsdale Condo;

i.) The Parties will prepare and execute all documents necessary to close escrow and as reasonably requested by the Trustee;

j.) This Stipulation shall be included in the Trustee's motion to sell the Scottsdale Condo and the Personal Property; and

k.) This Stipulation is subject to approval of the Bankruptcy Court. Absent an order of the Bankruptcy Court approving this Stipulation it is of no force and effect.

Respectfully submitted,

Law Offices of Thomas H. Casey

DATED: March 1, 2024

By: _/s/Thomas H. Casey_____
Thomas H. Casey
Attorney for Jason M. Rund, Chapter 7 Trustee

Law Offices of Miriam Hiser

DATED: March 1, 2024.

By: _Miriam Hiser_____
Miriam Hiser
Attorney for Stuart Schoenmann,
Executor of the probate estate of Donn R. Schoenmann

5

DATED:  March 1, 2024.

Law Office of Alicia M. Gamez

By: _____

Alicia M. Gamez
Attorney for Stuart Schoenmann, Executor of the
probate estate of Donn R. Schoenmann

6

# Exhibit 5



Oct 23, 2023 at 12:05:55 PM

EXHIBIT 5 PAGE 66



Oct 23, 2023 at 12:10:16 PM


Oct 23, 2023 at 12:19:19 PM



Oct 23, 2023 at 12:04:52 PM





Oct 23, 2023 at 12:18:58 PM



Oct 23, 2023 at 12:18:43 PM



Oct 23, 2023 at 12:18:33 PM

EXHIBIT 5 PAGE 73



Oct 23, 2023 at 12:18:20 PM

Case: 22-30028   Doc# 499   Filed: 03/01/24   Entered: 03/01/24 15:11:38   Page 82 of
107

EXHIBIT 5 PAGE 74



Oct 23, 2023 at 12:18:13 PM



Oct 23, 2023 at 12:17:47 PM



Oct 23, 2023 at 12:17:44 PM



Oct 23, 2023 at 12:17:30 PM



Oct 23, 2023 at 12:17:25 PM



Oct 23, 2023 at 12:09:07 PM



Oct 23, 2023 at 12:05:12 PM



Oct 23, 2023 at 12:06:15 PM



Oct 23, 2023 at 12:06:07 PM

EXHIBIT 5 PAGE 83



Oct 23, 2023 at 12:08:41 PM

Case: 22-30028   Doc# 499   Filed: 03/01/24   Entered: 03/01/24 15:41:39   Page 92 of 107

EXHIBIT 5 PAGE 84



Oct 23, 2023 at 12:11:49 PM



Oct 23, 2023 at 12:05:36 PM



Oct 23, 2023 at 12:07:55 PM


Oct 23, 2023 at 12:07:51 PM



Jan 10, 2024 at 11:55:14 AM



Jan 10, 2024 at 11:54:27 AM



# Exhibit 6



Signed and Filed: December 21, 2023

_____

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

1  Thomas H. Casey – Bar No. 138264
2  LAW OFFICE OF THOMAS H. CASEY, INC.
   A PROFESSIONAL CORPORATION
3  26400 La Alameda, Suite 210
   Mission Viejo, CA  92691
4  Telephone:     (949) 766-8787
   Facsimile:      (949) 766-9896
5  Email:          TomCasey@tomcaseylaw.com

6  Attorneys for Jason M. Rund
   Chapter 7 Bankruptcy Trustee

7

8                  **UNITED STATES BANKRUPTCY COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10                     **SAN FRANCISCO DIVISION**

11  In re                                   )   Case No. 22-30028-DM
                                            )
12  E. LYNN SCHOENMANN,                     )   Chapter 7
                                            )
13                       Debtor(s).         )   **ORDER GRANTING APPLICATION OF**
                                            )   **CHAPTER 7 TRUSTEE JASON M. RUND**
14                                          )   **TO EMPLOY AND COMPENSATE REAL**
                                            )   **ESTATE BROKER (R.O.I. PROPERTIES,**
15                                          )   **LLC)**
                                            )
16                                          )
                                            )   (No Hearing Required)
17                                          )
    _____)

18

19         Upon consideration of the Chapter 7 Trustee Jason M. Rund's ("Trustee") Application to

20  Employ and Compensate Real Estate Broker, R.O.I. Properties, LLC ("Application") in this

21  Chapter 7 bankruptcy case, to market and sell 4200 North Miller Road, Unit 117, Scottsdale,

22  Arizona 85251 ("Scottsdale Property") pursuant to the Listing Agreement and Addendum as

23  submitted as an Exhibit to the Application, it appearing that R.O.I. Properties, LLC ("Broker") is

24  qualified to act as Broker for the Trustee, and it appearing that the employment of the Broker

25  would be in the best interests of the estate, that Broker is disinterested and represents no interest

26  adverse to the estate, and good cause therefor appearing:

27

28

IT IS HEREBY ORDERED that:

1. The Trustee's Application is approved.

2. The Trustee is hereby authorized to employ R.O.I. Properties, LLC, as his Broker pursuant to the terms of the Listing Agreement and Addendum under 11 U.S.C. §328 of the Bankruptcy Code to perform the services set forth in the Application.

3. R.O.I. Properties, LLC shall not represent anyone other than the Trustee with respect to the sale of the Scottsdale Property.

4. R.O.I. Properties, LLC is authorized to receive compensation for its services in the Listing Agreement and Addendum directly from the proceeds of the sale of the Scottsdale Property.

5. The Court shall retain exclusive jurisdiction to resolve any disputes regarding this employment or the Listing Agreement and Addendum.

**\*\*\*END OF ORDER\*\*\***

2

<u>COURT SERVICE LIST</u>

E. Lynn Schoenmann
81 Pinheiro Circle
Novato, CA 94945

R.O.I. Properties, LLC
2001 E. Campbell Ave., #202
Phoenix, AZ 85016

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0971–3 | User: admin | Date Created: 12/21/2023 |
| Case: 22–30028 | Form ID: pdfeoc | Total: 2 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db          E. Lynn Schoenmann      81 Pinheiro Circle      Novato, CA 94945
trop        R.O.I. Properties, LLC       2001 E. Campbell Ave. #202        Phoenix, CA 85016

TOTAL: 2

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the City of Mission Viejo, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 26400 La Alameda, Suite 210, Mission Viejo, California 92691.

On **March 1, 2024,** I served the documents named below on the parties in this action as follows:

DOCUMENT(S) SERVED: **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) APPROVING SALE OF REAL PROPERTY LOCATED AT 4200 N. MILLER ROAD, #117, SCOTTSDALE, AZ 85251 PURSUANT TO 11 U.S.C. SECTIONS 363(b), (h), (i) and (j) AND PERSONAL PROPERTY; (2) APPROVING STIPULATION BETWEEN THE TRUSTEE AND EXECUTOR STUART SCHOENMANN; (3) APPROVING COMPENSATION OF REAL ESTATE BROKER; (4) APPROVING OVERBID PROCEDURES; (5) APPROVING DISTRIBUTION OF SALE PROCEEDS; (6) FOR A GOOD FAITH FINDING PURSUANT TO 11 U.S.C. SECTION 363(m); AND (7) WAIVER OF THE STAY RULE 6004(h); MEMORANDUM OF POINTS AND AUTHORITIES; CONCURRENTLY FILED DECLARATIONS OF CHAPTER 7 TRUSTEE JASON M. RUND, CPA DONALD T. FIFE, BROKER BETH JO ZEITZER, REAL ESTATE AGENT REBECCA MARVEL, AND PROPOSED BUYER NMW1, LLC IN SUPPORT**

SERVED UPON: **SEE ATTACHED SERVICE LIST**

**[X]** **(TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF))** The foregoing document will be served by the court via NEF and hyperlink to the document. On **March 1, 2024,** I checked the CM/ECF docket for this case and determined that the persons on the following page are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated on the following page.

**[X]** (**BY MAIL**) I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Mission Viejo, California.  I am readily familiar with the practice of the Law Office of Thomas H. Casey, Inc. for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.

**[X]** (**STATE**) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**[X]** (**FEDERAL**) I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on **March 1, 2024**, at Mission Viejo, California.

/s/Kathy Driggers
Kathy Driggers

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- Bachecki, Crom & Co., LLP    JCrom@bachcrom.com
- Frank Busch    ef-fhb@coblentzlaw.com, pallister@wvbrlaw.com
- Thomas Casey    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- Kimberly S. Fineman    kfineman@fhlawllp.com
- Stephen D. Finestone    sfinestone@fhlawllp.com
- Miriam E. Hiser    mhiser@hiserlaw.com
- Loren Kieve    lk@kievelaw.com
- Patricia H. Lyon    phlyon@frenchlyontang.com, mwoodward@frenchandlyon.com
- Garry Alan Masterson    BnkEcf-CA@weltman.com, gmasterson@weltman.com
- Brent D. Meyer    brent@meyerllp.com
- Office of the U.S. Trustee / SF    USTPRegion17.SF.ECF@usdoj.gov
- Audrey Pak    audrey.pak@usdoj.gov
- Corina Pandeli    corina.pandeli@usdoj.gov,
  ustp.region15@usdoj.gov,tiffany.l.carroll@usdoj.gov,abram.s.feuerstein@usdoj.gov
- Jason M Rund    jrund@srlawyers.com
- Joshua L. Scheer    jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- Michael St. James    ecf@stjames-law.com
- Christopher D. Sullivan    csullivan@sullivanblackburn.com,
  AJTorio@sullivanblackburn.com
- Reilly Wilkinson    rwilkinson@scheerlawgroup.com, rwilkinson@ecf.courtdrive.com
- Jennifer C. Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com


**TO BE SERVED VIA US MAIL:**

Interested Party
United States Bankruptcy Court
Attn: Hon. Dennis Montali
450 Golden Gate Avenue, 18th Floor
Mailbox 36099
San Francisco, CA 94102

Debtor
E. Lynn Schoenmann
81 Pinheiro Circle
Novato, CA 94945

Interested Parties
Miriam Hiser, Esq.
Law Offices of Miriam Hiser
550 Montgomery Street, Suite 650
San Francisco, CA 94111

Alicia Gamez, Esq.
c/o Gamez Law
Alicia Gamez, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111-5235

R.O.I. Properties, LLC
5090 N. 40th Street, Suite 190
Phoenix, AZ 85018