1  Thomas H. Casey – Bar No. 138264
   LAW OFFICES OF THOMAS H. CASEY, INC.
2  A PROFESSIONAL CORPORATION
   26400 La Alameda, Suite 210
3  Mission Viejo, CA 92691
   Telephone: (949) 766-8787
4  Facsimile: (949) 766-9896
   Email:    TomCasey@tomcaseylaw.com
5
   Attorney for Jason M. Rund,
6  Chapter 7 Bankruptcy Trustee

7              **UNITED STATES BANKRUPTCY COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
8                **SAN FRANCISCO DIVISION**

9

10  In re                                 Case No. 22-30028-DM
    E. LYNN SCHOENMANN,
11                                        Chapter 7
              Debtor.
12                                        **CHAPTER 7 TRUSTEE'S MOTION FOR
                                          ORDER: (1) APPROVING SALE OF REAL
13                                        PROPERTY LOCATED AT 25380 GREEN
                                          OAKS COURT AND ADJOINING LOT 20,
14                                        IDYLLWILD, CALIFORNIA PURSUANT TO
                                          11 U.S.C. §§ 363(b), (h), (i), and (j); (2)
15                                        APPROVING STIPULATION BETWEEN THE
                                          TRUSTEE AND EXECUTOR STUART
16                                        SCHOENMANN; (3) APPROVING
                                          COMPENSATION OF REAL ESTATE
17                                        BROKER; (4) APPROVING OVERBID
                                          PROCEDURES; (5) APPROVING
18                                        DISTRIBUTION OF SALE PROCEEDS; (6)
                                          FOR A GOOD FAITH FINDING PURSUANT
19                                        TO 11 U.S.C. §363(m); AND (7) WAIVER OF
                                          THE STAY RULE 6004(h); MEMORANDUM
20                                        OF POINTS AND AUTHORITIES;
                                          CONCURRENTLY FILED DECLARATIONS
21                                        OF CHAPTER 7 TRUSTEE JASON M. RUND,
                                          CPA DONALD T. FIFE, BROKER STEVE
22                                        ENLOW, AND PROPOSED BUYER DAVID D.
                                          HERTZING & TERRIE R. HERTZING
23                                        LIVING TRUST IN SUPPORT**

24                                        <u>Hearing Date</u>
                                          Date:    December 6, 2024
25                                        Time:    10:00 a.m.
                                          Judge:   Honorable Dennis Montali
26                                        By:      Video/Teleconference

27

28

# **TABLE OF CONTENTS**

Page

Summary .................................................................................................................... 1

Factual Background ...................................................................................................... 1

The Property To Be Sold .............................................................................................. 2

    A.  The Proposed Stipulation Between The Trustee And The Executor For The
       Estate Of Donn R. Schoenmann Should Be Approved ......................................... 3

The Proposed Value Of The Idyllwild Property Is For Fair Market Value ...................... 6

Sale Terms .................................................................................................................. 7

The Requested Overbid Procedures Should Be Approved ............................................ 8

Proposed Compensation For The Trustee's Real Estate Co-Brokers ............................. 8

The Proposed Sale Benefits The Estate ........................................................................ 8

Tax Consequences Of Sale ........................................................................................... 9

Proposed Distribution Of Sale Proceeds ...................................................................... 9

Determination Of Good Faith Purchaser ...................................................................... 10

Waiver Of The Stay Is Appropriate ............................................................................. 10

Requested Relief .......................................................................................................... 11

Memorandum Of Points And Authorities .................................................................... 14

The Proposed Sale Is A Sound Exercise Of The Trustee's Business Judgment ............. 14

The Stipulation Should Be Approved ........................................................................... 15

The Winning Bidder Should Be Afforded Protection Under §363(m) As A
Good Faith Purchaser .................................................................................................. 15

Relief From The 14-Day Waiting Period Under Rule 6004(h) Is Appropriate ............... 16

Conclusion ................................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Fin. Assoc. v. Loeffler (In re Equity Funding Corp. of Am.),*
492 F.2d 793 (9th Cir. 1974), cert. denied, 419 U.S. 964 (1974)......................................... 14

*240 N. Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 N. Brand Partners, Ltd.),*
200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) ......................................................................... 14

*In re Food Barn Stores, Inc.,*
107 F.3d 558, 564-65 (8th Cir. 1997)................................................................................ 14

*In re Lajijani,*
325 B.R. 282, 289 (B.A.P. 9th Cir. 2005) ......................................................................... 14

*In re WPRV-TV, Inc.,*
143 B.R. 315, 319 (D.P.R. 1991)........................................................................................ 14

*In re Energytec, Inc.*
739 F.3d 215, 218-19 (5th Cir. 2013) ............................................................................... 15

*Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),*
163 F.3d 570, 576 (9th Cir. 1998) .................................................................................... 15

*In re Ewell,*
958 F.2d 276, 282 (9th Cir. 1992) .................................................................................... 15

*Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.),*
846 F.2d 1170, 1172 (9th Cir. 1988)................................................................................. 16

**STATUTES**

11 U.S.C. §101(31)................................................................................................................. 10

11 U.S.C. §363 ....................................................................................................................... 14

11 U.S.C. §363(b) .............................................................................................. 1, 11, 14, 15, 17

11 U.S.C. §363(b)(1).............................................................................................................. 14

11 U.S.C. §363(h)............................................................................................ 1, 3, 4, 6, 11, 15, 17

11 U.S.C. §363(i)............................................................................................. 1, 3, 4, 6, 11, 15, 17

11 U.S.C. §363(j)........................................................................................ 1, 3, 4, 6, 11, 13, 15, 17, 19

11 U.S.C. §363(m)...................................................................................... 1, 10, 13, 15, 16, 19

## **OTHER AUTHORITIES**

Rule 6004(h) ................................................................................................ 1, 10, 11, 13, 16, 19

COLLIER ON BANKRUPTCY, ¶ 6004.11 (16th Ed. 2019) ........................................................ 16

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE, AND ALL CREDITORS AND PARTIES IN INTEREST:**

Jason M. Rund, Chapter 7 Trustee ("Trustee") of the bankruptcy estate of E. Lynn Schoenmann ("Debtor"), respectfully submits his Motion for Order (1) Approving Sale of Real Property Located at 25380 Green Oaks Court and adjoining Lot 20, Idyllwild, California, 92549 Pursuant to 11 U.S.C. §§ 363(b), (h), (i), and (j); (2) Approving Stipulation Between the Trustee and Executor Stuart Schoenmann; (3) Approving Compensation of Real Estate Agents; (4) Approving Overbid Procedures; (5) Approving Distribution of Sale Proceeds; (6) For a Good Faith Finding Pursuant to 11 U.S.C. §363(m); and (7) Waiver of the Stay Rule 6004(h) ("Sale Motion") and, in support thereof, submits the following:

## SUMMARY.

Subject to Court approval, the Trustee has accepted an offer from David D. Hertzing & Terrie R. Hertzing Living Trust ("Proposed Buyer") to purchase the residential, rental property located at 25380 Green Oaks Court and adjoining Lot 20, Idyllwild, California, 92549 ("Idyllwild Property") for the total amount of $572,500.00, subject to overbid.  In furtherance of the sale and to meet the requirements of Section 363 (h), (i), and (j) the Trustee requests the approval of the Trustee's proposed stipulation with the co-owners.  In the Trustee's business judgment, the proposed sale of the Idyllwild Property for the amount of $572,500.00, subject to overbid, is for fair market value.  By this Sale Motion, the Trustee requests approval of the sale of the Idyllwild Property, and the overbid procedures, and authority to pay real property taxes, real estate agent commissions, normal closing costs, and reimbursement of the Trustee's Broker for out-of-pocket costs, if any. As discussed more fully below, this Sale Motion is in the best interests of the estate and should be approved.

## FACTUAL BACKGROUND.

1. The Debtor filed a skeletal, voluntary petition under Chapter 11 of the Bankruptcy Code on January 14, 2022 ("Petition Date").

2. On March 20, 2023, the Court entered an Order Granting a motion to convert this case from chapter 11 to one under chapter 7 (Doc 278) ("Order").

1

3.     On September 7, 2023, the Office of the United States Trustee filed the Notice of Appointment of Trustee; Acceptance of Appointment as Trustee (Doc 397).

4.     On October 4, 2023, the Debtor filed Amended Schedules A/B and C (Doc 422) ("Amended Schedules").

5.     Pursuant to the Amended Schedules, the Debtor listed an interest in a free and clear rental real property located at 25380 Green Oaks Court and adjoining Lot 20, Idyllwild, California 92549 ("Idyllwild Property") with a value of $827,800.

### THE PROPERTY TO BE SOLD

6.     The Idyllwild Property and adjoining Lot 20 are legally described as follows:

Parcel 1:

Lot 21 of Tract No. 2790, in the County of Riverside, State of California, as shown by Map on filed on October 6, 1965 in Book 54, Pages 86 through 88 of Maps, Riverside County Records, together with that portion Lot 22 of Tract No. 2790, as shown by Map on file in Book 54, Pages 86 through 88 of Maps, Riverside County Records, lying South of the following described line:

Commencing at the Northeast corner of said Lot 22; thence S 00° 21' 08" W., 89.45 feet, along the East line of said Lot 22, to the point of beginning of said line to be described; thence S. 86° 48' 46" W., 147.01 feet, to the mid-point of the Westerly line of said Lot 22 and the termination of said line to be described.

Said mid-point of Lot 22 being equal distance from the Northwest corner and from the Southwest corner of Lot 22, as measured along the Westerly property line of said Lot. Said description is pursuant to Lot Line Adjustment No. 4544 approved by Riverside County Planning Department dated January 16, 2003 and recorded October 6, 2004 as Instrument No. 2004-0791538, of Official Records.

Parcel 2:

Lot 20 of Tract No. 2790, in the County of Riverside, State of California, as shown by Map on filed on October 6, 1965 in Book 54, Pages 86 through 88 inclusive of Maps, Riverside County Records.

APN:  563-073-005, 563-073-003

7.     Pursuant to the preliminary title report ("PTR"), title to the Idyllwild Property is currently held as "Donn R. Schoenmann and E. Lynn Schoenmann, each as to an undivided 50%

2

interest as tenants in common" and it is not subject to liens or encumbrances. A copy of the PTR is attached hereto as **Exhibit "2"** and incorporated herein by this reference.

### A. The Proposed Stipulation Between The Trustee And The Executor For The Estate Of Donn R. Schoenmann Should Be Approved.

8. Pursuant to the PTR, on January 31, 2019, a Notice of Pendency of Action was recorded against the Idyllwild Property by counsel for Stuart Schoenmann, Executor for the Estate of Donn R. Schoenmann, Instrument No. 2019-0034798 ("Lis Pendens"). A copy of the recorded Lis Pendens is attached hereto as **Exhibit "3"** and incorporated herein by this reference.

9. Pursuant to the PTR, on January 31, 2019, a second Notice of Pendency of Action was recorded against the Idyllwild Property by counsel for Stuart Schoenmann, Executor for the Estate of Donn R. Schoenmann, Instrument No. 2019-0034799 ("Lis Pendens"). A copy of the recorded Lis Pendens is attached hereto as **Exhibit "4"** and incorporated herein by this reference

10. The Trustee of the bankruptcy estate of E. Lynn Schoenmann and Executor Stuart Schoenmann (collectively, the "Parties") have entered into a stipulation that will, among other things, allow a sale of the Idyllwild Property free and clear of liens and meet the terms of Sections 363(h), (i), and (j) ("Stipulation"). A copy of the Stipulation is attached hereto as **Exhibit "5"** and incorporated herein by this reference.

11. The Stipulation provides the following terms:

   a) The legal description of the Idyllwild Real Property stated in the Preliminary Title Report attached to the Stipulation as Exhibit "1" is accurate;

   b) The Donn R. Schoenmann and E. Lynn Schoenmann 2003 Family Trust, UDT dated March 13, 2003 was revoked on March 12, 2015 and is of no force and effect as to the Idyllwild Real Property;

   c) Title to the Idyllwild Real Property is now vested in the Trustee and the Executor per their respective fifty percent (50%) interests as tenants in common;

   d) Per the Bankruptcy Court Order entered December 5, 2022, the Idyllwild Real Property is subject to administration by the Trustee;

3

e) The Parties agree to the Trustee's sale of the Idyllwild Real Property per Section 363(h) to the proposed buyer.

f) The Parties agree the Trustee may sell their collective 100% title and equitable interests in the Idyllwild Real Property and:

    1. Partition in kind of the Idyllwild Real Property among the estate and the Executor is impracticable;

    2. Sale of the estate's undivided interest in the Idyllwild Real Property would realize significantly less for the estate than sale of the Idyllwild Real Property free of the interests of such co-owners;

    3. The benefit to the estate of a sale of the Idyllwild Real Property free of the interest of the Executor as co-owner outweighs the detriment, if any, to the Executor; and

    4. The Idyllwild Real Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural of synthetic gas for heat, light, or power.

g) The Executor waives his rights to purchase the Idyllwild Real Property per Section 363(i); provided this Order is entered and becomes final, and the current sale is approved by this Court and closes;

h) The purchase price for the Idyllwild Real Property is $572,500 subject to overbid;

i) Total real estate commissions are six percent (6%) of the gross sales price;

j) Per Section 363(j) Fifty Percent (50%) of the net sale proceeds shall be disbursed from escrow to Estate of Donn R. Schoenmann, Stuart Gordan Schoenmann Executor and Fifty Percent (50%) of the net sale proceeds shall be disbursed from escrow to Trustee Jason M. Rund. Net sale proceeds are defined as the gross sales price after deducting real estate commissions, escrow fees, closing costs, homeowner associate fees and real property taxes;

4

k) The Trustee on the one hand, and Executor Stuart Schoenmann on the other hand, are responsible for the potential capital gains taxes, if any, from the sale of their respective interests in the Idyllwild Real Property;

l) Executor Stuart Gordon Schoenmann releases his lis pendens recorded on January 31, 2019, instrument number 2019-0034798, against the Idyllwild Real Property;

m) Executor Stuart Gordon Schoenmann releases his lis pendens recorded on January 31, 2019, instrument number 2019-0034799, against the Idyllwild Real Property;

n) Per Bankruptcy court Order entered December 5, 2022, that certain conveyance from Donn R. Schoenmann, as Trustee of the Donn R. Schoenmann and E. Lynn Schoenmann 2003 Family Trust, UDT dated March 19, 2003 as grantor and Donn R. Schoenmann, as tenant in common, all of his one-half interest as grantee recorded April 21, 2016, instrument number 2016-0158107, is valid;

o) Per Bankruptcy court Order entered December 5, 2022, that certain conveyance from Donn R. Schoenmann as Trustee of the Donn R. Schoenmann and E. Lynn Schoenmann 2003 Family Trust, UDT dated March 19, 2003 as grantor and Donn R. Schoenmann, as tenant in common, all of his one-half interest as grantee recorded April 21, 2016, instrument number 2016-0158108, is valid;

p) The Trustee withdraws and releases the Affidavit-Death of Spouse (Community Property With Right of Survivorship) recorded January 25, 2022, instrument number 2022-0040809;

q) The Parties will prepare and execute all documents necessary to close escrow;

r) This Stipulation shall be included in the Trustee's motion to sell the Idyllwild Real Property; and;

s) This Stipulation is subject to approval of the Bankruptcy Court. Absent an order of the Bankruptcy Court approving this Stipulation it is of no force and effect.

5

12.     The Stipulation satisfies Section 363 (h), (i) and (j), supports the sale and should be approved by the Court.

### THE PROPOSED SALE OF THE IDYLLWILD PROPERTY IS FOR FAIR MARKET VALUE.

13.     $572,500.00 represents fair market value for the Idyllwild Property.

14.     By Order entered June 4, 2024 (Doc 546), the Trustee was authorized to employ real estate co-agents William Friedman ("Mr. Friedman") of Coldwell Banker Residential Brokerage and Steve Enlow ("Mr. Enlow") of Desert Sands Realty as his co-brokers ("Broker(s)") to market and sell the Idyllwild Property.

15.     The Brokers have been marketing the Idyllwild Property since approximately June 6, 2024.

16.     As evidence that the Idyllwild Property is being sold for fair market value, and as provided in the attached Declaration of co-broker Mr. Enlow the following describes the marketing efforts undertaken by the Broker to market and sell the Idyllwild Property.

17.     Mr. Enlow has personally shown the Idyllwild Property approximately two (2) times and the Idyllwild Property was shown by cooperating brokerages approximately twenty-three (23) times.

18.     Brokers began marketing the Idyllwild Property and listed the property on the MLS on or about June 6, 2024. In addition to the MLS, the Idyllwild Property also appears on the Coldwell Banker Residential Brokerage and Desert Sands Realty websites; Redfin.com; Zillow.com; Trulia.com; Realtor.com; Movoto.com; Homes.com. The Idyllwild Property was featured on the Broker's vast social media platforms and received exposure through the Brokers' expansive email marketing database of local brokerages who regularly sell real estate in the Idyllwild market.

19.     As a result of the above marketing efforts, Broker received an offer to purchase the Idyllwild Property, which they presented to the Trustee. At the time of the filing of this Sale Motion, the Offer received from Proposed Buyer, David D. Hertzing & Terrie R. Hertzing Living Trust, for

6

1  the negotiated price of $572,500.00 subject to overbid, is the highest offer the Trustee has received

2  and was accepted by the Trustee subject to Court approval and overbids.

3      20.    As further evidence the Idyllwild Property is being sold for fair market value, the

4  Idyllwild Property continues to be marketed for overbids up until noon December 3, 2024.

5                               **SALE TERMS.**

6      21.    Subject to Court approval, the Trustee proposes to sell the Idyllwild Property to the

7  Proposed Buyer for $572,500.00, subject to overbid (the "Offer"). An executed copy of the

8  Residential Purchase Contract, Trustee's Addendum, Counter Offer No. 1, Request for Repair No.

9  1, and Contingency Removal No. 1 (together, "Purchase Agreement") are attached hereto as

10 collective **Exhibit "1"** and incorporated herein by reference.   The Proposed Buyer has deposited

11 $17,700.00 with the Trustee's escrow company.

12     22.    The Offer for the purchase of the Idyllwild Property provides in part as follows:

13          a)    The Proposed Buyer acknowledges that they are buying the Idyllwild

14 Property "as is" and "where is" without warranties of any kind, express or implied, being given by

15 the Trustee or his agents concerning the condition of the Idyllwild Property or the quality of title;

16          b)    The Proposed Buyer is aware the Offer is contingent upon Bankruptcy Court

17 approval;

18          c)    The Proposed Buyer has no contingencies in this transaction;

19          d)    Should the successful bidder or back-up bidder default and fail to perform

20 their obligations and timely close escrow, their respective Deposits shall become nonrefundable and

21 shall be forfeited by the bidder and retained by the Trustee as liquidated damages in the event of

22 default by bidder; and,

23          e)    Any and all disputes which involve in any manner the bankruptcy estate or

24 the Trustee arising from the Purchase Agreement shall be resolved only in the United States

25 Bankruptcy Court.

26     23.    In the Trustee's judgment, and as discussed further below, the sale of the Idyllwild

27 Property should be approved.

28

7

## THE REQUESTED OVERBID PROCEDURES SHOULD BE APPROVED.

24. In order to obtain the highest and best offer for the benefit of the creditors of the estate, the Trustee proposes that the foregoing Offer be subject to overbid.

25. Notice is being provided of the opportunity for overbidding to all interested parties in this matter. In order to obtain the highest and best price, the Trustee established a procedure for the presentation of overbids to purchase the Idyllwild Property. The provisions for submitting an overbid and the auction thereon are presented in the Notice of Opportunity for Overbid submitted herewith. The Trustee's Broker continues to actively market the Idyllwild Property for overbids.

26. At the hearing on December 6, 2024, the Trustee will present to the Court for confirmation the proposed sale to David D. Hertzing & Terrie R. Hertzing Living Trust or, if a timely overbid has been presented, the Trustee will ask that the Court conduct an auction and confirm the sale to the winner of the auction.

27. The foregoing procedures will provide for an orderly completion of the sale of the Idyllwild Property by permitting all bidders to compete on similar terms, and will allow interested parties and the Court to compare competing bids in order to realize the highest benefit for the estate.

## PROPOSED COMPENSATION FOR THE TRUSTEE'S REAL ESTATE CO-BROKERS.

28. By Court order entered June 4, 2024, the Trustee was authorized to employ Coldwell Banker Residential Brokerage and Desert Sands Realty as his real estate co-brokers ("Broker(s)") to market and sell the Idyllwild Property. Attached as **Exhibit "6"** is a copy of the June 4, 2024 Order.

29. Through this Sale Motion, the Trustee seeks to compensate his Brokers in an amount not greater than six percent (6%) of the respective purchase price or applicable overbid, which shall be shared equally with the Proposed Buyer's broker, if any.

## THE PROPOSED SALE BENEFITS THE ESTATE.

30. The sale of the Idyllwild Property will benefit creditors because substantial sale proceeds will be realized for the benefit of creditors. The estimated net sale proceeds are approximately calculated as follows:

8

| | Amount | Total |
|---|---|---|
| Sales Price | | $572,500 |
| Less: 8% costs of sale, including 6% real estate commissions and 2% closing costs | $45,800 | |
| **Net Proceeds** | | **$526,700** |
| Less: | | |
| Real Property Taxes (estimated) | $9,500 | |
| **Total Deductions** | | **$9,500** |
| | | |
| **Net Proceeds (100%)** | | **$517,200** |
| | | |
| **Total Net Proceeds to Executor (50%)** | | **$258,600** |
| **Net Proceeds to the Bankruptcy Estate (50%)** | | **$258,600** |

## TAX CONSEQUENCES OF SALE.

31.     The Trustee's accountant, Donald T. Fife, CPA, has determined that the sale of the Idyllwild Property will not result in a capital gains tax. *See*, Declaration of Donald T. Fife.

## PROPOSED DISTRIBUTION OF SALE PROCEEDS.

32.     The Trustee seeks authority to distribute the net sale proceeds as follows:

      a)  For normal escrow and closing costs, including current and past due real estate taxes, and homeowners associations fees, if any;

      b)  To Coldwell Banker, the Trustee's Real Estate Co-Broker, an amount not greater than one and one half per cent (1.5%) of the sale price, in accordance with the terms of the Order employing the Co-Broker, subject to the Trustee's review and approval prior to distribution.  To Desert Sands Realty, the Trustee's Real Estate Co-Broker, an amount not greater than one and one half per cent (1.5%) of the sale price, in accordance with the terms of the Order employing the Co-Broker, subject to the Trustee's review and approval prior to distribution. The total six percent

9

| | |
|---|---|
| 1 | (6%) commission will be divided equally between the Trustee's Co-Brokers and the agent for the Buyer; |
| 2 | |
| 3 | c) To the Estate of Donn R. Schoenmann, Stuart Gordan Schoenmann Executor, fifty percent (50%) of the Net Proceeds, after payment of real estate commissions, closing costs, homeowner association fees, and real property taxes by check made payable to "Estate of Donn R. Schoenmann, Stuart Gordan Schoenmann Executor" and forwarded to counsel of record, Wayne A. Silver, of the Law Office of Wayne A. Silver; |

3        c) To the Estate of Donn R. Schoenmann, Stuart Gordan Schoenmann
4              Executor, fifty percent (50%) of the Net Proceeds, after payment of real
5              estate commissions, closing costs, homeowner association fees, and real
6              property taxes by check made payable to "Estate of Donn R.
7              Schoenmann, Stuart Gordan Schoenmann Executor" and forwarded to
8              counsel of record, Wayne A. Silver, of the Law Office of Wayne A.
9              Silver;

10        d) To the Trustee, fifty percent (50%) of the Net Proceeds, after payment of
11              real estate commissions, closing costs, homeowner association fees, if
12              any, and real property taxes.

**DETERMINATION OF GOOD FAITH PURCHASER.**

33. The Trustee further seeks an Order finding that the Proposed Buyer is a "good faith purchaser" within the context of 11 U.S.C. Section 363(m), such that any appeal of the Order granting this Motion, even if successful, will not affect the validity of the sale unless a stay pending appeal is obtained.

34. The Proposed Buyer participated in the negotiation of the Purchase Agreement. The Proposed Buyer is not an "insider" as that term is defined in 11 U.S.C. Section 101(31), in that they are not a relative or general partner of the Debtor, nor is the Debtor their partner, director, officer, or person in control of them.

35. There is no relationship between the Trustee and the Proposed Buyer, and the Proposed Buyer is not an insider of the Debtor. Thus, the proposed sale is an arms-length transaction and is in good faith.

**WAIVER OF THE STAY IS APPROPRIATE.**

36. The waiver of the stay imposed by Rule 6004(h) is appropriate. Time is of the essence on the Purchase Agreement because the Proposed Buyer is an all cash buyer who can immediately

10

complete the sale. Accordingly, the Trustee requests that the Court waive the stay imposed by Rule 6004(h).

## REQUESTED RELIEF

For all of the foregoing reasons, the Trustee respectfully requests that this Court enter an Order:

1. Granting the Trustee's Sale Motion;

2. Authorizing the sale of the Idyllwild Property by the Trustee, free and clear of all liens and encumbrances, legally described as follows:

Parcel 1:

Lot 21 of Tract No. 2790, in the County of Riverside, State of California, as shown by Map on filed on October 6, 1965 in Book 54, Pages 86 through 88 of Maps, Riverside County Records, together with that portion Lot 22 of Tract No. 2790, as shown by Map on file in Book 54, Pages 86 through 88 of Maps, Riverside County Records, lying South of the following described line:

Commencing at the Northeast corner of said Lot 22; thence S 00° 21' 08" W., 89.45 feet, along the East line of said Lot 22, to the point of beginning of said line to be described; thence S. 86° 48' 46" W., 147.01 feet, to the mid-point of the Westerly line of said Lot 22 and the termination of said line to be described.

Said mid-point of Lot 22 being equal distance from the Northwest corner and from the Southwest corner of Lot 22, as measured along the Westerly property line of said Lot. Said description is pursuant to Lot Line Adjustment No. 4544 approved by Riverside County Planning Department dated January 16, 2003 and recorded October 6, 2004 as Instrument No. 2004-0791538, of Official Records.

Parcel 2:

Lot 20 of Tract No. 2790, in the County of Riverside, State of California, as shown by Map on filed on October 6, 1965 in Book 54, Pages 86 through 88 inclusive of Maps, Riverside County Records.

APN: 563-073-005, 563-073-003

to Proposed Buyer, David D. Hertzing & Terrie R. Hertzing Living Trust, pursuant to *Section 363(b), (h), (i), and (j)* in the amount of $572,500;

3. Approving the Stipulation between the Trustee and Executor Stuart Schoenmann;

Case: 22-30028    Doc# 606    Filed: 11/07/24    Entered: 11/07/24 13:12:47    Page 15 of 118

a.  Executor Stuart Gordon Schoenmann releases his lis pendens recorded on January 31, 2019, instrument number 2019-0034798, against the Idyllwild Property;

b.  Executor Stuart Gordon Schoenmann releases his lis pendens recorded on January 31, 2019, instrument number 2019-0034799, against the Idyllwild Property;

c.  Per Bankruptcy court Order entered December 5, 2022, that certain conveyance from Donn R. Schoenmann, as Trustee of the Donn R. Schoenmann and E. Lynn Schoenmann 2003 Family Trust, UDT dated March 19, 2003 as grantor and Donn R. Schoenmann, as tenant in common, all of his one-half interest as grantee recorded April 21, 2016, instrument number 2016-0158107, is valid;

d.  Per Bankruptcy court Order entered December 5, 2022, that certain conveyance from Donn R. Schoenmann as Trustee of the Donn R. Schoenmann and E. Lynn Schoenmann 2003 Family Trust, UDT dated March 19, 2003 as grantor and Donn R. Schoenmann, as tenant in common, all of his one-half interest as grantee recorded April 21, 2016, instrument number 2016-0158108, is valid;

e.  The Trustee withdraws and releases the Affidavit-Death of Spouse (Community Property With Right of Survivorship) recorded January 25, 2022, instrument number 2022-0040809;

4.  Approving the overbid procedures;

5.  Approving the Broker's compensation;

6.  Authorizing the distributions of sale proceeds as follows:

a.  For normal escrow and closing costs, including current and past due real estate taxes, and homeowners associations fees, if any;

b.  To Coldwell Banker, the Trustee's Real Estate Co-Broker, an amount not greater than one and one half per cent (1.5%) of the sale price, in accordance with the terms of the Order employing the Co-Broker, subject to the Trustee's review and approval prior to distribution. To Desert Sands Realty,

12

the Trustee's Real Estate Co-Broker, an amount not greater than one and one half per cent (1.5%) of the sale price, in accordance with the terms of the Order employing the Co-Broker, subject to the Trustee's review and approval prior to distribution. The total six percent (6%) commission will be divided equally between the Trustee's Co-Brokers and the agent for the Buyer;

c. Per Section 363(j), after payment of normal escrow and closing costs, including current and past due real estate taxes, and homeowners associations fees, if any, fifty Percent (50%) of the net sale proceeds shall be disbursed from escrow by check made payable to the "Estate of Donn R. Schoenmann, Stuart Gordan Schoenmann Executor", and forwarded to his counsel of record, Wayne A. Silver of the Law Offices of Wayne A. Silver;

d. To the Trustee, after payment of normal escrow and closing costs, including current and past due real estate taxes, and homeowners associations fees, if any, fifty percent (50%) of the net sale proceeds.

7. Determining that the Proposed Buyer is a "good faith purchaser" under 11 U.S.C. Section 363(m);

8. Waiving the fourteen (14) day stay of Fed.R.Bankr.P. 6004(h);

9. Authorizing the Trustee to sign any and all documents necessary, and to undertake any non-material amendments and modifications necessary, to complete the sale to the highest qualified bidder without further notice, hearing, or Court order;

10. Authorizing the Trustee to hold the net sale proceeds pending further order of the Bankruptcy Court; and,

11. For such other and further relief as this Court deems just and proper.


Respectfully submitted,

DATED: November 7, 2024          LAW OFFICE OF THOMAS H. CASEY,
                                 INC. A PROFESSIONAL CORPORATION


                                 By:   /s/Thomas H. Casey
                                       Thomas H. Casey, Attorney for Jason M.
                                       Rund, Chapter 7 Trustee of the bankruptcy
                                       estate of E. Lynn Schoenmann

13

## MEMORANDUM OF POINTS AND AUTHORITIES

The applicable legal authorities support the granting of the Trustee's Sale Motion.

## THE PROPOSED SALE IS A SOUND EXERCISE OF THE TRUSTEE'S BUSINESS JUDGMENT.

Section 363 provides that a trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

Courts generally hold that approval of a proposed sale of assets of a debtor under section 363 of the Bankruptcy Code outside the ordinary course of business and prior to the confirmation of a plan of reorganization is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the trustee or debtor-in-possession. *See, e.g.*, *Fin. Assoc. v. Loeffler (In re Equity Funding Corp. of Am.)*, 492 F.2d 793 (9th Cir. 1974), cert. denied, 419 U.S. 964 (1974) (sale of assets approved for "cause shown"); *240 N. Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 N. Brand Partners, Ltd.)*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) ("debtors who wish to utilize §363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification").

The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See, e.g., *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand."). As long as the sale appears to enhance a debtor's estate, court approval of a debtor's decision to sell should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code. *In re Lajijani,* 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.").

Applying §363, the proposed sale of the Idyllwild Property should be approved. As set forth above, the Trustee has determined that the best method of maximizing the recovery to the

Case: 22-30028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 18 of 118

Debtor's creditors would be through a prompt sale of the Idyllwild Property. As assurance of value, the proposed sale will be tested through an overbid and auction process; it already represents the highest and best offer the Trustee has obtained after a period of active marketing. Consequently, the fairness and reasonableness of the consideration to be paid has been demonstrated by adequate "market exposure" and will be demonstrated by an open and fair auction process – the best means, under the circumstances, for establishing whether a fair and reasonable price is being paid.

### THE STIPULATION SHOULD BE APPROVED.

The proposed sale contemplates selling the entirety of the Idyllwild Property, not merely a partial interest. Thus, Court approval of the Stipulation with co-owner Executor Stuart Schoenmann, as Executor of the Probate Estate of Donn Schoenmann demonstrating compliance with Section 363 (h), (i) and (j), is warranted. A copy of the Stipulation is attached hereto as **Exhibit "5."**

### THE WINNING BIDDER SHOULD BE AFFORDED PROTECTION UNDER § 363(m) AS A GOOD FAITH PURCHASER.

Section 363(m) protects a good-faith purchaser's interest in property purchased from the debtor's estate notwithstanding that the sale conducted under § 363(b) is later reversed or modified on appeal.

Specifically, § 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale were stayed pending appeal.

11 U.S.C. § 363(m).

Section 363(m) "codifies Congress's strong preference for finality and efficiency" in bankruptcy proceedings. *In re Energytec, Inc.* 739 F.3d 215, 218-19 (5th Cir. 2013). The Ninth Circuit has repeatedly held that, under § 363(m), "[w]hen a sale of assets is made to a good faith purchaser, it may not be modified or set aside unless the sale was stayed pending appeal." *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.).*, 163 F.3d 570, 576 (9th Cir. 1998); *In re Ewell*, 958 F.2d 276, 282 (9th Cir. 1992) ("Because the Buyer was a good faith purchaser, under

11 U.S.C. § 363(m) the sale may not be modified or set aside on appeal unless the sale was stayed pending appeal."); *Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co*.), 846 F.2d 1170, 1172 (9th Cir. 1988)

("Finality in bankruptcy has become the dominant rationale for our decisions […]").

The selection of the Proposed Buyer was the product of arms' length, good faith negotiations in a purchasing process, which will be tested by an opportunity for overbids and an auction. The Trustee intends to request at the sale hearing a finding that the Proposed Buyer or the winning bidder, as applicable, is a good faith purchaser entitled to the protections of § 363(m).

## **RELIEF FROM THE 14-DAY WAITING PERIOD UNDER RULE 6004(h) IS APPROPRIATE.**

Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Trustee requests that the Order be effective immediately by providing that the 14-day stay under Rule 6004(h) is waived.

The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Note to Fed. R. Bankr. P. 6004(h). Although Rule 6004(h) and the Advisory Committee Note are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, Collier suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." COLLIER ON BANKRUPTCY, ¶ 6004.11 (16th Ed. 2019). Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id. The Trustee hereby requests that the Court waive the 14-day stay periods under Rule 6004(h) or, in the alternative, if an objection to the Sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

///

///

16

## **CONCLUSION.**

For all of the foregoing reasons, the Trustee respectfully requests that this Court enter an Order:

    1.  Granting the Trustee's Sale Motion;

    2.  Authorizing the sale of the Idyllwild Property by the Trustee, free and clear of all liens and encumbrances, legally described as follows:

Parcel 1:

Lot 21 of Tract No. 2790, in the County of Riverside, State of California, as shown by Map on filed on October 6, 1965 in Book 54, Pages 86 through 88 of Maps, Riverside County Records, together with that portion Lot 22 of Tract No. 2790, as shown by Map on file in Book 54, Pages 86 through 88 of Maps, Riverside County Records, lying South of the following described line:

Commencing at the Northeast corner of said Lot 22; thence S 00° 21' 08" W., 89.45 feet, along the East line of said Lot 22, to the point of beginning of said line to be described; thence S. 86° 48' 46" W., 147.01 feet, to the mid-point of the Westerly line of said Lot 22 and the termination of said line to be described.

Said mid-point of Lot 22 being equal distance from the Northwest corner and from the Southwest corner of Lot 22, as measured along the Westerly property line of said Lot. Said description is pursuant to Lot Line Adjustment No. 4544 approved by Riverside County Planning Department dated January 16, 2003 and recorded October 6, 2004 as Instrument No. 2004-0791538, of Official Records.

Parcel 2:

Lot 20 of Tract No. 2790, in the County of Riverside, State of California, as shown by Map on filed on October 6, 1965 in Book 54, Pages 86 through 88 inclusive of Maps, Riverside County Records.

APN:  563-073-005, 563-073-003

to Proposed Buyer, David D. Hertzing & Terrie R. Hertzing Living Trust, pursuant to *Section 363(b), (h), (i), and (j)* in the amount of $572,500;

    3.  Approving the Stipulation between the Trustee and Executor Stuart Schoenmann;

        a.  Executor Stuart Gordon Schoenmann releases his lis pendens recorded on January 31, 2019, instrument number 2019-0034798, against the Idyllwild Property;

17

b. Executor Stuart Gordon Schoenmann releases his lis pendens recorded on January 31, 2019, instrument number 2019-0034799, against the Idyllwild Property;

c. Per Bankruptcy court Order entered December 5, 2022, that certain conveyance from Donn R. Schoenmann, as Trustee of the Donn R. Schoenmann and E. Lynn Schoenmann 2003 Family Trust, UDT dated March 19, 2003 as grantor and Donn R. Schoenmann, as tenant in common, all of his one-half interest as grantee recorded April 21, 2016, instrument number 2016-0158107, is valid;

d. Per Bankruptcy court Order entered December 5, 2022, that certain conveyance from Donn R. Schoenmann as Trustee of the Donn R. Schoenmann and E. Lynn Schoenmann 2003 Family Trust, UDT dated March 19, 2003 as grantor and Donn R. Schoenmann, as tenant in common, all of his one-half interest as grantee recorded April 21, 2016, instrument number 2016-0158108, is valid;

e. The Trustee withdraws and releases the Affidavit-Death of Spouse (Community Property With Right of Survivorship) recorded January 25, 2022, instrument number 2022-0040809;

4. Approving the overbid procedures;

5. Approving the Broker's compensation;

6. Authorizing the distributions of sale proceeds as follows:

a. For normal escrow and closing costs, including current and past due real estate taxes, and homeowners associations fees, if any;

b. To Coldwell Banker, the Trustee's Real Estate Co-Broker, an amount not greater than one and one half per cent (1.5%) of the sale price, in accordance with the terms of the Order employing the Co-Broker, subject to the Trustee's review and approval prior to distribution. To Desert Sands Realty, the Trustee's Real Estate Co-Broker, an amount not greater than one and one half per cent (1.5%) of the sale price, in accordance with the terms of the Order employing the Co-Broker, subject to the Trustee's review and approval prior to distribution. The total six percent (6%) commission will be divided equally between the Trustee's Co-Brokers and the agent for the Buyer;

18

c. Per Section 363(j), after payment of normal escrow and closing costs, including current and past due real estate taxes, and homeowners associations fees, if any, fifty Percent (50%) of the net sale proceeds shall be disbursed from escrow by check made payable to the "Estate of Donn R. Schoenmann, Stuart Gordan Schoenmann Executor", and forwarded to his counsel of record, Wayne A. Silver of the Law Offices of Wayne A. Silver;

d. To the Trustee, after payment of normal escrow and closing costs, including current and past due real estate taxes, and homeowners associations fees, if any, fifty percent (50%) of the net sale proceeds.

7. Determining that the Proposed Buyer is a "good faith purchaser" under 11 U.S.C. Section 363(m);

8. Waiving the fourteen (14) day stay of Fed.R.Bankr.P. 6004(h);

9. Authorizing the Trustee to sign any and all documents necessary, and to undertake any non-material amendments and modifications necessary, to complete the sale to the highest qualified bidder without further notice, hearing, or Court order;

10. Authorizing the Trustee to hold the net sale proceeds pending further order of the Bankruptcy Court; and,

11. For such other and further relief as this Court deems just and proper.

Respectfully submitted,

DATED: November 7, 2024
LAW OFFICE OF THOMAS H. CASEY, INC. A PROFESSIONAL CORPORATION

By:  /s/Thomas H. Casey
Thomas H. Casey, Attorney for Jason M. Rund, Chapter 7 Trustee of the bankruptcy estate of E. Lynn Schoenmann

19

**Exhibit 1**



# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, Revised 7/24)

Date Prepared: _September 23, 2024_

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _____ *See Text Overflow Addendum (C.A.R. Form TOA) paragraph 1* _____ ("Buyer").
   B. **THE PROPERTY** to be acquired is _____ *25380 Green Oaks Court* _____, situated
   in _*Idyllwild*_ (City), _*Riverside*_ (County), California, _92549_ (Zip Code),
   Assessor's Parcel No(s). _____ *563073005 & 563073003* _____ ("Property").
   **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
   C. **THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**
   D. Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationship" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
   **Seller's Brokerage Firm** _*Desert Sands Realty*_ License Number _02006675_
   Is the broker of (check one) ☒ the Seller; or ☐ both the Buyer and Seller (Dual Agent).
   **Seller's Agent** _*Steve Enlow*_ License Number _01368794_
   Is (check one): ☒ the Seller's Agent. (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).
   **Buyer's Brokerage Firm** _*Keller Williams Luxury Homes*_ License Number _01522739_
   Is the broker of (check one): ☒ the Buyer; or ☐ both the Buyer and Seller (Dual Agent).
   **Buyer's Agent** _*Lisa Angell*_ License Number _02122706_
   Is (check one): ☒ the Buyer's Agent (Salesperson or broker associate); or ☐ Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
   C. ☐ **More than one Brokerage represents** ☐ Seller, ☐ Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
   D. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent (C.A.R. Form PRBS).

3. **TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 17 pages. The Parties are advised to read all 17 pages.

| | Paragraph | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| A | 5, 5B (cash) | **Purchase Price** | $ 590,000.00 | ☒ All Cash |
| B | | **Close Of Escrow (COE)** | ☒ _75_ Days after Acceptance OR on ☐ _____ (date) | |
| C | 33A | **Expiration of Offer** | 3 calendar days after all Buyer Signature(s) or _____ (date), at 5PM or ☐ _____ ☐ AM/☐ PM | |
| D(1) | 5A(1) | **Initial Deposit Amount** | $ 17,700.00 ( 3.00 % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or _____ ) business days after Acceptance by wire transfer OR ☐ _____ |
| D(2) | 5A(2) | ☐ **Increased Deposit** (Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.) | $ _____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Upon removal of all contingencies OR ☐ _____ (date) OR ☐ _____ |
| E(1) | 5C(1) | **Loan Amount(s):** First / Interest Rate / Points | $ _____ ( _____ % of purchase price) Fixed rate or ☐ Initial adjustable rate • not to exceed _____ % • Buyer to pay up to _____ points to obtain the rate above / If FHA or VA checked, Deliver list of lender required repairs / 17 (or _____ ) Days after Acceptance | Conventional or, if checked, ☐ FHA (Forms FVAC/HID attached) ☐ VA (Form FVAC attached) ☐ Seller Financing ☐ Other: _____ |
| E(2) | 5C(2) | **Additional Financed Amount** / Interest Rate / Points | $ _____ ( _____ % of purchase price) Fixed rate or ☐ Initial adjustable rate • not to exceed _____ % • Buyer to pay up to _____ points to obtain rate above | Conventional or, if checked, ☐ Seller Financing ☐ Other: _____ |
| E(3) | 7A | **Occupancy Type** | Primary, or if checked, ☒ Secondary ☐ Investment | |
| F | 5D | **Balance of Down Payment** | $ 572,300.00 | |
| | | **PURCHASE PRICE TOTAL** | $ 590,000.00 | |

© 2024, California Association of REALTORS®, Inc.

**RPA REVISED 7/24 (PAGE 1 OF 17)**

Buyer's Initials X _DDH_ /X _TRH_    Seller's Initials X _____ /X _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 17)**

| | | **Paragraph/Term of Contract** | **Terms and Conditions** | **Additional Terms** |
|---|---|---|---|---|
| G(1) | 5E | Seller Credit, if any, to Buyer | ☐ $_____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: |
| G(2) | | ADDITIONAL FINANCE TERMS: _____ | | |
| G(3) | 18 | ☒ Seller agrees to pay the obligation of Buyer to compensate Buyer's Broker under a separate agreement (C.A.R. Form SPBB attached). | | |
| H(1) | 5B | Verification of All Cash (sufficient funds) | Attached to the offer or ☒ 3 (or _____) Days after Acceptance | |
| H(2) | 6A | Verification of Down Payment and Closing Costs | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(3) | 6B | Verification of Loan Application | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |

| | | **Items Included and Excluded** | | |
|---|---|---|---|---|
| J | 16 | Final Verification of Condition | 5 (or _____) Days prior to COE | |
| K | 23 | Assignment Request | 17 (or _____) Days after Acceptance | |

| | | **Contingencies** | **Time to Remove Contingencies** | |
|---|---|---|---|---|
| L(1) | 8A | Loan(s) | 17 (or _____) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | Appraisal: Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $_____ | 17 (or _____) Days after Acceptance | ☒ No appraisal contingency<br>Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | Investigation of Property | 17 (or _____) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY:<br><br>Any contingency in L(1)-L(8) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form CR-B) and checking the applicable box therein. Removal or Waiver at time of offer is against Agent advice. See paragraph 8I.<br><br>☐ CR-B attached |
| | | Informational Access to Property<br>Buyer's right to access the Property for informational purposes is **NOT** a contingency, does **NOT** create cancellation rights, and applies even if contingencies are removed. | 17 (or _____) Days after Acceptance | |
| L(4) | 8D | Insurance | 17 (or _____) Days after Acceptance | |
| L(5) | 8E, 14A | Review of Seller Documents | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(6) | 8F, 13A | Preliminary ("Title") Report | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(7) | 8G, 11L | Common Interest Disclosures Per Civil Code § 4525 or Agreement | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(8) | 8H, 9B(6) | Review of leased or liened items (E.g. solar panels or propane tanks) | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(9) | 8K | Sale of Buyer's Property Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ C.A.R. Form COP attached | | |

| | | **Possession** | **Time for Performance** | **Additional Terms** |
|---|---|---|---|---|
| M(1) | | Time of Possession | Upon notice of recordation, OR ☐ 6 PM or ☐ AM/ ☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7D | Seller Occupied or Vacant units | COE date or, if checked below, ☐ _____ days after COE (29 or fewer days) ☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | 4A, 7A | Occupied units by tenants or anyone other than the Seller | ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) attached | Seller shall disclose if occupied by anyone other than Seller, and attach TOPA in a counter offer if not part of Buyer's offer. |

| | | **Documents/Fees/Compliance** | **Time for Performance** | |
|---|---|---|---|---|
| N(1) | 14A | Seller Delivery of Documents | 7 (or _____) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or _____) Days after Delivery | |
| N(3) | 11L(2) | Time to pay fees for ordering HOA Documents | 3 (or _____) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or _____) Days after Acceptance | |
| N(5) | 32 | Evidence of representative authority | 3 Days after Acceptance | |

| | | **Intentionally Left Blank** | | |
|---|---|---|---|---|

**RPA REVISED 7/24 (PAGE 2 OF 17)**    Buyer's Initials X _DDA_ / X _TRH_    Seller's Initials X _____ / X _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    Hertzing Family

Case: 22-30028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 26 of 118

EXHIBIT 1 PAGE 21

**P. ITEMS INCLUDED AND EXCLUDED**

| | | |
|---|---|---|
| **P(1)** | **9** | Items Included - All Items specified in Paragraph 9B are included and the following, if checked: |

| Items Included | | |
|---|---|---|
| ☒ Stove(s), oven(s), stove/oven combo(s);<br>☒ Refrigerator(s);<br>☐ Wine Refrigerator(s);<br>☒ Washer(s);<br>☒ Dryer(s);<br>☒ Dishwasher(s);<br>☒ Microwave(s);<br>**Additional Items Included:**<br>☒ *hot tub* | ☒ Video doorbell(s);<br>☒ Security camera equipment;<br>☒ Security system(s)/alarm(s), other than separate video doorbell and camera equipment;<br>☒ Smart home control devices;<br>☒ Wall mounted brackets for video or audio equipment;<br>☒ *Above: if applicable*<br>☐ | ☐ Above-ground pool(s) / ☐ spa(s);<br>☒ Bathroom mirrors, unless excluded below;<br>☐ Electric car charging systems and stations;<br>☐ Potted trees/shrubs;<br><br>☐<br>☐ |

| **P(2)** | | **Excluded Items:** | | |
|---|---|---|---|---|
| | | ☐   : | ☐   : | ☐   : |

**Q. ALLOCATION OF COSTS**

| | Paragraph | Item | Who Pays? (Seller may not pay a fee prohibited by state or federal law.) | Additional Terms |
|---|---|---|---|---|
| **Q(1)** | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | ☐ Buyer ☒ Seller ☐ Both _____ <br><br> ☐ Provided by: *Seller's Choice of Vendor* | ☒ Environmental<br>☐ Other _____ |
| **Q(2)** | | Optional Wildfire Disclosure Report<br>*FortressFire Wildfire Disclosure* | ☐ Buyer ☒ Seller ☐ Both _____<br>Provided by: *Seller's Choice of Vendor* | |
| **Q(3)** | | (A) *Wood destroying pest* Report<br>(B) _____ Report | ☐ Buyer ☒ Seller ☐ Both _____<br>☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(4)** | 10B(1) | Smoke alarms, CO detectors, water heater bracing | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(5)** | 10A<br>10B(2) | Government Required Point of Sale inspections, reports | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(6)** | 10B(2) | Government Required Point of Sale corrective/remedial actions | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(7)** | 19B | Escrow Fee | ☐ Buyer ☐ Seller ☐ Both _____<br>Escrow Holder: *Seller's Choice of Vendor* | ☒ Each to pay their own fees |
| **Q(8)** | 13 | Owner's title insurance policy | ☐ Buyer ☒ Seller ☐ Both _____<br>Title Co. (If different from Escrow Holder): *Seller's Choice of Vendor* | |
| **Q(9)** | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| **Q(10)** | | County transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(11)** | | City transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(12)** | 11L(2) | HOA fee for preparing disclosures | Seller | |
| **Q(13)** | | HOA certification fee | Buyer | |
| **Q(14)** | | HOA transfer fees | ☐ Buyer ☒ Seller ☐ Both *if applicable* | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| **Q(15)** | | Private transfer fees | Seller, or if checked, ☐ Buyer ☐ Both _____ | |
| **Q(16)** | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(17)** | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(18)** | 10C | Home warranty plan chosen by Buyer. Coverage includes, but is not limited to: _____ _____ | ☐ Buyer ☒ Seller ☐ Both _____<br>Issued by: *Buyer's Choice*<br>☐ Buyer waives home warranty plan | If Seller or Both checked, Seller's cost not to exceed $ *1,000.00* |
| **R** | | OTHER TERMS: *This residential purchase agreement includes 2 parcels, numbers: 563073005 & 563073003* | | |

RPA REVISED 7/24 (PAGE 3 OF 17)    Buyer's Initials X __DDH__ / X __TKH__    Seller's Initials X _____ / X _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 17)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com   Hertzing Family

Case: 22-30028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 27 of 118
EXHIBIT 1 PAGE 22

Property Address: ~~25360 Green Oaks Court, Idyllwild, CA~~ 92549 _____ Date: **September 23, 2024**

4. **PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)
   A. **PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
   - ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
   - ☒ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
   - ☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
   - ☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
   - ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
   - ☐ Mixed Use Purchase Addendum (C.A.R. Form MU-PA)   ☐ Other _____
   B. **OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
   - ☐ Addendum # _____ (C.A.R. Form ADM)   ☐ Short Sale Addendum (C.A.R. Form SSA)
   - ☐ Back Up Offer Addendum (C.A.R. Form BUO)   ☐ Court Confirmation Addendum (C.A.R. Form CCA)
   - ☒ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
   - ☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)   ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
   - ☐ Other _____   ☐ Other _____
   C. **BUYER AND SELLER ADVISORIES:** (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)
   - ☒ Buyer's Investigation Advisory (C.A.R. Form BIA)   ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
   - ☒ Wire Fraud Advisory (C.A.R. Form WFA)   ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
        (Parties may also receive a privacy disclosure from their own Agent.)
   - ☒ Wildfire Disaster Advisory (C.A.R. Form WFDA)   ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
   - ☒ Trust Advisory (C.A.R. Form TA)   ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
   - ☐ REO Advisory (C.A.R. Form REO)   ☒ Probate Advisory (C.A.R. Form PA)
   - ☐ Other _____   ☐ Other _____

5. **ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **DEPOSIT:**
      (1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.
      (2) **INCREASED DEPOSIT:** Increased deposit specified in **paragraph 3D(2)** is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.
      (3) **RETENTION OF DEPOSIT: Paragraph 26, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney: (i) Before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code; and (ii) Regarding possible liability and remedies if Buyer fails to deliver the deposit.**
   B. **ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.
   C. **LOAN(S):**
      (1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.
      (2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.
      (3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.
      (4) **FHA/VA:** If FHA or VA is checked in **paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) (i) of any lender requirements that Buyer requests Seller to pay for or otherwise correct or (ii) that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.
   D. **BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   E. **LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

6. **ADDITIONAL FINANCING TERMS:**
   A. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.
   B. **VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

**RPA REVISED 7/24 (PAGE 4 OF 17)**     Buyer's Initials X [DDH] /X [TRK]     Seller's Initials X _____ /X _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com     Herzing Family

Case: 22-30028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 28 of 118

EXHIBIT 1 PAGE 23

Property Address: *25360 Green Oaks Court, Idyllwild, CA  92549*      Date: *September 23, 2024*

**C. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**7. CLOSING AND POSSESSION:**

**A. OCCUPANCY:** If Buyer intends to occupy as a primary or secondary residence (see **paragraph 3E(3)**), and unless Otherwise Agreed, such as in C.A.R. Form TOPA: **(i)** the unit Buyer intends to occupy shall be vacant at the time possession is delivered to Buyer, and **(ii)** if the Property contains more than one unit, within **3 Days** after Acceptance Buyer shall give Seller written notice of which unit Buyer intends to occupy. Occupancy may impact available financing. **Seller shall disclose to Buyer if occupied by tenants or persons other than Seller, and attach C.A.R. Form TOPA in a counter offer if not part of Buyer's offer.**

**B. CONDITION OF PROPERTY ON CLOSING:**
Unless Otherwise Agreed: **(i)** the Property shall be delivered "**As-Is**" in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; **(iii)** Except as specified in **paragraph 9C**, Seller is not responsible to repair any holes left after the removal of any wall hangings (such as pictures and mirrors), brackets, nails or other fastening devices; and **(iv)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.

**C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

**D. SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed: The Parties are advised to **(i)** consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and **(ii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties. Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**E. At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

**F.** Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**8. CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

**A. LOAN(S):**
(1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR-B form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**
(2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Insurance contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Insurance contingency but not the loan contingency.
(3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.
(4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
(5) **NO LOAN CONTINGENCY:** If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**B. APPRAISAL:**
(1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR-B form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.
(2) **NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.
(3) Fair Appraisal Act: See **paragraph 29** for additional information.

**C. INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12.**

**D. INSURANCE:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's assessment of the availability and approval of the cost for any insurance policy desired under this Agreement.

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    Herzing Family

E. **REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's review and approval of Seller's documents required in **paragraph 14A**.

F. **TITLE:**
  (1) This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.
  (2) Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

G. **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(7)**, contingent upon Buyer's review and approval of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11L** ("CI Disclosures").

H. **BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(8)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(8)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

I. **REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

J. **REMOVAL OF CONTINGENCY OR CANCELLATION:**
  (1) **For any contingency specified in paragraph 3L, 8, or elsewhere, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**
  (2) For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after Delivery of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.
  (3) If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

K. **SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(9)**.

9. **ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
  A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.
  B. **ITEMS INCLUDED IN SALE:**
    (1) All EXISTING fixtures and fittings that are attached to the Property;
    (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window) and any associated hardware and rods, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool heaters, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**
    **Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P(2)** or excluded by Seller in a counter offer.
    (3) Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.
    (4) Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.
    (5) Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Seller shall de-list any devices from any personal accounts and shall cooperate with any transfer of services to Buyer. Buyer is advised to change all passwords and ensure the security of any smart home features.
    (6) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller, within the time specified in **paragraph 3N(1)**, shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and (ii) Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

RPA REVISED 7/24 (PAGE 6 OF 17)        Buyer's Initials X DDH /X TRR    Seller's Initials X ___ /X ___
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 17)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com        Hertzing Family

Case: 22-30028    Doc# 606    Filed: 11/07/24    Entered: 11/07/24 13:12:47    Page 30 of 118
EXHIBIT 1  PAGE 25

(7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and **(ii)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

**C. ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2)**; **(ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10. ALLOCATION OF COSTS:**

**A. INSPECTIONS, REPORTS, TESTS AND CERTIFICATES:** Paragraphs 3Q(1), (2), (3), and (5) only determines who is to pay for the inspection, report, test, certificate or service mentioned; **it does not determine who is to pay for any work recommended or identified in any such document.** Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA). Any reports in these paragraphs shall be Delivered in the time specified in **paragraph 3N(1).**

**B. GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**

(1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4).** If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.

(2) **POINT OF SALE REQUIREMENTS:**

(A) Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by the Party specified in **paragraphs 3Q(5) and 3Q(6).** Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.

(B) Buyer shall be provided, within the time specified in **paragraph 3N(1)**, unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

(3) **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.

(4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

**C. HOME WARRANTY:**

(1) Buyer shall choose the home warranty plan and any optional coverages. Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18).** Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer and their cost.

(2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

**11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

**A. TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).

(2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.

(3) Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; **(ii)** if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.

**RPA REVISED 7/24 (PAGE 7 OF 17)**            Buyer's Initials X __DDK__ / X __TRR__            Seller's Initials X _____ / X _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com            Herzing Family

    (4) In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire, or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

**B. LEAD DISCLOSURES:**
    (1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").
    (2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and **(iii)** a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E. WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1), 11B, 11C, and 11D** are prohibited by Law.

**F. RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(5)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11A, B, C or D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**G. TERMINATION RIGHTS:**
    (1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A, B, C, or D**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.
    (2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**H. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**I. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**J. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**L. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
    (1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).

RPA REVISED 7/24 (PAGE 8 OF 17)      Buyer's Initials X _DDH_ /X _TRH_      Seller's Initials X _____ /X _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    Hertzing Family

Case: 22-30028    Doc# 606    Filed: 11/07/24    Entered: 11/07/24 13:12:47    Page 32 of 118
EXHIBIT 1 PAGE 27

    (2) If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

  **M.** **SOLAR POWER SYSTEMS:** For properties with any solar panels or solar power systems, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all known information about the solar panels or solar power system. Seller shall use the Solar Advisory and Questionnaire (C.A.R. Form SOLAR).

  **N.** **BALCONIES, EXTERIOR STAIRWAYS AND OTHER ELEVATED ELEMENTS:** For properties with any building containing 3 or more dwelling units with elevated balconies, stairways or other elements, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer the Wooden Balcony and Stairs Addendum (C.A.R. Form WBSA) and comply with its terms.

  **O.** **KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact insurer to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

  **A.** Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

  **B.** Buyer Investigations include, but are not limited to:
    (1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:
      (A) A general home inspection.
      (B) An inspection for lead-based paint and other lead-based paint hazards.
      (C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).
      (D) Any other specific inspections of the physical condition of the land and improvements.
    (2) Investigation of any other matter affecting the Property, other than those that are specified as separate contingencies. Buyer Investigations do not include, among other things, an assessment of the availability and cost of general homeowner's insurance, flood insurance, and fire insurance. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.

  **C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

  **D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

  **E.** **Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

  **A.** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

  **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

  **C.** Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.

  **D.** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

  **E.** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

RPA REVISED 7/24 (PAGE 9 OF 17)      Buyer's Initials X **DDR** /X **TKR**    Seller's Initials X _____ /X _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    Hertzing Family

F.  Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

G.  Buyer shall receive a "ALTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and differences in coverage, and cost, if any, between a ALTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

14. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR-B, CR-S or CC).**

   A.  **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 7A, 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 11N, 11O, 13A, 13D, and 32.**

   B.  **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**
       (1)  Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, Reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11.**
       (2)  Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.
       (3)  Buyer shall, by the end of the time specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR-B or CC). Buyer is advised not to remove contingencies related to review of documents until after the documents have been Delivered. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G.**
       (4)  **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of contingency is Delivered to Seller before Seller cancels, Seller may not cancel this Agreement based on that contingency pursuant to **paragraph 14C(1).**

   C.  **SELLER RIGHT TO CANCEL:**
       (1)  **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.
       (2)  **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8H**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11F**; **(viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E**; **(ix)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraph 26**; **(x)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 32**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.
       (3)  **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

   D.  **BUYER RIGHT TO CANCEL:**
       (1)  **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.
       (2)  **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.
       (3)  **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

RPA REVISED 7/24 (PAGE 10 OF 17)          Buyer's Initials X DDH /X TRH          Seller's Initials X ____ /X ____
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 17)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          Hertzing Family

Case: 22-30028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 34 of 118
EXHIBIT 1 PAGE 29

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: (i) be in writing; (ii) be Signed by the applicable Buyer or Seller; and (iii) give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, except for Close of Escrow which shall be Delivered under the terms of **paragraph 14G**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void. However, if the notice is for multiple items, the notice shall be valid for all contingencies and contractual actions for which the Delivery of the notice is within the time permitted in the Agreement and void as to the others. Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

F. **EFFECT OF REMOVAL OF CONTINGENCIES:**
   (1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of Reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any Reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.
   (2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

G. **DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. **A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

15. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

16. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B**; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments to third parties, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property shall be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18. **BROKERS AND AGENTS:**
   A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer. If Seller agrees to pay the obligation of Buyer to compensate Buyer's Broker (see **paragraph 3G(3)**), Seller shall be entitled to a copy of the written portion of the compensation agreement between Buyer and Buyer's Broker identifying the compensation to be paid. See C.A.R. Form SPBB for further information.

**RPA REVISED 7/24 (PAGE 11 OF 17)**        Buyer's Initials X __DDH__ / X __TMH__        Seller's Initials X ____ / X ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        Hertzing Family

**B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A.** **The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11L(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 31, 32, 33,** and **34.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 18A** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

**B.** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2).** Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11,** or elsewhere in this Agreement.

**C.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance.** Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H,** Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H.**

**D.** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A.** If a Copy of the separate compensation agreement(s) is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). Escrow Holder shall provide to Buyer and Seller, either jointly or separately, a closing statement or other written documentation showing the amount of compensation paid to, respectively, Buyer's Broker and Seller's Broker. Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A,** and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**E.** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

**F.** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1)** and **5A(2).** Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**G.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

**22. ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 27A.**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com     Hertzing Family

23. **ASSIGNMENT/NOMINATION:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents involved. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B**. Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K**, Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA). Parties shall provide any assignment agreement to Escrow Holder within **1 Day** after the assignment. Any nomination by Buyer shall be subject to the same procedures, requirements, and terms as an assignment as specified in this paragraph.

24. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

25. **DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

   **A.** "**Acceptance**" means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

   **B.** "**Agent**" means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B**.

   **C.** "**Agreement**" means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

   **D.** "**As-Is**" condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

   **E.** "**Authorized Agent**" means an individual real estate licensee specified in the Real Estate Broker Section.

   **F.** "**C.A.R. Form**" means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

   **G.** "**Close Of Escrow**", including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

   **H.** "**Copy**" means copy by any means including photocopy, facsimile and electronic.

   **I.** **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or Legal Holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or Legal Holiday ("Allowable Performance Day"), and ending at 11:59 pm. "Legal Holiday" shall mean any holiday or optional bank holiday under Civil Code §§ 7 and 7.1, any holiday under Government Code § 6700. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed or any day that the lender or Escrow Holder under this Agreement is closed, the COE shall occur on the next day the Recorder's office in that County, the lender, and the Escrow Holder is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

   **J.** "**Day**" or "**Days**" means calendar day or days. However, delivery of deposit to escrow is based on business days.

   **K.** "**Deliver**", "**Delivered**" or "**Delivery**" of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means (i) a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other). A document, or as applicable link to a document, shall be deemed to be "in possession" if it is located in the inbox for the applicable Party or Authorized Agent; or (ii) an Electronic Copy of the document, or as applicable, link to the document, has been sent to the designated electronic delivery address specified in the Real Estate Broker Section, unless Otherwise Agreed in C.A.R. Form DEDA. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party (C.A.R. Form DEDA). Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

   **L.** "**Electronic Copy**" or "**Electronic Signature**" means, as applicable, an electronic copy or signature complying with California Law. Unless Otherwise Agreed, Buyer and Seller agree to the use of Electronic Signatures. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

   **M.** "**Law**" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

   **N.** "**Legally Authorized Signer**" means an individual who has authority to Sign for the principal as specified in **paragraph 33** or **paragraph 34.**

   **O.** "**Otherwise Agreed**" means an agreement in writing, signed by both Parties and Delivered to each.

   **P.** "**Repairs**" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

   **Q.** "**Sign**" or "**Signed**" means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

**RPA REVISED 7/24 (PAGE 13 OF 17)**   Buyer's Initials X _DDH_ /X _TRA_    Seller's Initials X ___ /X ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 17)**

Case: 22-30028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 37 of 118
EXHIBIT 1 PAGE 32

**26. LIQUIDATED DAMAGES (By initialing in the space below, you are agreeing to Liquidated Damages):**
**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages,**
**the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer**
**intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess**
**shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer**
**and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND**
**SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED**
**DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).**

Buyer's Initials DDH / TRH          Seller's Initials _____ / _____

**27. MEDIATION:**
   A.  The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before
       resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for
       Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties.
       The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior**
       **to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided
       equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute
       or claim to which this paragraph applies, any Party **(i)** commences an action without first attempting to resolve the matter through
       mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that Party shall not
       be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. **THIS MEDIATION**
       **PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.**
   B.  **ADDITIONAL MEDIATION TERMS: (i) Exclusions from this mediation agreement are specified in paragraph 28B;**
       **(ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under**
       **paragraph 28C; and (iii) Agent's rights and obligations are further specified in paragraph 28D. These terms apply**
       **even if the Arbitration of Disputes paragraph is not initialed.**

**28. ARBITRATION OF DISPUTES:**
   A.  **The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any**
       **resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The**
       **Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior**
       **to, or within a reasonable time after, the dispute or claim is presented to the Agent.** The arbitration shall be
       conducted through any arbitration provider or service mutually agreed to by the Parties. The arbitrator shall be a
       retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the
       Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this
       agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California
       Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the
       right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in
       accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be
       entered into any court having jurisdiction.
   B.  **EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the**
       **jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-**
       **judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale**
       **contract as defined in Civil Code § 2985.**
   C.  **PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration**
       **provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable**
       **the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional**
       **remedies, provided the filing party concurrent with, or immediately after such filing makes a request to the court for a**
       **stay of litigation pending any applicable mediation or arbitration proceeding; or (iii) the filing of a mechanic's lien.**
   D.  **AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing.**
       **Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**
   E.  **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING**
       **OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY**
       **NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS**
       **YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING**
       **IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL,**
       **UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES'**
       **PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU**
       **MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL**
       **PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

       **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING**
       **OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL**
       **ARBITRATION."**

Buyer's Initials DDH / TRH          Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 17)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          Hertzing Family

**29. FAIR APPRAISAL ACT NOTICE:**

    **A.** Any appraisal of the property is required to be unbiased, objective, and not influenced by improper or illegal considerations, including, but not limited to, any of the following: race, color, religion (including religious dress, grooming practices, or both), gender (including, but not limited to, pregnancy, childbirth, breastfeeding, and related conditions, and gender identity and gender expression), sexual orientation, marital status, medical condition, military or veteran status, national origin (including language use and possession of a driver's license issued to persons unable to provide their presence in the United States is authorized under federal law), source of income, ancestry, disability (mental and physical, including, but not limited to, HIV/AIDS status, cancer diagnosis, and genetic characteristics), genetic information, or age.

    **B.** If a buyer or seller believes that the appraisal has been influenced by any of the above factors, the seller or buyer can report this information to the lender or mortgage broker that retained the appraiser and may also file a complaint with the Bureau of Real Estate Appraisers at https://www2.brea.ca.gov/complaint/ or call (916) 552-9000 for further information on how to file a complaint.

**30. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. **If at least one but not all Parties initial, a counter offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By Signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

**31. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**32. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraphs 33** or **34** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** after Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).



REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK
PROCEED TO NEXT PAGE

RPA REVISED 7/24 (PAGE 15 OF 17)      Buyer's Initials X _DDR_ / X _TRR_      Seller's Initials X ____ / X ____ 

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    Hertzing Family

Case: 22-30028    Doc# 606    Filed: 11/07/24    Entered: 11/07/24 13:12:47    Page 39 of 118
EXHIBIT 1 PAGE 34

Docusign Envelope ID: 5CEB4B10-E6C6-4B6B-8D0B-0A4BDBB52F34

Property Address: 25380 Green Oaks Court, Idyllwild, CA  92549 _____ Date: *September 23, 2024*

**33. OFFER**

A. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. Seller has no obligation to respond to an offer made.

B. ☒ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

(1) One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

(2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 32** for additional terms.

(3) The name(s) of the Legally Authorized Signer(s) is/are: _____ ***David D. Hertzing*** ___, ___ ***Terrie R. Hertzing*** ___.

(4) A. If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).

B. If Property is sold under the jurisdiction of a probate court, identify Buyer as executor or administrator, or by a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).

(5) The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): ***David D. Hertzing & Terrie R. Hertzing Living Trust*** _____

C. The RPA has 17 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

D. **BUYER SIGNATURE(S):**

(Signature) By, _*David D. Hertzing*_____ Date: 9/25/2024

Printed name of BUYER: ~~David D. Hertzing & Terrie R. Hertzing Living Trust~~ _____

☒ Printed Name of Legally Authorized Signer: _____ ***David D. Hertzing*** _____ Title, if applicable, _____

(Signature) By, _*Terrie R. Hertzing*_____ Date: 9/25/2024

Printed name of BUYER: ~~David D. Hertzing & Terrie R. Hertzing Living Trust~~ _____

☒ Printed Name of Legally Authorized Signer: _____ ***Terrie R. Hertzing*** _____ Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**34. ACCEPTANCE**

A. **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.

**Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum or both, checked below.**

Seller shall return and include the entire agreement with any response.

☒ Seller Counter Offer ~~(C.A.R. Form SCO or SMCO)~~

☐ Back-Up Offer Addendum (C.A.R. Form BUO)

B. ☐ **ENTITY SELLERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

(1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

(2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 32** for additional terms.

(3) The name(s) of the Legally Authorized Signer(s) is/are: _____ , _____ .

(4) A. If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).

B. If Property is sold under the jurisdiction of a probate court, identify Seller as executor or administrator, or by a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).

(5) The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____

C. The RPA has 17 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

D. **SELLER SIGNATURE(S):**

(Signature) By, _____ Date: 9-27-2024

Printed name of SELLER: ***Jason M. Rund, Chapter 7 Trustee*** _____

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

(Signature) By, _____ Date: _____

Printed name of SELLER: _____

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

| OFFER NOT ACCEPTED: ___/___ No Counter Offer is being made. This offer was not accepted by Seller _____ (date) |
| Seller's Initials |



RPA REVISED 7/24 (PAGE 16 OF 17)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com     Hertzing Family

Docusign Envelope ID: 5CEB4B10-E6C6-4B6B-8D0B-0A4BDBB52F34
Property Address: *25380 Green Oaks Court, Idyllwild, CA 92549*          Date: *September 23, 2024*

**REAL ESTATE BROKERS SECTION**
1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
4. **Agents' Signatures and designated electronic delivery address:**

A. Buyer's Brokerage Firm *Keller Williams Luxury Homes*                    DRE Lic. # *01522739*

By _____*Lisa Angell*_____                   *Lisa Angell* DRE Lic. # *02122706*          Date *9/25/2024*

By _____FF7916F367F74DE..._____                    DRE Lic. # _____          Date _____

Address *47100 Washington ST #101*          City *La Quinta*          State *CA* Zip *92253*

Email *lisa.angell@kw.com*                    Phone # *(760)423-3443*

☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

**Designated Electronic Delivery Address(es): Email above or** _____

☐ **Attached DEDA:** If Parties elect to have an alternative Delivery method, such method may be indicated on C.A.R. Form DEDA.

B. Seller's Brokerage Firm *Desert Sands Realty*                    DRE Lic. # *02006675*

By _____          *Steve Enlow* DRE Lic. # *01368794*          Date _____

By _____                    DRE Lic. # _____          Date _____

Address *78000 Fred Waring Dr., Ste. 205*          City *Palm Desert*          State *CA* Zip *92211*

Email *enlowhomes@yahoo.com*                    Phone # *(760)880-3675*

☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

**Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent): Email above or** _____

☐ **Attached DEDA:** If Parties elect to have an alternative Delivery method, such method may be indicated on C.A.R. Form DEDA.

Buyer's Initials X ⎡DS⎤ *DDH* / X ⎡Initial⎤ *TKH*          Seller's Initials X _____ / X _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____, and agrees to act as Escrow Holder subject to paragraph 19 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____

Escrow Holder _____                    Escrow # _____

By _____                    Date _____

Address _____

Phone/Fax/E-mail _____

Escrow Holder has the following license number # _____

☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER:** _____ / _____          Seller's Brokerage Firm presented this offer to Seller on _____          (date).
                    Agent or Seller Initials

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*



**RPA REVISED 7/24 (PAGE 17 OF 17)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 17 OF 17)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          Hertzing Family

Docusign Envelope ID: 28E11126-98B9-4D5C-9FF2-86959E503D8F

# COUNTER-OFFER

This agreement (the "Agreement" or "Counter-Offer") is intended to set forth the terms and conditions of a contract for the purchase by and sale to David D. Hertzing & Terrie R. Hertzing Living Trust (the "Buyer") from Jason M. Rund (the "Seller" or "Trustee"), solely in his capacity as the duly appointed, qualified, and acting chapter 7 trustee for the bankruptcy estate of E. Lynn Schoenmann, ("the "Debtor"), of the real property more commonly known as 25380 Green Oaks Court and adjoining vacant lot (see attached Preliminary Title Report for exact legal description), Idyllwild, California (the "Property").  When executed below, this Agreement will constitute conclusive evidence and the exclusive terms and conditions of the contract for such purchase and sale (the "Sale") of the Property and will supersede and replace in its entirety Buyer's written California Residential Purchase Agreement dated September 23, 2024 and all attachments including but not limited to Septic Inspection, Well Inspection, Property Monument and Propane Tank Allocation of cost Addendum, Trust Advisory, Probate Advisory, Probate Agreement Purchase Addendum, Wildfire Disaster Advisory, Fire Hardening and Defensible Space Disclosure and Addendum, Defensible Space Decision Tree  (the "Offer") and any oral or written negotiations since the Offer.

**PURCHASE PRICE; DEPOSIT; ESCROW.**  The purchase price for the Property shall be **$590,000** (the "Purchase Price").  Buyer shall make an initial deposit of **$17,700** (the "Initial Deposit") in the form of cashier's check or wire transfer made payable to "A&A Escrow Services, Inc." (the "Escrow Holder") which shall be delivered to A&A Escrow Services, Inc., 15250 Ventura Blvd, suite 715, Sherman Oaks, California, within two (2) business days of (i) acceptance of this Counter-Offer by Buyer, (ii) Seller's execution of the Affirmation Agreement in the form attached hereto as Exhibit "A", and (iii) Buyer's receipt of a copy of the fully executed Counter-Offer and the Affirmation Agreement.

**FINANCIAL WHEREWITHAL.**  Buyer shall deliver to the Seller, within two (2) business days of (i) acceptance of this Counter-Offer by Buyer, (ii) Seller's execution of the Affirmation Agreement in the form attached hereto as Exhibit "A", and (iii) Buyer's receipt of a copy of the fully executed Counter-Offer and the Affirmation Agreement, proof of committed funds available to Buyer sufficient to enable Buyer to consummate the acquisition contemplated herein, which proof shall be in the form of a letter of credit, loan commitment, or other form acceptable to Seller in Seller's sole discretion.  In the event that either (i) Buyer fails timely to provide any such proof, or (ii) Seller determines, in Seller's sole discretion, that any proof of funds provided to Seller by Buyer is unacceptable, Seller shall have the right, at Seller's option, to provide written notice to Buyer that this Counter-Offer is terminated.  In the event that Seller exercises such termination right, this Counter-Offer shall terminate effective as of the date of Seller's written notice to Buyer, whereupon the Initial Deposit (if theretofore deposited with the Escrow Holder) shall be returned to Buyer and Buyer and Seller shall each be relieved of any further obligations hereunder.

**ESCROW INSTRUCTIONS.**  Escrow instructions corresponding to the terms of this Agreement shall be provided by the Escrow Holder and signed by the parties within five (5) business days of the date of Buyer's and Seller's receipt of said escrow instructions.  Buyer

Case: 22-30028    Doc# 606    Filed: 11/07/24    Entered: 11/07/24 13:12:47    Page 42 of 118

EXHIBIT 1  PAGE 37

and Seller shall deposit such documents and instruments with the Escrow Holder as and when reasonably required to complete the sale. Prior to the Trustee's filing of his motion to approve the sale of the Property, Buyer shall be free to assign this Agreement to another person or entity (the "Assignee") subject to Seller's prior review and written approval (which approval Seller may grant or withhold in his sole discretion), but Buyer shall remain liable hereunder, together with such Assignee, in the event that such Assignee fails to perform any of Buyer's obligations hereunder. Buyer shall not assign this Agreement to another person or entity after the Trustee has filed his motion for approval of the sale of the Property with the Bankruptcy Court.

**BUYER'S DUE DILIGENCE AND CANCELLATION RIGHT.** Buyer shall have 12 calendar days from the date of execution hereof to be given access to perform, complete, and satisfy all contingencies, inspections, investigations, tests and reviews of reports, and to review solar panel lease and complete all due diligence which Buyer desires for the Sale of the Property, including, but not limited to performing and completing any geological, soil, structural, environmental, or other tests, inspections, and investigations desire by Buyer. Buyer may, not later than the end of the 12 calendar day due diligence period, provide Seller written notice of Buyer's election to withdraw from this Agreement because of Buyer's inability to complete or dissatisfaction with the results of any of those matters (the "Notice of Cancellation"), in which event Buyer's and Seller's obligations under this Agreement shall be terminated and Buyer shall receive a full refund of Buyer's deposit. If Buyer fails to give such Notice of Cancellation within such due diligence period, all such contingencies shall be automatically removed and Buyer's obligation to proceed shall be non-contingent except as provided herein for (i) Buyer's review of a preliminary title report and underlying documents respecting the title to the Property (as set forth below), and (ii) Bankruptcy Court approval of this Agreement and the Sale (as set forth below).

**APPRAISAL AND FINANCING.** Buyer waives the appraisal and financing contingencies.

**TITLE; TITLE INSURANCE.** Within three (3) business days after acceptance of this Agreement, Stewart Title Company or such other title company of Seller's choice (the "Title Company") will be instructed to provide a preliminary report of the condition of title to the Property, including copies of underlying documents referred to in Schedule B thereof, for Buyer's review. Buyer shall have 3 business days after receipt of the preliminary title report and underlying documents in which to provide Seller written notice (the "Notice of Title Disapproval") that Buyer disapproves the condition of title with respect to a material matter(s) that interfere with the use or marketability of the Property for the purpose for which it is currently used or intended to be used. Such notice must refer to the specific exception(s) in Schedule B of the preliminary title report and the specific underlying document(s) which are the basis for Buyer's disapproval. Within five (5) business days after receipt of the Notice of title Disapproval, Seller may, in Seller's sole discretion, either (i) cancel this Agreement and the Sale, in which event Buyer's and Seller's obligations under this Agreement shall be terminated and Buyer shall receive a full refund of the Initial Deposit, or (ii) elect to correct the item(s) that were disapproved by Buyer, in which event the Sale shall proceed. Seller may correct such item by any means that will result in the Title Company either removing the disapproved exception(s) from the preliminary report, providing title insurance coverage by

endorsement against such exception(s), or providing that the order approving the Sale entered by the Bankruptcy Court shall resolve such exception. At the close of the Sale, Seller shall convey and Buyer shall accept title to the Property as shown in Schedule B of the preliminary title report, subject to any corrections as in this paragraph above, free and clear of all monetary liens, subject to the terms of the Agreement and the order approving the Sale. Seller shall pay the costs of a CLTA Standard Owner's policy of title insurance.

**REMOVAL OF CONTINGENCIES; COURT CONFIRMATION; CLOSING; DELIVERY OF POSSESSION.** If Buyer does not give Seller written Notice of Cancellation or Notice of Title Disapproval as and when provided in this Agreement, Buyer's silence shall be deemed acceptance and Buyer shall be deemed to have satisfied and removed all of Buyer's contingencies and to proceed with the Sale. Seller shall then file a motion with the Bankruptcy Court to confirm the Sale, which sale shall be subject to qualified overbids as approved by the Bankruptcy Court. Upon such removal of contingencies, Buyer shall be unconditionally obligated to proceed with the Sale, subject only to Bankruptcy Court confirmation as set forth below. If the Bankruptcy Court confirms the Sale to Buyer, the closing shall take place as soon as practicable after entry of the order approving the Sale, but no later than the later to occur of (i) the first business day after fourteen (14) calendar days following the entry of the operative Order of the Bankruptcy Court approving the Sale or (ii) if the effectiveness of the Order of the Bankruptcy Court approving the Sale is stayed, the first business day after the Order is no longer stayed (the "Closing Date"). The closing shall occur on the date the deed transferring the Property to Buyer is recorded with the County Recorder where the Property is located. Property shall be delivered vacant at close of escrow.

**BANKRUPTCY SALE.** Buyer acknowledges that Seller is a trustee duly appointed to administer the Debtors' bankruptcy estate, and is a party to this Agreement solely in that capacity. Seller and his brokers and agents (collectively, the "Seller's Brokers") have not and will not determine the condition or fitness for use of the Property for any particular purpose. The Sale shall be "as is," "where is," "with all faults," and with no warranty by or recourse whatsoever to Seller or Seller's Brokers herein. Transfer of the Property shall be by Quitclaim Deed. All parties acknowledge that Seller is a party to this Agreement solely in his capacity as trustee of the Debtors' estate and that in the event of any default in the performance of any of Seller's obligations under the Offer (as modified hereby) or in the event that any other claim is asserted against Seller, the Trustee, or the estate in connection with this transaction, the Trustee shall in no event have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Buyer's sole recourse, if any, in such event shall be to the assets of the Debtors' estate.

**TAXES; PRORATIONS; COSTS OF SALE.** All real property taxes and assessments for the current tax year shown in the current County Tax Bill shall be prorated between Seller and Buyer and charged as of the closing date to the applicable accounts of Seller and Buyer. The Sale shall be free and clear of any homeowner's association assessments and all real property taxes (other than those prorated as provided above) enforceable against the Property through the closing date of the Sale. Escrow fees shall be split between Buyer and Seller in the manner customary in the County where the Property is located. Seller shall pay any real property transfer tax. Seller shall pay the cost of a Natural Hazard Disclosure

EXHIBIT 1  PAGE 39

Report, from a vendor selected by Seller, to be furnished to Buyer through escrow. Buyer shall pay and have sole responsibility for compliance with any requirements imposed on the Property or this Sale by any governmental agency(ies), including compliance with any applicable governmental retrofit requirements. Buyer shall pay the cost of recording the deed. Buyer and Seller shall each pay their own expenses of every other type except as specifically provided in this Agreement.

**BANKRUPTCY COURT APPROVAL; OVERBIDDING.** The Sale is subject to notice to creditors, approval by the Bankruptcy Court, and better qualified bids received by Seller through and including the Bankruptcy Court hearing to confirm the Sale. Payment of any and all real estate brokers' commissions is also subject to notice to creditors and approval by the Bankruptcy Court. Buyer acknowledges and agrees that Seller may not seek to obtain the Bankruptcy Court's approval if Seller has determined that it would be in the best interest of the bankruptcy estate not to do so. Buyer acknowledges and agrees that if the Bankruptcy Court approves the Sale to a different buyer (the "Successful Overbidder") at the hearing on the Sale, the Trustee may hold the Buyer's deposit pending close of the Sale to the Successful Overbidder and, if the Successful Overbidder does not timely close its purchase of the Property, the Trustee has the right to close the Sale to the Buyer at the Purchase Price hereunder, or such higher price as the Buyer may have bid at the hearing on the Sale.

**BROKERS.** Seller is represented by Coldwell Banker and Desert Sands Realty. Buyer is represented by Keller Williams Luxury Homes. Subject to Bankruptcy Court approval, Seller will pay a real estate broker's commission aggregating 6% of net sales price of the Property as follows: 1.5% to Desert Sands Realty, 1.5% to Coldwell Banker and 3% to Keller Williams Luxury Homes in connection with the closing of the Sale. Seller's Brokers and Buyer's Brokers are collectively referred to herein as the "Brokers". No commission or compensation shall be due or payable to Brokers in connection with this Agreement or Sale except from the cash proceeds of an actual Sale of the Property that closes to Buyer. Buyer hereby represents and warrants that, other than the Brokers, Buyer has not dealt with any broker, finder, or other person entitled to any fee, commission, or other compensation in connection with the Sale and Buyer shall indemnify, defend, protect, and hold Seller and the related bankruptcy estate harmless of, from, and against any claims, demands, actions, causes of action, losses, liabilities, costs, and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as Seller may suffer or incur in the event that any claims for any such fees, commissions, or other compensation of any kind are hereafter asserted.

**MATERIAL CHANGE OF CONDITION.** In the event of any material change in the condition of the Property after the date of acceptance of this Counter-Offer, if Buyer demands repair of any resulting actual damage to the Property, Seller may, at Seller's sole option: (i) elect to terminate this Agreement, in which event Buyer's and Seller's obligations to buy or sell shall terminate and the Initial Deposit shall be refunded to Buyer without interest; or (ii) make required repairs at the bankruptcy estate's expense; or (iii) assign any insurance proceeds for the damage to the Property to Buyer as of the close of the Sale; or (iv) credit the cost of such repairs to Buyer through escrow, it being agreed that in the event that Seller elects and complies with subpart (b), (c), or (d) of this paragraph, Buyer's obligation to proceed with the Sale shall be unaffected by any such material change in the condition of the Property. Buyer's obligation to proceed with the Sale shall be unaffected by any such material change

EXHIBIT 1  PAGE 40

in the condition of the Property. Conditions related to the Covid-19 pandemic shall not constitute a material change in condition under this Counter-Offer.

**REMEDY FOR BUYER'S OR SELLER'S FAILURE TO CLOSE.** Buyer's sole remedy in the event that the Sale fails to close as a result of Seller's inability or failure to close for any reason, including but not limited to the reason of failure to obtain approval of the Sale by the Bankruptcy Court, shall be the mutual release of Buyer's and Seller's obligations to buy or sell and a full refund of the Initial Deposit (plus any increase thereof by Buyer). In the event Buyer fails to close the Sale for any reason other than Seller's default, after Buyer's contingencies have been removed as under this Agreement, Buyer's Initial Deposit (plus any increase thereof by Buyer) shall be paid over to Seller and retained by Seller as liquidated damages without further legal action. This provision shall apply equally to the Initial Deposit (and any increase thereof by Buyer) without interest. If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF ANY INCREASED DEPOSIT, BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R.FORM RID).

DDH     TRA     [Buyer(s) Initials]

**BANKRUPTCY COURT JURISDICTION.** The United States Bankruptcy Court for the Central District of California, Los Angeles Division shall have sole and exclusive jurisdiction to interpret and enforce the terms of this Agreement and Buyer hereby consents and submits to such exclusive jurisdiction. This Agreement shall be interpreted and enforced pursuant to the laws of the State of California, the United States of America, and title 11 of the United States Code.

**"AS-IS," "WHERE-IS" CONDITION; NO WARRANTIES.** Buyer acknowledges and agrees that, to the maximum extent permitted by law, the sale contemplated by this Agreement is made "as-is," "where-is," and "with all faults," except as specifically provided in this Agreement. Seller and Seller's Brokers have not made, do not make, and specifically negate and disclaim any representations, warranties, promises, covenants, agreements, or guaranties of any kind or character whatsoever, whether express or implied, oral or written, concerning or respecting (i) the value of the Property; (ii) the income to be derived from the Property; (iii) the suitability of the Property, or lack thereof for any activity or use which Buyer may intend to conduct thereon, including any possibilities or limitations for future development; (iv) the habitability, merchantability, marketability, profitability, or fitness for a particular purpose, of the Property, or lack thereof; (v) the manner, quality, state of repair, or lack of repair of the Property; (vi) the nature, quality, or condition of the Property, or any portion, system, or component thereof, including without limitation, water, soil, and geology; (vii) the compliance of the Property or its operation, or lack thereof, with any laws, ordinances, regulations, rules,

Docusign Envelope ID: 28E11126-98B9-4D5C-9FF2-86959E503D8F

or orders of any applicable governmental authority or body; (viii) the manner or quality of engineering, design, construction or materials, if any, incorporated into the Property; (ix) the compliance or lack of compliance with any land use, building and safety, or other laws, ordinances, regulations, rules, orders, or other requirements imposed or enforced by any governmental or non-governmental body, including without limitation the Americans with Disabilities Act of 1990; (x) the presence or absence at, on, under, or adjacent to the Property, of materials described as "hazardous substances, hazardous materials, or toxic substances" or by similar terms under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §§ 9601, et seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. §§1801, et seq.), the Resource Conservation and Recovery Act (42 U.S.C. §§ 6901, et seq.), the Toxic Substance Control Act (15 U.S.C. § 2601, et seq.), the Clean Water Act (33 U.S.C. § 1251, et seq.), California Health and Safety Code §§ 25117 or 25316, or other statutes and laws, all as amended and including all regulations issued thereunder; (xi) the content, completeness or accuracy of any due diligence materials or preliminary report regarding title to the Property; (xii) the conformity or lack of conformity of the improvements to any plans or specifications for the Property, including any plans and specifications that may have been or may be provided to Buyer; (xiii) the conformity or lack of conformity of the Property to past, current, or future applicable zoning or building requirements; (xiv) any deficiency of any undershoring, drainage, or other aspects, systems, or components of or affecting the Property; (xv) the fact, if applicable, that all or a portion of the Property may be located on or near any natural hazard zone as determined by any governmental agency or body; (xvi) the existence of vested land use, zoning, or building entitlements affecting the Property or any other property; or (xvii) any other matter.  Without in any manner limiting the foregoing, Buyer hereby acknowledges and agrees that (i) Seller's Brokers have provided (and will hereafter provide) to Buyer various materials and information relating to the Property, including, without limitation, information and materials relating to the condition of the Property, and (ii) all such materials and information so provided to Buyer by Seller's Brokers shall, for all purposes of this Agreement, be deemed to have been disclosed to Buyer by the Seller, as well.

**BROKERS.**  Seller's Brokers herein have not and will not perform any inspections, investigations, or due diligence on behalf of Buyer unless otherwise specified herein. Buyer is informed that Buyer must arrange for any inspections and investigations desired by Buyer utilizing suitable third party professionals selected and compensated by Buyer.   In no event shall Seller have any liability or responsibility for any representation, warranty, statement made, or information furnished by Seller's Brokers, or any other person or entity, concerning the Property, this Agreement, or any other matter, unless expressly set forth in writing and signed personally by Seller.

**OPPORTUNITY TO INSPECT; BUYER'S SOLE RELIANCE.**   Buyer represents, warrants, acknowledges, and agrees that Buyer has been given the opportunity to inspect and investigate the Property and all other facts and circumstances deemed by Buyer relevant and significant, and to review information and documentation affecting the Property.  In deciding to proceed with the Sale, Buyer is relying solely on Buyer's own inspections and investigation of the Property (including by any outside

Case: 22-30028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 47 of 118                              EXHIBIT 1  PAGE 42

professionals whom Buyer has elected to engage for such services) and review of such information and documentation, and not on any information provided or to be provided by Seller.  Buyer further acknowledges and agrees that any information made available to Buyer or provided or to be provided by or on behalf of Seller with respect to the Property was obtained from a variety of sources and that neither Seller nor Seller's Brokers nor any other person has made or makes any representations as to the accuracy or completeness of such information.  Buyer hereby fully and irrevocably releases all such sources and preparers of information and documentation affecting the Property which were retained or engaged by Seller or Seller's Brokers from any and all claims that Buyer may now or hereafter have against such sources and preparers of information, for any costs, expenses, losses, liabilities, damages, demands, actions, or causes of action arising from any such information or documentation.  NEITHER SELLER NOR BROKERS HAVE PROVIDED OR WILL PROVIDE ANY LEGAL OR TAX ADVICE TO BUYER.  Buyer is informed that Buyer must obtain any such advice, if desired by Buyer, from independent professionals selected and engaged by Buyer.

**PHYSICAL, GEOLOGICAL, PEST CONTROL, AND ENVIRONMENTAL INSPECTIONS AND INVESTIGATIONS.**

A.    BUYER SHALL CONDUCT THOROUGH PHYSICAL, GEOLOGICAL, PEST CONTROL, ENVIRONMENTAL INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AS MAY BE DETERMINED BY BUYER, THROUGH QUALIFIED PROFESSIONALS SELECTED BY BUYER.   Seller and Seller's Brokers strongly recommend that Buyer fully exercise and not waive such inspections and investigations.

B.    Buyer shall select and employ, at Buyer's sole expense, a licensed engineer(s), architect(s), contractor(s), geologist(s), pest control licensee(s), environmental consultant(s), or other qualified professional(s), to make inspection(s) and investigations of the Property, including, but not limited to, (i) its general structure, plumbing, heating, air conditioning (if any), electrical system, built-in appliances, cesspool/sewer/septic system, well, roof, soils, foundation, mechanical systems, pool, spa, related equipment and filters, sprinklers, and those other matters affecting the desirability of the Property (all if and only to the extent any such structures, systems, and components are presently a part of the Property); (ii) any actual or potential wood destroying pests or other conditions damaging to the Property or any portion thereof; (iii) environmental hazards, substances, products, or conditions, including without limitation, asbestos, formaldehyde, lead, lead-based paint, contaminated soil or water, fuel, chemical storage tanks, hazardous waste, electromagnetic fields, and radon gas, any of which may constitute a health risk; (iv) the presence or absence of any required governmental permits, inspections, applications, approvals, and certificates of occupancy, and compliance or lack of compliance with building codes and laws applicable to the Property; (v) plans and specifications for the Property; (vi) all applicable zoning, municipal, county, state, and federal, including those affecting the past, current, or any future use of the Property; (vii) deed restrictions and other matters of public record which may govern, restrict, condition, or prohibit the use, alteration, or development of the Property; and (viii) generally, without limitation, any and all other

Case: 22-30028    Doc# 606    Filed: 11/07/24    Entered: 11/07/24 13:12:47    Page 48 of 118                                                       EXHIBIT 1  PAGE 43

items and matters of whatsoever nature, character, or description, which Buyer deems material to Buyer's interests, in, on, or affecting the Property, and to approve or disapprove said inspection within the period and in the manner set forth in this Agreement.

**RETROFITTING.**  All required retrofitting including but not limited to the payment of City Report, installation of smoke and carbon monoxide detectors, low flow toilets and compliance with all governmental agencies shall be Buyer's responsibility for cost and completion.

**PERSONAL PROPERTY.**  All interior / exterior furniture and personal property shall not be included.

**ITEMS INCLUDED**.  The following items shall be included without warranty:  washer, dryer, refrigerator, microwave, dishwasher, trash compactor, ceiling fans, window coverings, mirrors in all bathrooms, ladder in guest bedroom, sconce bathroom and guest bedroom, lighting in all bathrooms, mantle above fireplace, spa

**TERMITE REPORT**.  Seller shall not pay for any Section 1 or Section 2 termite work or provide a termite report.

**HOME WARRANTY PLAN.**  Seller shall pay for a Home Warranty Plan from company of Buyer's choice at a cost not to exceed $1,000.

**COMPLETE AGREEMENT; NO OTHER REPRESENTATIONS OR WARRANTIES.**
Seller shall not be liable or bound in any manner by any oral or written statements, representations, or information pertaining to the Property, or the operation thereof, furnished by any real estate broker, agent, employee, contractor, or other person. Buyer further acknowledges and agrees Seller has no obligations to make repairs, replacements, or improvements to the Property except as may otherwise be expressly stated herein.  Without limiting any other provision hereof,  Buyer represents, warrants, and covenants to Seller that, except for Seller's express representations and warranties specified in this Agreement, Buyer is relying solely upon Buyer's own investigation of the Property.

**WRITTEN AFFIRMATION OF SELLER REQUIRED.**  Buyer understands that Seller may continue to receive and respond to other offers on the Property and may be making several counter-offers concurrently containing the same or different terms.  This Counter-Offer shall not be binding until accepted by Buyer and executed by Buyer and Seller on the signature page below; and then approved by Seller, in Seller's sole discretion, in the form of the Seller's "Affirmation of Agreement" attached hereto as Exhibit "A" which, if so executed by Seller, will constitute Seller's agreement that Seller will sell the Property to Buyer, subject to Bankruptcy Court approval, the rights of any overbidding parties, and the terms and conditions of this Agreement.  Buyer further acknowledges that it would be imprudent and unrealistic to rely

upon the expectation of entering into a binding agreement regarding the subject matter of this Counter-Offer prior to receipt of Seller's Affirmation of Agreement, and further represents to Seller that any efforts to complete due diligence, or to perform any of the obligations provided herein shall not be considered as evidence of binding intent without Seller's Affirmation of Agreement, and understands that BUYER'S ACCEPTANCE HEREOF SHALL HAVE NO FORCE OR EFFECT PRIOR TO BUYER'S RECEIPT OF SUCH AFFIRMATION OF AGREEMENT SIGNED BY SELLER.

**ATTORNEYS' FEES.**  In the event that either party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

**EXPIRATION OF COUNTER-OFFER.**  This Counter-Offer shall expire if not accepted by Buyer by delivering a copy hereof, fully signed and initialed by Buyer, to Seller, on or before 5:00 p.m., Pacific time, on September 28, 2024.  Such acceptance shall nevertheless be subject to the receipt of Seller's Affirmation of Agreement.

**AGREED AND ACCEPTED:**

BUYER:

Dated: _____9/27/2024_____

By:

David D. Hertzing & Terri R. Hertzing Living Trust

David D. Hertzing & Terri R. Hertzing Living Trust

SELLER (subject to execution of Seller's Affirmation of Agreement):

Dated: ____September 25, 2024____

By: _____

Jason M. Rund solely in capacity as Chapter 7 Trustee for E. Lynn Schoenmann,

Case: 22-30028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 50 of 118
EXHIBIT 1  PAGE 45

Docusign Envelope ID: 28E11126-98B9-4D5C-9FF2-86959E503D8F

## EXHIBIT "A"

## SELLER'S AFFIRMATION OF AGREEMENT

Seller hereby acknowledges Buyer's acceptance of the foregoing Counter-Offer and affirmatively agrees to sell the Property to Buyer on the terms and conditions of the foregoing Agreement, but subject to Bankruptcy Court approval and any qualified overbidders. Seller shall revoke any other outstanding Counter-Offers made to other prospective buyers or make the same subject and subordinate to this Agreement.


SELLER

Dated: _____


By: _____
Jason M. Rund solely in capacity as Chapter 7 Trustee for E. Lynn Schoenmann,

Docusign Envelope ID: F835680B-B554-4212-A404-E04A5B28F7DF
Docusign Envelope ID: BA31B118-CBE0-4A03-AF58-281AD5E5ECC4



**REQUEST FOR REPAIR No. _ONE_**

(C.A.R. Form RR, Revised 12/23)

**Date Prepared: _10/07/2024_**

In accordance with the terms and conditions of the Purchase Agreement, OR ☐ Other _____ ("Agreement"),

dated _09/23/2024_ , on property known as _25380 Green Oaks Court, Idyllwild, CA 92549_ ("Property"),

between _David D. Hertzing & Terrie R. Hertzing Living Trust, David D. Hertzing & Terrie R. Hertzing Living Trust_ ("Buyer"),

and _Jason M. Rund, Chapter 7 Trustee_ ("Seller").

Buyer and Seller are referred to as the "Parties."

1. **BUYER REQUEST (Check all that apply): (Note: Seller has no obligation to respond to Buyer request.)**
   A. ☐ Buyer requests that Seller, prior to final verification of condition, repair or take the other specified action for each item listed below or ☐ on the attached list dated _____ :

   _____
   _____
   _____
   _____
   _____
   _____

   B. (i) ☐ **SECTION 1:** Buyer requests Seller pay to have Section 1 work completed as specified in the attached Pest Control Report dated _____ prepared by _____
      (ii) ☐ **SECTION 2:** Buyer requests Seller pay to have Section 2 work completed as specified in the attached Pest Control Report dated _____ prepared by _____
      (iii) If Buyer requests either Section 1 or Section 2 work above, Seller shall, no later than 5 (or ___ ) Days Prior to Close of Escrow, Deliver to Buyer a written pest control certification showing the corrective work has been completed.
   C. ☐ Buyer requests that Seller credit Buyer $ _____ at Close of Escrow.
      **(Note:** Any credit included in this paragraph is separate from and shall not reduce or supersede any other credit in the Agreement unless Otherwise Agreed. Credits need to be disclosed to Buyer's lender and total contractual credits may be limited pursuant to the Agreement. Total credit amount may not be enough to remedy all defects or repairs.)
   D. ☒ Buyer requests that Seller modify the purchase price. The revised purchase price shall be $_572,500.00_
2. **Attached Reports:** A copy of the following inspection or other report is attached.
   ☒ _Home inspection Report dated 10/6/24_          ☒ _Bambug Termite dated 10/6/24_
   ☒ _Septic Pumping Receipt_          ☒ _Idyllwild Fire Safety Inspection Form_
3. **FHA or VA:** Buyer's FHA or VA lender requires specified actions in the appraisal or other lender documentation (if checked, ☐ attached)
   A. Buyer's FHA or VA lender requires the following items to be repaired. Buyer requests that Seller repair the following items, and Seller (or ☐ Buyer) shall pay for any such repair: _____

   _____
   _____
   _____
   _____

   B. Buyer requests that Seller pay for the following costs or expenses required by the FHA or VA lender: _____
   _____
4. If Seller agrees to all of Buyer's Requests, or some of Buyer's requests and Buyer accepts Seller's partial agreement below:
   A. (1) Buyer removes the Investigation of Property Contingency (paragraph 3L(3) and 8C), ☐ except the following:

   OR (2) ☐ Buyer removes those contingencies identified on the attached, Signed, Contingency Removal Form (C.A.R. Form CR)
   B. Buyer Releases Seller from any loss, liability, expense, claim or cause of action regarding the disclosed condition of the Property ("Release").
5. **EXPIRATION:** Buyer proposes this Request for Repairs (RR) which shall be deemed revoked:
   A. Unless by 5:00 PM on the third Day after it is signed by Buyer (or by _____ ☐ AM/☐ PM on _____ date) the proposed RR is signed by Seller and a Copy of this RR is Delivered to Buyer.
   B. If Buyer withdraws this Request for Repair any time prior to Seller's acceptance by communicating withdrawal to Seller or Seller's Agent.

© 2023, California Association of REALTORS®, Inc.

**RR REVISED 12/23 (PAGE 1 OF 2)**          Buyer's initials X _DDH_ /X _TRH_          Seller's initials X _____ /X _____

**REQUEST FOR REPAIR (RR PAGE 1 OF 2)**

Keller Williams Luxury Homes, 47100 Washington ST #101 La Quinta CA 91253          Phone: 7604333443          Fax:          Hertzing Family
Lisa Angell          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

6. **EFFECT OF BUYER REQUEST:** BUYER MAKES THIS RR ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS RR, ANY PREVIOUS RR OR SELLER RESPONSE AND BUYER REPLY TO REQUEST FOR REPAIR (C.A.R. Form RRRR) CAN NO LONGER BE ACCEPTED.

Buyer: X _David D. Hertzing_    *David D. Hertzing & Terrie R. Hertzing Living Trust*   Date 10/7/2024

Buyer: X _Terrie R. Hertzing_    *David D. Hertzing & Terrie R. Hertzing Living Trust*   Date 10/7/2024

**SELLER RESPONSE:** (check one)

**Note to Seller: FHA/VA.** If the Parties do not reach agreement on completing the repairs and other actions specified in paragraph 3A of the Buyer FHA or VA section of Buyer Requests, Buyer's FHA or VA lender will not loan Buyer the funds needed to purchase the Property. If that happens, and there is a finance contingency that has not been removed, Buyer may cancel this Agreement (C.A.R. Form CC).

1. **Seller Agreement:**
   A. ☒ **All.** Seller agrees to all of Buyer's Requests.
   OR B. ☐ **Partial.** Seller only agrees to the following (Check all that apply)
       (1) ☐ Seller agrees to all of Buyer's Requests except: _____
         _____
         _____
       (2) ☐ Seller agrees to credit Buyer $_____ at Close of Escrow.
       (3) ☐ Seller agrees, to modify the purchase price. The revised purchase price shall be $_____.
       (4) ☐ Other _____
   C. ☒ **Additional Conditions:** Seller's agreement only applies if Buyer removes those contingencies identified on the attached Contingency Removal Form (C.A.R. Form CR) by Signing and Delivering it within the time specified in paragraph 1D below.
   D. **Expiration of Seller's partial/conditional agreement:**
      If paragraph 1B or 1C is checked, Seller's agreement to the RR may be withdrawn by Seller any time prior to Buyer's agreement in writing and shall be deemed revoked unless by 5:00PM on the third Day after it is signed by Seller (or by 4:00 ☐ AM/☒ PM on 10-9-24 date) AND it is re-signed by Buyer below and a copy of this RR is delivered to Seller.

OR 2. ☐ Seller responds to Buyer's request on the attached form (C.A.R. Form RRRR).
OR 3. ☐ Buyer's requests are not incorporated into the Agreement. Seller responds to Buyer's requests on the attached Amendment to Existing Agreement (C.A.R. Form AEA). No Seller signature is required on this RR.
OR 4. ☐ Seller does NOT agree to any of Buyer's requests

**SELLER RESPONSE:** SELLER RESPONDS TO BUYER'S RR ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS SELLER RESPONSE, ANY PREVIOUS RR OR SELLER RESPONSE AND BUYER REPLY TO REQUEST FOR REPAIR (C.A.R. Form RRRR) CAN NO LONGER BE ACCEPTED.

Seller: X _____    *Jason M. Rund, Chapter 7 Trustee*   Date 10-3.2024

Seller: X _____    Date _____

**BUYER RESPONSE TO SELLER PARTIAL/CONDITIONAL AGREEMENT:** (DO NOT sign until after Seller responds above.)

☐ Buyer accepts Seller's partial/conditional agreement
OR ☐ Buyer does NOT accept Seller's partial agreement. Buyer withdraws Request for Repair No. ____ and makes a new request in the attached Request for Repair No. _____

**BUYER RESPONSE:** BUYER RESPONDS TO SELLER'S PARTIAL AGREEMENT ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS BUYER RESPONSE, ANY PREVIOUS BUYER RESPONSE, SELLER REPLY, OR SELLER PARTIAL AGREEMENT CAN NO LONGER BE ACCEPTED.

**Note to Buyer: FHA/VA.** If the Parties do not reach agreement on completing the repairs and other actions specified in **paragraph 3A** in the FHA or VA section of Buyer Requests, and you have already removed or do remove your financing contingency, even though you may no longer be eligible for the FHA or VA loan specified in the Agreement and may not be able to get another loan to purchase the property, you could be in breach of the Agreement if you are otherwise unable to pay Seller the purchase price.

Buyer: _____    Date _____
Buyer: _____    Date _____

© 2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**RR REVISED 12/23 (PAGE 2 OF 2)**

**REQUEST FOR REPAIR (RR PAGE 2 OF 2)**

Docusign Envelope ID: F835680B-B554-4212-A404-E04A5B28F7DF



# BUYER CONTINGENCY REMOVAL No. __One__
**(C.A.R. Form CR-B, Revised 6/24)**

In accordance with the terms and conditions of the Purchase Agreement, OR ☐ Request For Repair (C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R. Form RRRR), ☐ Other _____
       dated __09/23/2024__, ("Agreement"),
on property known as __25380 Green Oaks Ct and adjoining Lot 20 (APN 563-073-003), Idyllwild, CA 92549__ ("Property"),
between __David D. Hertzing & Terrie R. Hertzing Living Trust, David D. Hertzing & Terrie R. Hertzing Living Trust__ ("Buyer")
and __Jason M. Rund, Chapter 7 Trustee__ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **BUYER REMOVAL OF BUYER CONTINGENCIES:** With respect to any contingency and cancellation right that Buyer removes, unless Otherwise Agreed in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense, **if any**, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2. **Buyer removes ONLY the following individually checked Buyer contingencies:** (Paragraph numbers refer to C.A.R. Form RPA. Applicable paragraph numbers may be different for different forms.)
   - **A.** ☐ Loan **(Paragraph 3L(1) and 8A)**
   - **B.** ☐ Appraisal **(Paragraph 3L(2) and 8B)**
   - **C.** Investigation of Property **(Paragraph 3L(3), 8C, and 12)**
     - **(1)** ☐ Entire Buyer's Investigation Contingency **(Paragraph 12)**
     - OR **(2)** ☐ Only the part of the Investigation related to inspections concerning physical attributes of the Property **(Paragraph 12B(1))**
     - OR **(3)** ☐ All Buyer Investigations other than the physical attributes **(Paragraph 12B(2) and (3))**
     - OR **(4)** ☐ Entire Buyer's Investigation Contingency, EXCEPT: ☐ Other: _____
   - **D.** ☐ Insurance **(paragraph 3L(4) and 8D)**
   - **E.** Review of Seller Documents:
     - **(1)** ☐ Review of All Seller Documents **(Paragraph 3L(5), 8E, 9B(6), 10A, and 11)**
     - OR **(2)** ☐ Review of All Seller Documents, EXCEPT:
       - ☐ Government Reports **(Paragraph 10A)**;
       - ☐ Statutory and other Disclosures **(Paragraph 11)**;
       - ☐ Other: _____
   - **F.** ☐ Preliminary ("Title") Report **(Paragraph 3L(6), 8F, and 13)**
   - **G.** ☐ Common Interest (HOA or OA) Disclosures **(Paragraph 3L(7), 8G and 11L)**
   - **H.** ☐ Review of leased or liened items **(Paragraph 3L(8), 8H, and 9B(6))**
   - **I.** Sale of Buyer's Property **(Paragraph 3L(9) and 8K)**
     - ☐ Entering into contract for Buyer's Property    ☐ Close of Escrow on Buyer's Property
   - **J.** ☐ Other: _____

3. ☐ **ALL Buyer contingencies are removed, EXCEPT:**
   - ☐ Loan Contingency **(Paragraph 3L(1) and 8A)**;
   - ☐ Appraisal Contingency **(Paragraph 3L(2) and 8B)**;
   - ☐ Insurance **(Paragraph 3L(4) and 8D)**;
   - ☐ Contingency for the Close of Buyer's Property **(Paragraph 3L(9) and 8K)**;
   - ☐ Condominium/Planned Development (HOA) Disclosures **(Paragraph 3L(7), 8G and 11L)**;
   - ☐ Other: _____

4. ☒ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

5. Once all contingencies are removed, whether or not Buyer has satisfied themselves regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

NOTE: If this form is attached to a Request for Repairs (C.A.R. Form RR), Seller Response and Buyer Reply to Request for Repairs (C.A.R. Form RRRR), or another form or document such as an addendum (C.A.R. Form ADM) or Amendment to Existing Agreement (C.A.R. Form AEA), it is only valid if Buyer and Seller agree to the requests made on that form or document.

**Buyer** _David D. Hertzing_    _David D. Hertzing & Terrie R. Hertzing Living Trust_ Date **10/8/2024**
    521F370D02164CB...
**Buyer** _Terrie R. Hertzing_    _David D. Hertzing & Terrie R. Hertzing Living Trust_ Date **10/8/2024**
    12D91EC278124D9...

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**CR-B REVISED 6/24 (PAGE 1 OF 1)**

**BUYER CONTINGENCY REMOVAL (CR PAGE 1 OF 1)**

Steve Enlow, 78000 Fred Waring Drive, Ste 202 Palm Desert CA 92211    Phone: 760.880.3675    Fax: 760.262.3232    25380 Green Oak
Steve Enlow    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Case: 22-30028    Doc# 606    Filed: 11/07/24    Entered: 11/07/24 13:12:47    Page 54 of 118
EXHIBIT 1   PAGE 49

# Exhibit 2

Mindy Beckham
Title Officer

Stewart Title of California, Inc.
2801 Townsgate Rd #111
Westlake Village, CA 91361
Phone: (805) 367-5628
Fax:
teammindy@stewart.com

# PRELIMINARY REPORT

Order No.: 2367760
Your File No.: 105994-AA
Buyer/Borrower Name: David D. Hertzing & Terrie R. Hertzing Living Trust
Seller Name: Donn Schoenmann and E. Lynn Schoenmann

Property Address: 25380 Green Oaks Court, Idyllwild, CA 92549

In response to the above referenced application for a policy of title insurance, Stewart Title of California, Inc. hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Stewart Title Guaranty Company policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of a defect, lien or encumbrance not shown or referred to as an exception below or not excluded from coverage pursuant to the printed Schedules, Exclusions from Coverage, and Conditions of said policy forms.

With respect to any contemplated owner's policy, the printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A, attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA/ALTA Homeowner's Policy of Title Insurance, which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages, are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a binder or commitment should be requested.

| Dated as of September 4, 2024 at 7:30AM | |
|---|---|
| | **Update No. 2** |

**When replying, please contact:** Mindy Beckham, Title Officer

Stewart Title of California, Inc.
2801 Townsgate Rd #111
Westlake Village, CA 91361
(805) 367-5628
teammindy@stewart.com

**IF ANY DECLARATION, GOVERNING DOCUMENT (FOR EXAMPLE, COVENANT, CONDITION OR RESTRICTION) OR DEED IDENTIFIED AND/OR LINKED IN THIS TITLE PRODUCT CONTAINS ANY RESTRICTION BASED ON AGE, RACE COLOR, RELIGION, SEX, GENDER, GENDER IDENTITY, GENDER EXPRESSION, SEXUAL ORIENTATION, FAMILIAL STATUS, MARITAL STATUS, DISABILITY, VETERAN OR MILITARY STATUS, GENETIC INFORMATION, NATIONAL ORIGIN, SOURCE OF INCOME AS DEFINED IN SUBDIVISION (p) OF SECTION 12955, OR ANCESTRY, THAT RESTRICTION VIOLATES STATE AND FEDERAL FAIR HOUSING LAWS AND IS VOID, AND MAY BE REMOVED PURSUANT TO SECTION 12956.2 OF THE GOVERNMENT CODE BY SUBMITTING A "RESTRICTIVE COVENANT MODIFICATION" FORM, TOGETHER WITH A COPY OF THE ATTACHED DOCUMENT WITH THE UNLAWFUL PROVISION REDACTED TO THE COUNTY RECORDER'S OFFICE. THE "RESTRICTIVE COVENANT MODIFICATION" FORM CAN BE OBTAINED FROM THE COUNTY RECORDER'S OFFICE AND MAY BE AVAILABLE ON ITS WEBSITE. THE FORM MAY ALSO BE AVAILABLE FROM THE PARTY THAT PROVIDED YOU WITH THIS DOCUMENT. LAWFUL RESTRICTIONS UNDER STATE AND FEDERAL LAW ON THE AGE OF OCCUPANTS IN SENIOR HOUSING OR HOUSING FOR OLDER PERSONS SHALL NOT BE CONSTRUED AS RESTRICTIONS BASED ON FAMILIAL STATUS.**

# PRELIMINARY REPORT

**The form of Policy of Title Insurance contemplated by this report is:**

☐ CLTA Owner's Policy 2022

☐ ALTA Owner's Policy 2021        ☐ Extended    ☐ Standard

☒ CLTA/ALTA Homeowners Policy 2021

☐ CLTA Loan Policy 2022

☐ ALTA Loan Policy 2021        ☐ Extended    ☐ Standard

☐ ALTA Short Form Residential Loan Policy 2021    ☐ Extended    ☐ Standard

☐ Other: _____

# SCHEDULE A

**The estate or interest in the land hereinafter described or referred to covered by this report is:**

FEE SIMPLE

**Title to said estate or interest at the date hereof is vested in:**

Donn R. Schoenmann and E. Lynn Schoenmann, each as to an undivided 50% interest as tenants in common

# <u>LEGAL DESCRIPTION</u>

**The land referred to herein is situated in the State of California, County of Riverside Unincorporated Area and described as follows:**

Parcel 1:

Lot 21 of Tract No. 2790, in the County of Riverside, State of California, as shown by Map on filed on October 6, 1965 in Book 54, Pages 86 through 88 of Maps, Riverside County Records, together with that portion Lot 22 of Tract No. 2790, as shown by Map on file in Book 54, Pages 86 through 88 of Maps, Riverside County Records, lying South of the following described line:

Commencing at the Northeast corner of said Lot 22; thence S 00° 21' 08" W., 89.45 feet, along the East line of said Lot 22, to the point of beginning of said line to be described; thence S. 86° 48' 46" W., 147.01 feet, to the mid-point of the Westerly line of said Lot 22 and the termination of said line to be described.

Said mid-point of Lot 22 being equal distance from the Northwest corner and from the Southwest corner of Lot 22, as measured along the Westerly property line of said Lot. Said description is pursuant to Lot Line Adjustment No. 4544 approved by Riverside County Planning Department dated January 16, 2003 and recorded October 6, 2004 as Instrument No. 2004-0791538, of Official Records.

Parcel 2:

Lot 20 of Tract No. 2790, in the County of Riverside, State of California, as shown by Map on filed on October 6, 1965 in Book 54, Pages 86 through 88 inclusive of Maps, Riverside County Records.

APN:  563-073-005, 563-073-003

(End of Legal Description)

MAP

THE MAP(S) CONNECTED HEREWITH AND PROVIDED IN CONNECTION WITH THIS TITLE PRODUCT IS/ARE BEING PROVIDED AS A COURTESY AND FOR INFORMATIONAL PURPOSES ONLY; THE MAP(S) SHOULD NOT BE RELIED UPON. FURTHERMORE, THE PARCELS SET OUT ON THE MAP(S) MAY NOT COMPLY WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES. STEWART TITLE ASSUMES NO LIABILITY, RESPONSIBILITY OR INDEMNIFICATION RELATED TO THE MAP(S) NOR ANY MATTERS CONCERNING THE CONTENTS OF OR ACCURACY OF THE MAP(S).

Order No.:  2367760
Preliminary Report
Page 4 of  9

Case: 22-30028    Doc# 606    Filed: 11/07/24    Entered: 11/07/24 13:12:47    Page 59 of
118
EXHIBIT 2  PAGE 53

# <u>SCHEDULE B</u>

**At the date hereof, exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy or policies would be as follows:**

**Taxes:**

A.    Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes, to be levied for the fiscal year 2024 - 2025.

B.    General and special city and/or county taxes, and any assessments collected with taxes, for the fiscal year 2023 - 2024:

| | |
|---|---|
| 1st Installment | : $3,541.09 |
| Status 1st | : Delinquent |
| Delinquent Date | : December 11, 2023 |
| Penalty | : $354.10 |
| 2nd Installment | : $3,541.09 |
| Status 2nd | : Delinquent |
| Delinquent Date | : April 10, 2024 |
| Penalty | : $392.16 |
| Parcel No. | : 563-073-005 |
| Code Area / Tracer No. | : 071-022 |

Said amounts are included in the tax default amounts shown below.

Matters contained therein affect: Parcel 1.

C.    General and special city and/or county taxes, and any assessments collected with taxes, for the fiscal year 2023 - 2024:

| | |
|---|---|
| 1st Installment | : $397.11 |
| Status 1st | : Delinquent |
| Delinquent Date | : December 11, 2023 |
| Penalty | : $39.71 |
| 2nd Installment | : $397.11 |
| Status 2nd | : Delinquent |
| Delinquent Date | : April 10, 2024 |
| Penalty | : $77.77 |
| Parcel No. | : 563-073-003 |
| Code Area / Tracer No. | : 071-022 |

Said amounts are included in the tax default amounts shown below.

Matters contained therein affect: Parcel 2.

D.    Property taxes have been declared defaulted for non-payment of delinquent taxes for the fiscal year(s) 2023 - 2024 for Parcel No. 563-073-005. Amounts due show as follows:
Amount: $8,183.91; due by: September 30, 2024
Amount: $8,290.12; due by: October 31, 2024
Amount: $8,396.35; due by: November 30, 2024
Prior to recording, the final amounts due must be confirmed directly with tax collector.

Matters contained therein affect: Parcel 1.

E.   Property taxes have been declared defaulted for non-payment of delinquent taxes for the fiscal year(s) 2023 - 2024 for Parcel No. 563-073-003. Amounts due show as follows:
Amount: $984.21; due by: September 30, 2024
Amount: $996.08; due by: October 31, 2024
Amount: $1,007.99; due by: November 30, 2024
Prior to recording, the final amounts due must be confirmed directly with tax collector.

Matters contained therein affect: Parcel 2.

F.   The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the revenue and taxation code of the State of California.

G.   Taxes and/or assessments affecting the land, if any, for Community Facility Districts including Mello Roos Districts which may exist by virtue of assessment maps or notices filed by said districts. Said taxes and/or assessments are typically collected with the County taxes; however, some districts may remove these taxes and/or assessment from the County taxes and assess and collect them separately.

H.   Prior to recording, the final amount due for taxes must be confirmed with tax collector.

**Exceptions:**

1.   Water rights, claims, or title to water, whether or not shown by the Public Records.

2.   Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

3.   Matters as shown on the Tract No. 2790 filed in Book 54, Page 86, of Maps which cites, among other things, the following:
1. Public utilities

4.   An easement for natural ware course purpose and rights incidental thereto as shown on the Tract No. 2790 filed in Book 54, Page 86, of Maps.

5.   Covenants, conditions and restrictions as set forth in a document recorded October 6, 1965 as Instrument No. 114641, of Official Records.

Said covenants, conditions, and restrictions provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith and for value.

6.   Please be advised that our search did not disclose any open deeds of trust of record. If you should have knowledge of any outstanding obligation, please contact your title officer immediately for further review.

7.   Easement and rights incidental thereto for public utilities to Southern California Edison Company, a Corporation and California Water and Telephone Company, a Corporation, as set forth in a document recorded January 7, 1966, as Instrument No. 2486, of Official Records.

8.   Pending court action / Notice of Lis Pendens
Recorded              : January 31, 2019  as Instrument No. 2019-0034798, of Official Records.
Plaintiff                 : Celeste Lytle, Colette Sims, Beth Schoenmann, Stuart Gordon

Schoenmann and Stuart Gordon Schoenmann, Executor of the Estate of Donn R. Schoenmann
Defendant : E. Lynn Schoenmann
Case/Docket No. : PR1801087

Matters contained therein affect: Parcel 1.

9. Pending court action / Notice of Lis Pendens
Recorded : January 31, 2019  as Instrument No. 2019-0034799, of Official Records.
Plaintiff : Celeste Lytle, Colette Sims, Beth Schoenmann, Stuart Gordon Schoenmann and Stuart Gordon Schoenmann, Executor of the Estate of Donn R. Schoenmann
Defendant : E. Lynn Schoenmann
Case/Docket No. : PR1801087

Matters contained therein affect: Parcel 2.

10. Matters contained in a document entitled "Affidavit - Death of Spouse (Community Property with Right of Survivorship)", recorded January 25, 2022, as Instrument No. 2022-0040809, of Official Records.

11. To assist in the clarifying, confirming and eliminating certain title matters, provide to Stewart Title, prior to recording, a completed Statement of Information for all identified and known Sellers/Owners in this transaction.


(End of Exceptions)

# NOTES AND REQUIREMENTS

A. There are no transfers or conveyances shown in the Public Records within 24 months of the date of this Preliminary Report. If you have knowledge of any transfers or conveyances, please contact your title officer immediately for further requirements.

B. There are no items in this Preliminary Report that will cause Stewart Title Guaranty Company to decline to attach the CLTA Endorsement Form 116.01-06 (or similar ALTA 22-06 equivalent), indicating that there is Single Family Residence; known as 25380 Green Oaks Court, Idyllwild, California.

C. All Transactions - Seller(s) and Buyer(s) or Borrowers are provided, as attachments, the document entitled "Acknowledgement of Receipt, Understanding and Approval of STG Privacy Notice for Stewart Title Companies and Stewart's Affiliated Business Arrangement Disclosure Statement" and the individually named documents, for review and acknowledgment prior to closing.

D. All Transactions - Buyer(s)/Seller(s)/Borrower(s) are provided the Preliminary Report for review and acknowledgment prior to closing. Buyer(s) approval shall include the Preliminary Report items that are to remain as exceptions to the title policy.

E. All Transactions - Seller(s)/Owner(s) are provided Stewart Title Guaranty Company's Owner's Affidavit and Indemnity for completion and submission prior to closing.

F. There are no items in this Preliminary Report that will cause Stewart Title Guaranty Company to decline to attach the CLTA Endorsement Form 100.2-06 (or a similar ALTA 9 equivalent), or, if applicable, the CLTA Endorsement Form 115.1-06 (or a similar ALTA 4 equivalent) or CLTA Endorsement Form 115.2-06 (or a similar ALTA 5 equivalent) to an ALTA Loan Policy, when issued.

G. A Preliminary Change of Ownership Report must be completed by the transferee (buyer) prior to the transfer of property in accordance with the provisions of Section 480.3 of the Revenue and Taxation Code. The Preliminary Change of Ownership Report should be submitted to the recorder concurrent with the recordation of any document effecting a change of ownership. If a document evidencing a change of ownership (i.e. Deed, Affidavit-Death Joint Tenant) is presented to the recorder for recording without a preliminary change of ownership report, the recorder may charge an additional $20.00, along with other potential fees and taxes.

# CALIFORNIA "GOOD FUNDS" LAW

California Insurance Code Section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement. Funds received by Stewart Title of California, Inc. via wire transfer may be disbursed upon receipt. Funds received via cashier's checks or teller checks drawn on a California Bank may be disbursed on the next business day after the day of deposit. If funds are received by any other means, recording and/or disbursement may be delayed, and you should contact your title or escrow officer. All escrow and sub-escrow funds received will be deposited with other escrow funds in one or more non-interest bearing escrow accounts in a financial institution selected by Stewart Title of California, Inc.. Stewart Title of California, Inc. may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and Stewart Title of California, Inc. shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by Stewart Title of California, Inc.. Such benefits shall be deemed additional compensation to Stewart Title of California, Inc. for its services in connection with the escrow or sub-escrow.

If any check submitted is dishonored upon presentation for payment, you are authorized to notify all principals and/or their respective agents of such nonpayment.

# EXHIBIT "A"

## LEGAL DESCRIPTION

Order No.:  2367760
Escrow No.:  2367760

The land referred to herein is situated in the State of California, County of Riverside Unincorporated Area and described as follows:

Parcel 1:

Lot 21 of Tract No. 2790, in the County of Riverside, State of California, as shown by Map on filed on October 6, 1965 in Book 54, Pages 86 through 88 of Maps, Riverside County Records, together with that portion Lot 22 of Tract No. 2790, as shown by Map on file in Book 54, Pages 86 through 88 of Maps, Riverside County Records, lying South of the following described line:

Commencing at the Northeast corner of said Lot 22; thence S 00° 21' 08" W., 89.45 feet, along the East line of said Lot 22, to the point of beginning of said line to be described; thence S. 86° 48' 46" W., 147.01 feet, to the mid-point of the Westerly line of said Lot 22 and the termination of said line to be described.

Said mid-point of Lot 22 being equal distance from the Northwest corner and from the Southwest corner of Lot 22, as measured along the Westerly property line of said Lot. Said description is pursuant to Lot Line Adjustment No. 4544 approved by Riverside County Planning Department dated January 16, 2003 and recorded October 6, 2004 as Instrument No. 2004-0791538, of Official Records.

Parcel 2:

Lot 20 of Tract No. 2790, in the County of Riverside, State of California, as shown by Map on filed on October 6, 1965 in Book 54, Pages 86 through 88 inclusive of Maps, Riverside County Records.

APN:  563-073-005, 563-073-003

(End of Legal Description)

# Procedures to Accompany the Restrictive Covenant Modification Form

The law prohibits unlawfully restrictive covenants based upon:

"…age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry… Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

As the individual holding or acquiring an interest in the property, you may have any unlawfully restrictive covenants "removed", which means "redacted."

To have the unlawfully restrictive covenant removed, you may prepare and submit to the county recorder's office, a "Restrictive Covenant Modification" form (RCM) together with a copy of the attached document with the unlawfully restrictive covenant redacted. This request must be submitted to the county recorder's office and must include your return address so the county recorder can notify you of the action taken by the county counsel.

The process at the county recorder's office is as follows:
- The county recorder takes the RCM with the redacted document and the original document attached and submits it to the county counsel for review to determine if, from a legal standpoint, the language was an unlawfully restrictive covenant and thus the redacted version should be indexed and recorded.
- The county counsel shall inform the county recorder of his/her determination within a reasonable amount of time, not to exceed three months from the date of your request.
- If county counsel determined that the redacted language was unlawful then, once recorded, the redacted document is the only one that effects the property and this modified document has the same effective date as the original document.
- If county counsel determined that the redacted language was not unlawful then county counsel will return the RCM package to the county recorder and the county recorder will advise the requestor that same the request has been denied and the redacted document has not been recorded.
- The modification document shall be indexed in the same manner as the original document and shall contain a recording reference to the original document.

RECORDING REQUESTED BY


AND WHEN RECORDED MAIL TO


NAME

ADDRESS

CITY
STATE & ZIP

| TITLE ORDER NO. | ESCROW NO. | APN NO. |
|---|---|---|

# RESTRICTIVE COVENANT MODIFICATION
**(Unlawfully Restrictive Covenant Modification Pursuant to Government Code Section 12956.2)**

I(We)_____
have or are acquiring an ownership interest of record in the property located at _____
_____ that is covered by the
document described below.

The following reference document contains a restriction based on age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in Section 12955 of the Government Code, or ancestry, that violates state and federal fair housing laws and is void. Pursuant to Section 12956.2 of the Government Code, this document is being recorded solely for the purpose of eliminating that restrictive covenant as shown on page(s)_____of the document recorded on _____ in book_____and page _____ or instrument number_____of the official records of the County of _____, State of California.

Attached hereto is a true, correct and complete copy of the document referenced above, with the unlawful restrictive covenant redacted.

This modification document shall be indexed in the same manner as the original document pursuant to subdivision (d) of Section 12956 of the Government.

The effective date of the terms and conditions of the modification document shall be the same as the effective date of the original document.

_____
(Signature of Submitting Party)

_____
(Printed Name)

_____
(Signature of Submitting Party)

_____
(Printed Name)

_____ County Counsel, or their designee, pursuant to Government Code Section 12956.2, hereby states that it has been determined that the original document referenced above _____ Does _____ Does Not contain an unlawful restriction and this modification may be recorded.

County Counsel
By:
_____
Date:
_____

# AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

Date:        June 25, 2024

File No.:    2367760

Property:    25380 Green Oaks Court, Idyllwild, CA  92549

From:        Stewart Title of California, Inc.

Stewart Title of California, Inc. ("Stewart Title") has a business relationship with the affiliated entities identified below. Because of these relationships, this referral may provide Stewart Title a financial or other benefit related solely to the products or services provided or performed by the affiliated entity. Stewart Title and the affiliated entities below are all part of the Stewart family of companies, the ultimate owner of which is Stewart Information Services Corporation (NYSE:STC).

**SET FORTH BELOW IS THE ESTIMATED CHARGE OR RANGE OF CHARGES FOR THE SETTLEMENT SERVICE PROVIDERS LISTED. YOU ARE <u>NOT</u> REQUIRED TO USE ANY OF THE SETTLEMENT SERVICE PROVIDERS AS A CONDITION FOR YOUR PURCHASE, SALE, OR REFINANCE TRANSACTION. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

| *Affiliated Entity – Settlement Service Provider* | *Charge or range of charges* |
|---|---|
| Advanced Support and Knowledge Services, LLC | $     45.00 to $   275.00 |
| Asset Preservation, Inc. | $1,250.00 to $2,000.00 in delayed exchanges; Reverse exchanges are rare and the charge is quoted based upon the complexity of the transaction |
| NotaryCam, Inc. | $      5.00 to $   150.00 |
| Signature Closers, LLC | $     45.00 to $   500.00 |
| Stewart Insurance | |
|    Hazard/Home Insurance | $   800.00 to $8,500.00 |
|    Home Warranty | $   450.00 to $   900.00 |
|    Natural Hazard Disclosure Report | $     99.00 to $   140.00 |
| Stewart Valuation Intelligence, LLC | $   100.00 to $   700.00 |

_____
Donn Schoenmann

_____
E. Lynn Schoenmann

_____
David D. Hertzing & Terrie R. Hertzing Living Trust

Case: 22-30028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 68 of
118
EXHIBIT 2  PAGE 62

**ACKNOWLEDGEMENT OF RECEIPT, UNDERSTANDING
AND APPROVAL OF
STEWART INFORMATION SERVICES CORPORATION
GRAMM-LEACH BLILEY
PRIVACY NOTICE AND
AFFILIATED BUSINESS ARRANGEMENT
DISCLOSURE STATEMENT**

The undersigned hereby acknowledge receipt of the Stewart Title Information Services Corporation Gramm-Leach Bliley Notice and the Affiliated Business Arrangement Disclosure Statement that apply to this transaction. The undersigned further acknowledge that he/she/they have received, read, understand and accept these documents in connection with the above described transaction.

Further, the undersigned received a copy of this acknowledgement as evidenced by the signature below.

_____
Donn Schoenmann

_____
E. Lynn Schoenmann

_____
David D. Hertzing & Terrie R. Hertzing Living Trust

Case: 22-30028    Doc# 606    Filed: 11/07/24    Entered: 11/07/24 13:12:47    Page 69 of
118

EXHIBIT 2  PAGE 63

**CALIFORNIA LAND TITLE ASSOCIATION**
**STANDARD COVERAGE POLICY – 1990 (11-09-18)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy; or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

---

© California Land Title Association.  All rights reserved.

1

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

## EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

## EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART II

(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)]

## CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE OWNER'S POLICY (02-04-22)

## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i. the occupancy, use, or enjoyment of the Land;
      ii. the character, dimensions, or location of any improvement on the Land;
      iii. the subdivision of land; or
      iv. environmental remediation or protection.
   b. any governmental forfeiture, police, regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2. Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
   e. resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
      i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
      ii. for any other reason not stated in Covered Risk 9.b.
5. Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6. Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

© California Land Title Association. All rights reserved.

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

Case: 22-30028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 71 of 108

EXHIBIT 2   PAGE 65

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

### PART I

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

### PART II

*(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)*

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (07-01-2021)

### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.   a.   any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i.   the occupancy, use, or enjoyment of the Land;
      ii.   the character, dimensions, or location of any improvement on the Land;
      iii.   the subdivision of land; or
      iv.   environmental remediation or protection.
   b.   any governmental forfeiture, police, or regulatory, or national security power.
   c.   the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.

2.   Any power to take the Land by condemnation. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.

3.   Any defect, lien, encumbrance, adverse claim, or other matter:
   a.   created, suffered, assumed, or agreed to by You;
   b.   not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;
   c.   resulting in no loss or damage to You;
   d.   attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or
   e.   resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.

4.   Lack of a right:
   a.   to any land outside the area specifically described and referred to in Item 3 of Schedule A; and
   b.   in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.
   Exclusion 4 does not modify or limit the coverage provided under Covered Risk 11 or 21.

© California Land Title Association. All rights reserved.             3
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

5.   The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.

6.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transfer of the Title to You is a:
   a.   fraudulent conveyance or fraudulent transfer;
   b.   voidable transfer under the Uniform Voidable Transactions Act; or
   c.   preferential transfer:
      i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
      ii.   for any other reason not stated in Covered Risk 30.

7.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

8.   Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.

9.   Any lien on Your Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a. or 27.

10.  Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

**LIMITATIONS ON COVERED RISKS**

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
   • For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 18: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 19: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 21: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |

**CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)**

**EXCLUSIONS**

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1.   Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a.   building;
   b.   zoning;
   c.   land use;
   d.   improvements on the Land;
   e.   land division; and
   f.   environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

© California Land Title Association.  All rights reserved.                                                                    4

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.  The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4.  Risks:
    a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c.  that result in no loss to You; or
    d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.  Failure to pay value for Your Title.
6.  Lack of a right:
    a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b.  in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

**LIMITATIONS ON COVERED RISKS**

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 18: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 19: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |
| Covered Risk 21: | _____% of Policy Amount Shown in Schedule A or $_____ (whichever is less) | $ _____ |

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited.
Reprinted under license or express permission from the California Land Title Association.

### ALTA OWNER'S POLICY (07-01-2021)

### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
    i.  the occupancy, use, or enjoyment of the Land;
    ii.  the character, dimensions, or location of any improvement on the Land;
    iii.  the subdivision of land; or
    iv.  environmental remediation or protection.
    b.  any governmental forfeiture, police, regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2.  Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by the Insured Claimant;
    b.  not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c.  resulting in no loss or damage to the Insured Claimant;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
    e.  resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
        i.  to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.  for any other reason not stated in Covered Risk 9.b.
5.  Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6.  Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7.  Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

### EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

*NOTE: The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed as 1 through 7 below:*

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land or (b) asserted by persons or parties in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4.  Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

© California Land Title Association.  All rights reserved.

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use.  All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

Case: 22-30028    Doc#: 606    Filed: 11/07/24    Entered: 11/07/24 13:12:47    Page 75 of
118

EXHIBIT 2  PAGE 69

5.     (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.     Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7.     Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

### 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.     (a)     Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
        (i)     the occupancy, use, or enjoyment of the Land;
        (ii)     the character, dimensions, or location of any improvement erected on the Land;
        (iii)     the subdivision of land; or
        (iv)     environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)     Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.     Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.     Defects, liens, encumbrances, adverse claims, or other matters
    (a)     created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)     not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)     resulting in no loss or damage to the Insured Claimant;
    (d)     attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e)     resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.     Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a)     a fraudulent conveyance or fraudulent transfer; or
    (b)     a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.     Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
*NOTE: The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as 1 through 7 below:*

1.     (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.     Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.
3.     Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4.     Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5.     (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.     Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7.     Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

© California Land Title Association. All rights reserved.       7

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

File No.:  2367760

# AVAILABLE DISCOUNTS DISCLOSURE STATEMENT

This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") is pleased to inform you that upon proper qualification, there are premium discounts available upon the purchase of title insurance covering improved property with a one to four family residential dwelling.

Such discounts apply to and include:

    Property located within an area proclaimed a state or federal natural disaster area.

    Property being refinanced.

    Property involving owners or purchasers that are active military personnel and honorably discharged veterans, senior citizens 55 years of age or older, first-time homebuyers and first responders.

    Property dedicated to church or charitable use.

Please talk with your escrow officer or title officer to determine your qualification for any of these discounts.

# STGC TITLE PREMIUM DISCOUNT APPLICATION
# AND CONFIRMATION OF ELIGIBILITY

Order Number: 2367760

Property:  25380 Green Oaks Court, Idyllwild, CA  92549

APN: 563-073-005, 563-073-003

In connection with the request of the Undersigned ("Applicant") for the preparation and issuance of title insurance, Applicant provides this completed STGC Title Premium Discount Application and Confirmation of Eligibility ("Request Form") for the benefit of, and reliance by, title insurer Stewart Title Guaranty Company, and its policy issuing agent Stewart Title of California, Inc. (collectively hereafter referred to as "Stewart Title") in connection with pricing the title premium in the above referenced transaction:

1.  Applicant understands that Stewart Title has available for qualifying requestors a 10% discount on the title insurance premium charged under certain circumstances; however, all endorsement fees and other charges are not discounted.

2.  Applicant understands that Stewart Title is only able to provide such discount if requested through providing this completed Request Form and is received by Stewart Title at least five (5) business days prior to recording of the transaction to which a discount is requested.

3.  Applicant understands that Stewart Title prohibits combined discounts; accordingly, Stewart Title will provide this requested discount and disregard other applicable discounts, if any, when eligibility requirements for such discount are satisfied.

4.  Applicant requests the following discount and affirms that Applicant meets the criteria and requirements set forth to qualify for such selected discount (SELECT ONLY ONE QUALIFYING DISCOUNT):

☐   Active military personnel and honorably discharged veteran discount* – To qualify for an active military personnel or honorably discharged veteran discount: (1) the property being purchased, mortgaged or refinanced is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s), seller(s) or borrower(s), as applicable, is a U.S. citizen, permanent resident or qualified alien and is engaged in full-time, active duty in the military on the date signed below or was a honorably discharged veteran.

☐   Senior citizen discount – To qualify for a senior citizen discount: (1) the property being purchased, mortgaged or refinanced is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s), seller(s) or borrower(s), as applicable, is a U.S. citizen, permanent resident or qualified alien and is 55 years of age or older on the date signed below.

*Active military personnel and honorably discharged veterans include those members from the following U.S. military services branches: Air Force, Army, Coast Guard, Marine Corps, Navy and Space Force, and any active Reserve members of these military services branches and any active members of the Air or Army National Guard.

Case: 22-30028    Doc# 606    Filed: 11/07/24    Entered: 11/07/24 13:12:47    Page 78 of
118
EXHIBIT 2  PAGE 72

☐ <u>First-time homebuyer discount</u> – To qualify for a first-time homebuyer discount: (1) the property being purchased is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s) is a U.S. citizen, permanent resident or qualified alien and has either never owned any property or, has not been an owner in a primary residence for the last three calendar years from the date signed below.

☐ <u>First responder discount</u> – To qualify for a first responder discount: (1) the property being purchased, mortgaged or refinanced is a fee simple interest in a primary, owner-occupied residence; and (2) at least one of the undersigned purchaser(s), seller(s) or borrower(s), as applicable, is a U.S. citizen, permanent resident or qualified alien and is currently employed as a police officer, firefighter, paramedic or emergency medical technician on the date signed below.

This Request Form is completed under penalty of perjury and is made for the purpose of inducing Stewart Title to provide the title premium discount, and the representations contained herein are material to such insurance coverage pricing. The undersigned hereby indemnifies and holds Stewart Title harmless from any loss or damage, liability, costs, expenses and attorneys' fees which it may sustain to the extent any representation contained herein is incorrect. The undersigned understands that Stewart Title may decide not to provide the requested title insurance despite the information and affirmations contained herein.

**PLEASE READ AND COMPLETE THE STGC TITLE PREMIUM DISCOUNT REQUEST FORM ON THE PREVIOUS PAGE BEFORE SIGNING BELOW. IF YOU DO NOT UNDERSTAND OR HAVE ANY QUESTIONS ABOUT THIS AFFIDAVIT, YOU SHOULD CONTACT YOUR LOCAL STEWART TITLE PROFESSIONAL.**

**THE UNDERSIGNED DECLARES UNDER PENALTY OF PERJURY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT.**

_____         _____
Signature                                          Signature

_____         _____
Printed Name                                       Printed Name

_____         _____
Date Signed                                        Date Signed

# Stewart Title of California, Inc.
## STATEMENT OF INFORMATION

### CONFIDENTIAL

**THE STREET ADDRESS of the property in this transaction is:** (IF NONE LEAVE BLANK)

ADDRESS  25380 Green Oaks Court           CITY Idyllwild, CA 92549

IMPROVEMENTS:  ☐ SINGLE RESIDENCE  ☐ MULTIPLE RESIDENCE  ☐ COMMERCIAL

OCCUPIED BY:  ☐ OWNER  ☐ TENANTS

CONSTRUCTION OR IMPROVEMENTS WITHIN THE LAST 6 MONTHS?  ☐ YES  ☐ NO

IF YES, STATE NATURE WORK DONE _____

| PARTY 1 | PARTY 2 |
|---|---|
| FIRST    MIDDLE    LAST | FIRST    MIDDLE    LAST |
| FORMER LAST NAME(S), IF ANY | FORMER LAST NAME(S), IF ANY |
| BIRTHPLACE    BIRTH DATE | BIRTHPLACE    BIRTH DATE |
| Social Security No.    DRIVER'S LICENSE NO. | Social Security No.    DRIVER'S LICENSE NO. |
| Home    Cell | Home    Cell |
| ☐ AM SINGLE  ☐ AM MARRIED  ☐ HAVE A DOMESTIC PARTNER | ☐ AM SINGLE  ☐ AM MARRIED  ☐ HAVE A DOMESTIC PARTNER |
| Date of Marriage or Partnership | Date of Marriage or Partnership |
| NAME OF <u>CURRENT</u> SPOUSE OR DOM. PARTNER (if other than Party 2): | NAME OF <u>CURRENT</u> SPOUSE OR DOM. PARTNER (if other than Party 1): |
| NAME OF <u>FORMER</u> SPOUSE/DOM. PARTNER: (IF NONE, WRITE "NONE"): | NAME OF <u>FORMER</u> SPOUSE/DOM. PARTNER: (IF NONE, WRITE "NONE"): |

| PARTY 1 | | | PARTY 2 | | |
|---|---|---|---|---|---|
| Dissolutions pending | Yes | No (circle one) | Dissolutions pending | Yes | No (circle one) |
| Required to make child support payments? | Yes | No (circle one) | Required to make child support payments? | Yes | No (circle one) |
| Required to make Family support payments? | Yes | No (circle one) | Required to make Family support payments? | Yes | No (circle one) |
| If paying former spouse directly, please provide address: | | | If paying former spouse directly, please provide address: | | |

### OCCUPATIONS FOR LAST 10 YEARS (attach additional 10 year information, if applicable)

Party 1: _____

    Occupation    Firm Name    Street and City    No. Years

Party 2: _____

    Occupation    Firm Name    Street and City    No. Years

### RESIDENCES FOR LAST 10 YEARS (attach additional 10 year information, if applicable)

Party 1: _____

    Street No.    Street Name    City    No. Years

Party 2: _____

    Street No.    Street Name    City    No. Years

### Email Address

If you would like us to contact you by email, please provide your email address _____

Home Phone: _____  Business Phone: _____  Cell Phone: _____

**The undersigned declare, under penalty of perjury, that foregoing is true and correct.**

**Signature:** _____ **Date:** _____      **Signature:** _____ **Date:** _____

Case: 22-30028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 80 of 118

EXHIBIT 2  PAGE 74

# CERTIFICATION OF TRUST
### (California Probate Code 18100.5)

## IMPORTANT: THIS CERTIFICATION OF TRUST MUST BE FULLY COMPLETED

I/(We) _____
(Name of Trustee(s))

as Trustee(s) of the _____
(Name of Trust)

dated _____ (the "Trust") am/are providing the information set forth below at the request of Stewart Title Guaranty Company, a Texas corporation, and its policy issuing agent Stewart Title of California, Inc., a California corporation (hereafter collectively called "Company").

WHEREAS, Company has been requested to issue a title insurance policy on the real property described in Schedule "A" of the Preliminary Report or Commitment issued under order number 2367760; and

WHEREAS, Company has determined that information concerning the Trust is necessary to ascertain whether Company will be able to issue the requested policy of title insurance;

THEREFORE, acting in my/our capacity as Trustee(s) of the Trust, I/we hereby certify and confirm to Company that the information set forth below is accurate and correct.

1.   The Trust identification number (SSN or employer Tax ID) is: _____

2.   As set out in the Trust, the Settlor(s) of the Trust is/are:
_____
_____

3.   The current active Trustee(s) of the Trust is/are:
_____
_____

4.   As set out in the Trust, the powers of the Trustee(s) include: (check all that apply)
_____ The power to sell, convey and grant trust property.
_____ The power to hypothecate (borrow money and encumber/lien trust property).
_____ The power to invest and reinvest trust assets, including providing loans.

5.   As set out in the Trust, are all currently active Trustee(s) required to execute documents when exercising the powers set forth above?
(circle one)            YES                        NO

6.   As set out in the Trust, the Trust is: (check the appropriate box)    _____ Revocable    _____ Irrevocable

7.   As set out in the Trust, if it's revocable, the name(s) of the person(s) identified as having power to revoke the Trust is/are:
_____

8.   The Trust and the individual named Settlor(s) do not have any liens or money judgments pending, filed and/or recorded against the Trust and/or Settlor(s).

9.   The Trust and/or the individually named Settlor(s) are not aware of any threatened, pending, or filed lawsuits nor have it/they settled any lawsuits within the three (3) calendar years immediately preceding the signing of this Certification.

10.  By signing below, the undersigned Trustee(s) affirm that the Trust is in full force and effect and has not been revoked or terminated; in addition, the Trust has not been modified or amended in any manner which would cause the representations set forth herein to be incorrect.

11.  Is this Certification of Trust is being executed by all currently active Trustees of the Trust? (circle one)   YES   NO
If "NO," please explain: _____

Case 24-30028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 81 of
118
EXHIBIT 2   PAGE 75

12. Are there any living persons or entities named as Trustee in the Trust who are not "currently active Trustees"? (circle one)   YES   NO   If "YES," identify by name and explain why: _____
_____

13. The undersigned Trustees acknowledge and understand that Company may require additional information, including copies and/or excerpts of the Trust and any amendments, when necessary, in order to make an insurance determination.

14. There are no claims, challenges of any kind, and/or alleged causes of action, contesting or questioning the validity of the Trust or the Trustee(s) authority to act on behalf of the Trust.

**PLEASE READ, COMPLETE AND RESPOND TO ALL STATEMENTS IN THIS CERTIFICATION BEFORE SIGNING. THE TRUSTEE(S) HEREBY CERTIFY UNDER PENALTY OF PERJURY THAT THE INFORMATION IS TRUE, ACCURATE AND CORRECT TO THE BEST OF HIS/HER/THEIR KNOWLEDGE. IF YOU DO NOT UNDERSTAND OR HAVE ANY QUESTIONS ABOUT THIS CERTIFICATION, YOU SHOULD SEEK THE ASSISTANCE OF YOUR INDEPENDENT FINANCIAL AND/OR LEGAL ADVISOR BEFORE SIGNING. THE TRUSTEE(S) UNDERSTAND THAT COMPANY MAY DECIDE NOT TO PROVIDE THE REQUESTED TITLE INSURANCE DESPITE THE INFORMATION AND AFFIRMATIONS CONTAINED HEREIN.**

Date Signed:_____         Date Signed:_____

_____         _____
Print Trustee Name                        Print Trustee Name

_____         _____
Trustee Signature                         Trustee Signature

Date Signed:_____         Date Signed:_____

_____         _____
Print Trustee Name                        Print Trustee Name

_____         _____
Trustee Signature                         Trustee Signature

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California          }
                            }SS.
County of _____    }

On _____ before me, _____ , Notary Public, personally appeared _____
who proved to be on the basis of satisfactory evidence to be the person(s), whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                    (This area for official notarial seal)

Signature _____

Case 2:24-bk-... Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 82 of 118

EXHIBIT 2  PAGE 76

# OWNER'S AFFIDAVIT AND INDEMNITY

**Order No.:** 2367760
**Address/Location:** 25380 Green Oaks Court, Idyllwild, CA 92549
**APN:** 563-073-005, 563-073-003

In connection with the request of the Undersigned ("Affiant") for the preparation and issuance of insurance, Affiant makes the following statements and representations for the benefit of, and reliance by, title insurer STEWART TITLE GUARANTY COMPANY, and its policy issuing agent STEWART TITLE OF CALIFORNIA, INC. (collectively hereafter referred to as "TITLE"):

1. Affiant owns and holds title to the land described in Schedule A of the Preliminary Report or Commitment issued in connection with the above referenced Order Number (the "Land").

2. The Affiant's ownership and/or possession of the Land has been peaceful and undisturbed, and title thereto has never been disputed, questioned or rejected, nor has the issuance of title insurance ever been refused, except as follows: **(If none, please state "none")**
   _____

3. Other than the Affiant, there are no parties entitled to possession of the Land other than the following: **(If none, please state "none")**
   _____

4. There are no leases, licenses, options, rights of first refusal, or contracts to sell, affecting the Land, or any parties currently in possession, of the Land, except the following: **(If none, please state "none")**
   _____

5. All assessments by a management company or owners' association, or for common area or building maintenance, if any, are paid current or are not yet due and payable except for the following. **(If none, please state "none")**
   _____

6. There are no pending contemplated repairs/improvements to the Land, except the following: **(If none, please state "none)**
   _____

7. There has been no construction, building materials, repairs, improvements, or remodeling performed, provided, furnished or delivered within the last 12 months, except as follows: **(If none, please state "none")**
   _____
   This work performed, as detailed above, was completed on _____ (date of completion).

8. Affiant is not aware of the existence of any of the following:
   a. Improvements, including fences, encroaching into any easements on the Land, or over any boundary lines of the Land.
   b. Adjoining property improvements encroaching onto the Land.
   c. Liens against the Land and/or judgments or tax liens against Affiant or any other property owner currently in title, except those described in the Preliminary Report or Commitment issued in connection with the above referenced Order Number.
   d. Outstanding claims or persons entitled to claims for mechanics' or materialman liens against the Land.
   e. Pending repairs/improvements to any adjacent street(s) or any assessments related to road maintenance
   f. Any pending litigation involving the Land, the Affiant or any other property owner currently in title.
   g. Recent improvements completed or being made to any common area(s) located within the subdivision in which the Land is located.
   h. Violations of building permits, zoning laws or recorded covenants, conditions and/or restrictions imposed on the Land.
   i. Any pending assessments for Community Facility Districts.
   j. Any new, pending or existing obligation or loan including any home improvements on the Land pursuant to the PACE or HERO program, or any other similar type program.

k.   Any unrecorded or recorded easements, covenants, conditions, or restrictions affecting the Land, other than those listed in the Preliminary Report or Title Commitment.

l.   Any use of the property for the production, sale, warehousing or transporting of fresh fruits, vegetables, livestock or poultry (e.g., supermarkets, restaurants, wineries, breweries and meat packing plants).

**With regard to 8a.-8l, except as follows**: **(If none, please state "none")**
_____

9.   No proceedings in bankruptcy or receivership have been instituted or filed by, or against, the Affiant or any other property owner currently in title.

10.  There are no unpaid taxes, assessments or utility type bills including but not limited to bills for water, sewer, hazardous waste, recycling, storm drain and/or rubbish and there are no liens related to such utilities from or on the Land, with the exception of the following: **(If none, please state "none")**
_____

11.  There are no financial obligations secured by trust deeds, mortgages, financing statements, vendor's liens, security agreements or otherwise, against the Land, except as set forth in the Preliminary Report, proforma and/or Commitment, and as set forth below: **(If none, please state "none")**

<u>Creditor</u>                                                            <u>Approximate Balance</u>

_____                    _____

_____                    _____

12.  There has been no harvesting or production of any oil, gas, geothermal materials or other minerals from or on the Land and there are no oil, gas, geothermal and/or mineral leases, licenses, options, rights of first refusal, and/or contracts to sell, affecting the mineral rights associated with the Land, or other parties currently in possession, of the mineral rights on the Land, except the following: **(If none, please state "none")**
_____

13.  Other than the Affiant, there are no other parties currently in possession of the Land, including but not limited to, any possessory interest associated with the harvesting of any oil, gas, geothermal materials or other minerals, except the following: **(If none, please state "none")**
_____

14.  Affiant has not executed and will not execute any documents or instruments related to the title to, or interest in, the Land prior to the recordation of the documents in this transaction.

15.  By signing below, Affiant agrees to cooperate with TITLE and, upon request from TITLE, to promptly provide and/or execute, any corrective or curative information or documentation requested.

This is a sworn affidavit and is made for the purpose of inducing TITLE to provide certain insurance coverage to a purchaser and/or lender, and the representations contained herein are material to such insurance coverage.  The undersigned hereby indemnifies and holds Stewart Title Guaranty Company and its policy issuing agent identified above harmless from any loss or damage, liability, costs, expenses and attorneys' fees which it may sustain under its policies of title insurance or commitments to the extent any representation contained herein is incorrect. The undersigned understands that TITLE may decide not to provide the requested title insurance despite the information and affirmations contained herein.

**PLEASE READ, COMPLETE AND RESPOND TO ALL STATEMENTS CONTAINED IN THIS OWNER'S AFFIDAVIT AND INDEMNITY BEFORE SIGNING IN THE PRESENCE OF A NOTARY PUBLIC. THE NOTARY PUBLIC WILL EXECUTE THE ACKNOWLEDGMENT ON THE FOLLOWING PAGE. HOWEVER, IF YOU DO NOT UNDERSTAND OR HAVE ANY QUESTIONS ABOUT THIS AFFIDAVIT, YOU SHOULD SEEK THE ASSISTANCE OF YOUR INDEPENDENT FINANCIAL AND/OR LEGAL ADVISOR BEFORE SIGNING.**

_____
Donn Schoenmann

_____
E. Lynn Schoenmann

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached and not the truthfulness, accuracy, or validity of that document. |
|---|

State of California          )
                            ) ss.
County of _____ )

Subscribed and sworn to (or affirmed) before me on this _____ day of _____, 20_____, by _____, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
Notary Signature

Order No.: 2367760
Owners Affidavit and Indemnity CA

Case 22-50028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 85 of 118

Page 3 of 3
5/9/2021

EXHIBIT 2  PAGE 79

**STEWART INFORMATION SERVICES CORPORATION**
**GRAMM-LEACH BLILEY PRIVACY NOTICE**

This Stewart Information Services Corporation Privacy Notice ("Notice") explains how we and our affiliates and majority-owned subsidiary companies (collectively, "Stewart," "our," or "we") collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of your information. Pursuant to Title V of the Gramm-Leach Bliley Act ("GLBA") and other Federal and state laws and regulations applicable to financial institutions, consumers have the right to limit some, but not all sharing of their personal information. Please read this Notice carefully to understand how Stewart uses your personal information.

The types of personal information Stewart collects, and shares depends on the product or service you have requested.

**Stewart may collect the following categories of personal and financial information from you throughout your transaction:**

1. Identifiers: Real name, alias, online IP address if accessing company websites, email address, account name, unique online identifier, or other similar identifiers.

2. Demographic Information: Marital status, gender, date of birth.

3. Personal Information and Personal Financial Information: Full name, signature, social security number, address, driver's license number, passport number, telephone number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, credit reports, or any other information necessary to complete the transaction.

**Stewart may collect personal information about you from:**

1. Publicly available information from government records.
2. Information we receive directly from you or your agent(s), such as your lender or real estate broker.
3. Information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

**Stewart may use your personal information for the following purposes:**

1. To provide products and services to you in connection with a transaction.
2. To improve our products and services.
3. To communicate with you about our affiliates', and others' products and services, jointly or independently.

**Stewart may use or disclose the personal information we collect for one or more of the following purposes:**

- To fulfill or meet the reason for which the information is provided.
- To provide, support, personalize, and develop our website, products, and services.
- To create, maintain, customize, and secure your account with Stewart.
- To process your requests, purchases, transactions, and payments and prevent transactional fraud.
- To prevent and/or process claims.
- To assist third party vendors/service providers who complete transactions or perform services on Stewart's behalf pursuant to valid service provider agreements.
- As necessary or appropriate to protect the rights, property or safety of Stewart, our customers, or others.
- To provide you with support and to respond to your inquiries, including to investigate and address your concerns and monitor and improve our responses.
- To help maintain the safety, security, and integrity of our website, products and services, databases and other technology-based assets, and business.
- To respond to law enforcement or regulator requests as required by applicable law, court order, or governmental regulations.
- Auditing for compliance with federal and state laws, rules, and regulations.
- Performing services including maintaining or servicing accounts, providing customer service, processing, or fulfilling orders and transactions, verifying customer information, processing payments.
- To evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all our assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal information held by us is among the assets transferred.

Stewart will not collect additional categories of personal information or use the personal information we collected for materially different, unrelated, or incompatible purposes without providing you notice.

**Disclosure of Personal Information to Affiliated Companies and Nonaffiliated Third Parties**

Stewart does not sell your personal information to nonaffiliated third parties. Stewart may share your information with those you have designated as your agent throughout the course of your transaction (for example, your realtor, broker, or a lender). Stewart may disclose your personal information to non-affiliated third-party service providers and vendors to render services to complete your transaction.

We share your personal information with the following categories of third parties:

- Non-affiliated service providers and vendors we contract with to render specific services (For example, search companies, mobile notaries, and companies providing credit/debit card processing, billing, shipping, repair, customer service, auditing, marketing, etc.)
- To enable Stewart to prevent criminal activity, fraud, material misrepresentation, or nondisclosure.
- Stewart's affiliated and subsidiary companies.
- Parties involved in litigation and attorneys, as required by law.
- Financial rating organizations, rating bureaus and trade associations, taxing authorities, if required in the transaction.
- Federal and State Regulators, law enforcement and other government entities to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order.

The law does not require your prior authorization or consent and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or browsing information with non-affiliated third parties, except as required or permitted by law.

**Right to Limit Use of Your Personal Information**

You have the right to opt-out of sharing of your personal information among our affiliates to directly market to you. To opt-out of sharing your information with affiliates for direct marketing, you may send an "opt out" request to OptOut@stewart.com, or contact us through other available methods provided under "Contact Information" in this Notice. We do not share your Personal Information with nonaffiliates for their use to directly market to you without your consent.

**How Stewart Protects Your Personal Information**

Stewart maintains physical, technical, and administrative safeguards and policies to protect your personal information.

**Contact Information**

If you have specific questions or comments about this Notice, the ways in which Stewart collects and uses your information described herein, or your choices and rights regarding such use, please do not hesitate to contact us at:

**Phone:**          Toll Free at 1-866-571-9270
**Email:**          Privacyrequest@stewart.com

**Postal Address:**  Stewart Information Services Corporation
                     Attn: Mary Thomas, Chief Compliance and Regulatory Officer
                     1360 Post Oak Blvd., Ste. 100, MC #14-1
                     Houston, TX 77056

# STEWART INFORMATION SERVICES CORPORATION
## PRIVACY NOTICE FOR CALIFORNIA RESIDENTS

Stewart Information Services Corporation and its affiliates and majority-owned subsidiary companies (collectively, "Stewart," "our," or "we") respect and are committed to protecting your privacy.  Pursuant to the California Consumer Privacy Act of 2018 ("CCPA") and the California Privacy Rights Act of 2020 ("CPRA"), we are providing this **Privacy Notice ("**CCPA Notice").  This CCPA Notice explains how we collect, use, and disclose personal information, when and to whom we disclose such information, and the rights you, as a California resident have regarding your Personal Information.  This CCPA Notice supplements the information contained in Stewart's existing privacy notice and applies solely to all visitors, users, consumers, and others who reside in the State of California or are considered California Residents as defined in the CCPA ("consumers" or "you").  All terms defined in the CCPA & CPRA have the same meaning when used in this Notice.

<u>**Personal and Sensitive Personal Information Stewart Collects**</u>

Stewart has collected the following categories of personal and sensitive personal information from consumers within the last twelve (12) months:

**A. Identifiers.** A real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, Social Security number, driver's license number, passport number, or other similar identifiers.

**B. Personal information categories listed in the California Customer Records statute (Cal. Civ. Code § 1798.80(e)).**  A name, signature, Social Security number, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information.

**C. Protected classification characteristics under California or federal law.**  Age, race, color, ancestry, national origin, citizenship, marital status, sex (including gender, gender identity, gender expression), veteran or military status.

**D. Commercial information.**  Records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies.

**E. Internet or other similar network activity.** Browsing history, search history, information on a consumer's interaction with a website, application, or advertisement.

**F. Geolocation data**

Stewart obtains the categories of personal and sensitive information listed above from the following categories of sources:

- Directly and indirectly from customers, their designees, or their agents (For example, realtors, lenders, attorneys, brokers, etc.)
- Directly and indirectly from activity on Stewart's website or other applications.
- From third parties that interact with Stewart in connection with the services we provide.

<u>**Use of Personal and Sensitive Personal Information**</u>

Stewart may use or disclose the personal or sensitive information we collect for one or more of the following purposes:

a. To fulfill or meet the reason for which the information is provided.
b. To provide, support, personalize, and develop our website, products, and services.
c. To create, maintain, customize, and secure your account with Stewart.
d. To process your requests, purchases, transactions, and payments and prevent transactional fraud.
e. To prevent and/or process claims.
f. To assist third party vendors/service providers who complete transactions or perform services on Stewart's behalf pursuant to valid service provider agreements.
g. As necessary or appropriate to protect the rights, property or safety of Stewart, our customers, or others.
h. To provide you with support and to respond to your inquiries, including to investigate and address your concerns and monitor and improve our responses.
i. To personalize your website experience and to deliver content and product and service offerings relevant to your interests, including targeted offers and ads through our website, third-party sites, and via email or text message (with your consent, where required by law).
j. To help maintain the safety, security, and integrity of our website, products and services, databases and other technology-based assets, and business.
k. To respond to law enforcement or regulator requests as required by applicable law, court order, or governmental regulations.
l. Auditing for compliance with federal and state laws, rules, and regulations.
m. Performing services including maintaining or servicing accounts, providing customer service, processing, or fulfilling orders and transactions, verifying customer information, processing payments, providing advertising or marketing services or other similar services.
n. To evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all our assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal information held by us is among the assets transferred.

Case: 22-30028    Doc# 606    Filed: 11/07/24    Entered: 11/07/24 13:12:47    Page 88 of
118
EXHIBIT 2  PAGE 82

Stewart will not collect additional categories of personal or sensitive information or use the personal or sensitive information we collected for materially different, unrelated, or incompatible purposes without providing you notice.

**Disclosure of Personal Information to Affiliated Companies and Nonaffiliated Third Parties**

Stewart does not sell your personal information to nonaffiliated third parties. Stewart may share your information with those you have designated as your agent throughout the course of your transaction (for example, a realtor, broker, or a lender).

We share your personal information with the following categories of third parties:

a. Service providers and vendors we contract with to render specific services (For example, search companies, mobile notaries, and companies providing credit/debit card processing, billing, shipping, repair, customer service, auditing, marketing, etc.)
b. Affiliated Companies.
c. Parties involved in litigation and attorneys, as required by law.
d. Financial rating organizations, rating bureaus and trade associations.
e. Federal and State Regulators, law enforcement and other government entities

In the preceding twelve (12) months, Stewart has disclosed the following categories of personal information:

Category A: Identifiers
Category B: California Customer Records personal information categories
Category C: Protected classification characteristics under California or federal law
Category D: Commercial Information
Category E: Internet or other similar network activity
Category F: Non-public education information

**A. Your Consumer Rights and Choices Under CCPA and CPRA**

The CCPA and CPRA provide consumers (California residents as defined in the CCPA) with specific rights regarding their personal information. This section describes your rights and explains how to exercise those rights.

**i. Access to Specific Information and Data Portability Rights**

You have the right to request that Stewart disclose certain information to you about our collection and use of your personal information over the past 12 months. Once we receive and confirm your verifiable consumer request, Stewart will disclose to you:

• The categories of personal information Stewart collected about you.
• The categories of sources for the personal information Stewart collected about you.
• Stewart's business or commercial purpose for collecting that personal information.
• The categories of third parties with whom Stewart shares that personal information.
• The specific pieces of personal information Stewart collected about you (also called a data portability request).
• If Stewart disclosed your personal data for a business purpose, a listing identifying the personal information categories that each category of recipient obtained.

**ii. Deletion Request Rights**

You have the right to request that Stewart delete any personal information we collected from you and retained, subject to certain exceptions. Once we receive and confirm your verifiable consumer request, Stewart will delete (and direct our service providers to delete) your personal information from our records, unless an exception applies.

Stewart may deny your deletion request if retaining the information is necessary for us or our service providers to:

1. Complete the transaction for which we collected the personal information, provide a good or service that you requested, take actions reasonably anticipated within the context of our ongoing business relationship with you, or otherwise perform our contract with you.

2. Detect security incidents, protect against malicious, deceptive, fraudulent, or illegal activity, or prosecute those responsible for such activities.

3. Debug products to identify and repair errors that impair existing intended functionality.

4. Exercise free speech, ensure the right of another consumer to exercise their free speech rights, or exercise another right provided for by law.

5. Comply with the California Electronic Communications Privacy Act (Cal. Penal Code § 1546 *seq.*).

6. Engage in public or peer-reviewed scientific, historical, or statistical research in the public interest that adheres to all other applicable ethics and privacy laws, when the information's deletion may likely render impossible or seriously impair the research's achievement, if you previously provided informed consent.

7. Enable solely internal uses that are reasonably aligned with consumer expectations based on your relationship with us.

8. Comply with a legal obligation.

9. Make other internal and lawful uses of that information that are compatible with the context in which you provided it.

**iii. Opt-Out of Information Sharing and Selling**

Stewart does not share or sell information to third parties, as the terms are defined under the CCPA and CPRA. Stewart only shares your personal information as commercially necessary and in accordance with this CCPA Notice.

**iv. Correction of Inaccurate Information**

You have the right to request that Stewart correct any inaccurate information maintained about.

### v. Limit the Use of Sensitive Personal Information

You have the right to limit how your sensitive personal information, as defined in the CCPA and CPRA is disclosed or shared with third parties.

### Exercising Your Rights Under CCPA and CPRA

If you have questions or comments about this notice, the ways in which Stewart collects and uses your information described herein, your choices and rights regarding such use, or wish to exercise your rights under California law, please submit a verifiable consumer request to us by the available means provided below:

1. Emailing us at **OptOut@stewart.com**; or

2. Visiting **https://www.stewart.com/en/quick-links/ccpa-request.html**

Only you, or someone legally authorized to act on your behalf, may make a verifiable consumer request related to your personal information. You may also make a verifiable consumer request on behalf of your minor child, if applicable.

To designate an authorized agent, please contact Stewart through one of the methods mentioned above.

You may only make a verifiable consumer request for access or data portability twice within a 12-month period. The verifiable consumer request must:

- Provide sufficient information that allows us to reasonably verify you are the person about whom we collected personal information or an authorized representative.

- Describe your request with sufficient detail that allows us to properly understand, evaluate, and respond to it.

Stewart cannot respond to your request or provide you with personal information if we cannot verify your identity or authority to make the request and confirm the personal information relates to you.

Making a verifiable consumer request does not require you to create an account with Stewart.

### Response Timing and Format

We endeavor to respond to a verifiable consumer request within forty-five (45) days of its receipt. If we require more time (up to an additional 45 days), we will inform you of the reason and extension period in writing.

A written response will be delivered by mail or electronically, at your option.

Any disclosures we provide will only cover the 12-month period preceding the verifiable consumer request's receipt. The response we provide will also explain the reasons we cannot comply with a request, if applicable.

Stewart does not charge a fee to process or respond to your verifiable consumer request unless it is excessive, repetitive, or manifestly unfounded. If we determine that the request warrants a fee, we will tell you why we made that decision and provide you with a cost estimate before completing your request.

### Non-Discrimination

Stewart will not discriminate against you for exercising any of your CCPA rights. Unless permitted by the CCPA, we will not:

- Deny you goods or services.
- Charge you a different prices or rates for goods or services, including through granting discounts or other benefits, or imposing penalties.
- Provide you a different level or quality of goods or services.
- Suggest that you may receive a different price or rate for goods or services or a different level or quality of goods or services.

### Record Retention

Your personal information will not be kept for longer than is necessary for the business purpose for which it is collected and processed. We will retain your personal information and records based on established record retention policies pursuant to California law and in compliance with all federal and state retention obligations. Additionally, we will retain your personal information to comply with applicable laws, regulations, and legal processes (such as responding to subpoenas or court orders), and to respond to legal claims, resolve disputes, and comply with legal or regulatory recordkeeping requirements.

### Changes to This CCPA Notice

Stewart reserves the right to amend this CCPA Notice at our discretion and at any time. When we make changes to this CCPA Notice, we will post the updated Notice on Stewart's website and update the Notice's effective date.

### Link to Privacy Notice

**https://www.stewart.com/en/privacy.html**

### Contact Information

Stewart Information Services Corporation
Attn: Mary Thomas, Chief Compliance and Regulatory Officer
1360 Post Oak Blvd., Ste. 100, MC #14-1
Houston, TX 77056



Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2000. All rights reserved.

NOV. 0 4 2004

THIS MAP WAS PREPARED FOR ASSESSMENT PURPOSES ONLY. NO LIABILITY IS ASSUMED FOR THE ACCURACY OF THE DATA SHOWN. ASSESSOR'S PARCEL MAY NOT COMPLY WITH LOCAL LOT-SPLIT OR BUILDING SITE ORDINANCES.

ASSESSOR'S MAP BK.563 PG.07
RIVERSIDE COUNTY, CALIF.

POR.W1/2.SEC.7.T.5S.R.3E.

T.C.A. 7122

25-21, 23-28-2
563-07

POR 22

GREEN OAKS DRIVE

ROCKDALE DRIVE

FERNLEAF DRIVE

DRIVE

73
02
05
75
72
71
74
09
06

MB 54/86-88 Tract 2790

DEC. 1969

1" = 100'

EXHIBIT 2  PAGE 85

# Exhibit 3

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

**RECORDING REQUESTED BY**
Alicia M. Gámez, Esq.
220 Montgomery Street, Suite 1200
San Francisco, CA 94104

**AND WHEN RECORDED MAIL TO**
Alicia M. Gámez, Esq.
220 Montgomery Street, Suite 1200
San Francisco, CA 94104

APN: 563-073-005-5

Property Address:
25380 Green Oaks Court, Idyllwild, CA

# 2019-0034798

01/31/2019 10:23 AM Fee: $ 101.00
Page 1 of 5
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder



| AG | | | | | R | A | Exam: | 1628 | |
|---|---|---|---|---|---|---|---|---|---|
| Page | DA | PCOR | Misc | Long | RFD | 1st Pg | Adtl Pg | Cert | CC |
| 5 | | | | | | | | | |
| SIZE | NCOR | SMF | NCHG | T: | | $75 | | | |

$102.50

# NOTICE OF PENDENCY OF ACTION
## (LIS PENDENS)

EXHIBIT 3  PAGE 86

1 | ALICIA M. GÁMEZ (State Bar No. 244948)
Law Office of Alicia M. Gámez
2 | 220 Montgomery Street, Suite 1200
San Francisco, California 94104
3 | Telephone: 415.341.8143
Email: alicia@gamezlaw.com

4 | Attorney for
5 |     Executor Stuart Gordon Schoenmann

6

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **COUNTY OF MARIN**

10

11 | IN THE                   Case No. PR1801087

12 |    ESTATE OF

13 |    DONN R. SCHOENMANN     **NOTICE OF PENDENCY OF ACTION (LIS PENDENS)**

14

15

16

17

18 | [Names of the parties to the proceeding:
19 | **Plaintiffs / Petitioners:**
Celeste Lytle,
20 | Colette Sims,
21 | Beth Schoenmann,
Stuart Gordon Schoenmann, and
22 | Stuart Gordon Schoenmann, Executor of the Estate of Donn R. Schoenmann
23 | **Defendants / Respondents:**
E. Lynn Schoenmann
24 | 920 Powell Street, LLC]

25

26

27

28

Case: 22-30028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 13:12:47   Page 94 of 118
EXHIBIT 3  PAGE 87

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

1    NOTICE IS HEREBY GIVEN that the above-entitled action concerning and affecting

2   real property as described herein was commenced on January 11, 2019 by the Plaintiffs /

3   Petitioners **Celeste Lytle, Colette Sims, Beth Schoenmann, Stuart Gordon Schoenmann,**

4   and **Stuart Gordon Schoenmann as Executor of the Estate of Donn R. Schoenmann,**

5   against the Defendants / Respondents, **E. Lynn Schoenmann** and **920 Powell Street, LLC,**

6   and is now pending in Department J of this Court, located at 3501 Civic Center Drive, San

7   Rafael, California, 94913.

8    The action affects title to or right to possess the real property located in the

9   unincorporated area of the County of Riverside, State of California, commonly known as

10   25380 Green Oaks Court, Idyllwild, CA, and described as follows:

11   Lot 21 of Tract No. 2790, as shown by map on file in Book 54, Pages 86 through
12   88 of Maps, Riverside County Records, together with that portion of Lot 22 of
     Tract No. 2790, as shown by Map on file in Book 54, Pages 86 through 88 of
13   Maps, Riverside County Records, lying South of the following described line:

14   Commencing at the Northeast corner of said Lot 22; Thence S.00°21'08"W.,
15   89.45 feet, along the East line of said Lot 22, to the Point Of Beginning of said
     line to be described; Thence S.86°48'46"W., 147.01 feet, to the mid-point of the
16   Westerly line of said Lot 22 and the Termination of Said Line to be Described.

17   Said mid-point of Lot 22 being equal distance from the Northwest corner and
     from the Southwest corner of Lot 22, as measured along the Westerly property
18   line of said Lot. Said description is pursuant to Lot Line Adjustment No. 4544
     approved by Riverside County Planning Department January 16, 2003
19

20   [Commonly known as: 25380 Green Oaks Court, Idyllwild, CA 92549]
     [APN:  563-073-005-5]
21

22    The property is designated as Assessor's Parcel No. 563-073-005-5 in the

23   Riverside County Assessor's office.

24    The parties to said action are set forth below the title to the action.

25

26   Dated: January __16__, 2019

27                                    *[signature]*
                                      Alicia M. Gamez, Attorney for
                                      Executor Stuart Gordon Schoenmann
28

                                      2                        Case No: PR1801087
                          **NOTICE OF PENDENCY OF ACTION (LIS PENDENS)**

EXHIBIT 3  PAGE 88

# PROOF OF SERVICE

*In the Estate of Donn R. Schoenmann*, Marin County Superior Court Case No. **PR1801087**

1. I am over the age of 18 and not a party to this cause. I am a resident of or employed in the county where the mailing occurred.

2. My business address is:
   Law Office of Alicia M. Gámez
   220 Montgomery Street, Suite 1200
   San Francisco, CA 94104

3. I served the following documents on each person named below by E-Mail (Courtesy Copy, where email address indicated) and U.S. Mail, certified, return-receipt (where indicated) or U.S. Mail (where indicated) enclosing a copy in an envelope addressed and shown below AND deposited the sealed envelope with the United States Post Office on the date and at the place shown in item 4, with the postage fully prepaid;

   • NOTICE OF PENDENCY OF ACTION (LIS PENDENS)

4. The date mailed: 1/ _16_ /2019.  Place mailed: SAN FRANCISCO, CALIFORNIA.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at SAN FRANCISCO, CALIFORNIA.

Date: 1/ _16_ /2019          Signature: _____
                                    Alicia M. Gámez

3

Case No:  PR1801087

**NOTICE OF PENDENCY OF ACTION (LIS PENDENS)**

EXHIBIT 3  PAGE 89

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

**SERVICE LIST**

| | |
|---|---|
| *By U.S. MAIL*<br>Celeste Lytle, Colette Sims, and Beth Schoenmann, Beneficiaries<br>*via*<br>Frank Busch<br>WVBR LLP<br>100 Pine St., Suite 725<br>San Francisco, CA 94111<br>(These parties have requested that they are not contacted directly) | *By U.S. MAIL*<br>Jason Schoenmann and Anna Schoenmann, Beneficiaries<br>*Via*<br>Richard T. Franceschini<br>Guardian Ad Litem for Minor Children<br>Ragghiati Freitas LLP<br>1101 Fifth Avenue, Suite 100<br>San Rafael, CA  94901-3046<br>(These parties have requested that they are not contacted directly) |
| *By U.S. MAIL*<br>Stuart Gordon Schoenmann, Beneficiary<br>10157 Masters Drive NE<br>Albuquerque, NM 87111-5894 | *By U.S. MAIL*<br>James P. Lamping<br>Law Office of James P. Lamping<br>100 Pine Street, Suite 1250<br>San Francisco, CA 94111<br>Stuart Gordon Schoenmann, Beneficiary |
| *By U.S. MAIL, Certified, Return Receipt*<br><br>Eunice Lynn Schoenmann<br>39 Ethel Avenue<br>Mill Valley, CA, 94941 | *By U.S. MAIL, Certified, Return Receipt*<br>First Republic Bank<br>c/o Liza C Bunker, Esq.<br>Hanson Bridgett LLP<br>500 Capitol Mall, Suite 1500<br>Sacramento, CA 95814-4740<br>By Email To:<br>Mwalizadeh@hansonbridgett.com<br>LBunker@hansonbridgett.com |
| *By U.S. MAIL, Certified, Return Receipt*<br>Philip Goldstein (Agent for Service of Process)<br>920 POWELL STREET, LLC<br>414 Gough Street, Suite 2<br>San Francisco, CA 94102<br><br>920 POWELL STREET, LLC<br>294 29TH ST<br>SAN FRANCISCO, CA 94131-2407 | *By U.S. MAIL, Certified, Return Receipt*<br>920 Powell Street, LLC<br>Jeffrey H. Lowenthal<br>Thomas J. Lloyd<br>STEYER LOWENTHAL<br>One California Street, Third Floor<br>San Francisco, California 94111 |
| *By U.S. MAIL*<br>State of California Franchise Tax Board<br>PO BOX 2952 MS A454<br>Sacramento, CA 95812-2952 | *By U.S. MAIL*<br>Alicia M. Gamez<br>220 Montgomery Street, Suite 1200<br>San Francisco, CA 94104<br>[Attorney for Executor Stuart Gordon Schoenmann] |

4

Case No: PR1801087

**NOTICE OF PENDENCY OF ACTION (LIS PENDENS)**

EXHIBIT 3  PAGE 90

# Exhibit 4

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

**RECORDING REQUESTED BY**
Alicia M. Gámez, Esq.
220 Montgomery Street, Suite 1200
San Francisco, CA 94104

**AND WHEN RECORDED MAIL TO**
Alicia M. Gámez, Esq.
220 Montgomery Street, Suite 1200
San Francisco, CA 94104

APN: 563-073-005-5

Property Address:
25380 Green Oaks Court, Idyllwild, CA

## 2019-0034798

01/31/2019 10:23 AM Fee: $ 101.00
Page 1 of 5
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

| | | | | **R** | **A** | Exam: 1628 | | | |
|---|---|---|---|---|---|---|---|---|---|
| AG | | | | | | | | | |
| Page | DA | PCOR | Misc | Long | RFD | 1st Pg | Adtl Pg | Cert | CC |
| 5 | | | | | | ✓ | | | |
| SIZE | NCOR | SMF | NCHG | T: | | 75 | | | |

$102.50

## NOTICE OF PENDENCY OF ACTION
## (LIS PENDENS)

1 ALICIA M. GÁMEZ (State Bar No. 244948)
Law Office of Alicia M. Gámez
2 220 Montgomery Street, Suite 1200
San Francisco, California 94104
3 Telephone: 415.341.8343
Email: alicia@gamezlaw.com

4 Attorney for
Executor Stuart Gordon Schoenmann
5

6

7

8 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 **COUNTY OF MARIN**

10

11 IN THE | Case No. PR1801087

12 ESTATE OF

13 DONN R. SCHOENMANN | **NOTICE OF PENDENCY OF ACTION (LIS PENDENS)**

14

15

16

17

18 [Names of the parties to the proceeding:
19 **Plaintiffs / Petitioners:**
Celeste Lytle,
20 Colette Sims,
21 Beth Schoenmann,
Stuart Gordon Schoenmann, and
22 Stuart Gordon Schoenmann, Executor of the Estate of Donn R. Schoenmann
23 **Defendants / Respondents:**
E. Lynn Schoenmann
24 920 Powell Street, LLC]

25

26

27

28

1       Case No: PR1801087

NOTICE OF PENDENCY OF ACTION (LIS PENDENS)

EXHIBIT 4  PAGE 92

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

1       NOTICE IS HEREBY GIVEN that the above-entitled action concerning and affecting

2   real property as described herein was commenced on January 11, 2019 by the Plaintiffs /

3   Petitioners, **Celeste Lytle, Colette Sims, Beth Schoenmann, Stuart Gordon Schoenmann,**

4   and **Stuart Gordon Schoenmann as Executor of the Estate of Donn R. Schoenmann,**

5   against the Defendants / Respondents, **E. Lynn Schoenmann** and **920 Powell Street, LLC,**

6   and is now pending in Department J of this Court, located at 3501 Civic Center Drive, San

7   Rafael, California, 94913.

8       The action affects title to or right to possess the real property located in the

9   unincorporated area of the County of Riverside, State of California, commonly known as

10  25380 Green Oaks Court, Idyllwild, CA, and described as follows:

11      Lot 21 of Tract No. 2790, as shown by map on file in Book 54, Pages 86 through

12      88 of Maps, Riverside County Records, together with that portion of Lot 22 of
        Tract No. 2790, as shown by Map on file in Book 54, Pages 86 through 88 of

13      Maps, Riverside County Records, lying South of the following described line:

14      Commencing at the Northeast corner of said Lot 22; Thence S.00°21'08"W.,

15      89.45 feet, along the East line of said Lot 22, to the Point Of Beginning of said
        line to be described; Thence S.86°48'46"W., 147.01 feet, to the mid-point of the

16      Westerly line of said Lot 22 and the Termination of Said Line to be Described.

17      Said mid-point of Lot 22 being equal distance from the Northwest corner and
        from the Southwest corner of Lot 22, as measured along the Westerly property

18      line of said Lot. Said description is pursuant to Lot Line Adjustment No. 4544
        approved by Riverside County Planning Department January 16, 2003

19

20      [Commonly known as: 25380 Green Oaks Court, Idyllwild, CA 92549]
        [APN: 563-073-005-5]

21

22      The property is designated as Assessor's Parcel No. 563-073-005-5 in the

23  Riverside County Assessor's office.

24      The parties to said action are set forth below the title to the action.

25

26  Dated: January _16_, 2019

27                Alicia M. Gamez, Attorney for
                  Executor Stuart Gordon Schoenmann

28

2

Case No: PR1801087

**NOTICE OF PENDENCY OF ACTION (LIS PENDENS)**

EXHIBIT 4  PAGE 93

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

**PROOF OF SERVICE**

*In the Estate of Donn R. Schoenmann*, Marin County Superior Court Case No. **PR1801087**

1. I am over the age of 18 and not a party to this cause. I am a resident of or employed in the county where the mailing occurred.

2. My business address is:     Law Office of Alicia M. Gámez
220 Montgomery Street, Suite 1200
San Francisco, CA 94104

3. I served the following documents on each person named below by E-Mail (Courtesy Copy, where email address indicated) and U.S. Mail, certified, return-receipt (where indicated) or U.S. Mail (where indicated) enclosing a copy in an envelope addressed and shown below AND deposited the sealed envelope with the United States Post Office on the date and at the place shown in item 4, with the postage fully prepaid;

- NOTICE OF PENDENCY OF ACTION (LIS PENDENS)

4. The date mailed: 1/ *16* /2019.  Place mailed: SAN FRANCISCO, CALIFORNIA.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at SAN FRANCISCO, CALIFORNIA.

Date: 1/ *16* /2019                    Signature: _____
Alicia M. Gámez

3                                   Case No: PR1801087
**NOTICE OF PENDENCY OF ACTION (LIS PENDENS)**

EXHIBIT 4  PAGE 94

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

**SERVICE LIST**

| | |
|---|---|
| *By U.S. MAIL*<br>Celeste Lytle, Colette Sims, and Beth Schoenmann, Beneficiaries<br>*via*<br>Frank Busch<br>WVBR LLP<br>100 Pine St., Suite 725<br>San Francisco, CA 94111<br>(These parties have requested that they are not contacted directly) | *By U.S. MAIL*<br>Jason Schoenmann and Anna Schoenmann, Beneficiaries<br>*Via*<br>Richard T. Franceschini<br>Guardian Ad Litem for Minor Children<br>Ragghiati Freitas LLP<br>1101 Fifth Avenue, Suite 100<br>San Rafael, CA  94901-3046<br>(These parties have requested that they are not contacted directly) |
| *By U.S. MAIL*<br>Stuart Gordon Schoenmann, Beneficiary<br>10157 Masters Drive NE<br>Albuquerque, NM 87111-5894 | *By U.S. MAIL*<br>James P. Lamping<br>Law Office of James P. Lamping<br>100 Pine Street, Suite 1250<br>San Francisco, CA 94111<br>Stuart Gordon Schoenmann, Beneficiary |
| *By U.S. MAIL, Certified, Return Receipt*<br><br>Eunice Lynn Schoenmann<br>39 Ethel Avenue<br>Mill Valley, CA, 94941 | *By U.S. MAIL, Certified, Return Receipt*<br>First Republic Bank<br>c/o Liza C Bunker, Esq.<br>Hanson Bridgett LLP<br>500 Capitol Mall, Suite 1500<br>Sacramento, CA 95814-4740<br>By Email To:<br>Mwalizadeh@hansonbridgett.com<br>LBunker@hansonbridgett.com |
| *By U.S. MAIL, Certified, Return Receipt*<br>Philip Goldstein (Agent for Service of Process)<br>920 POWELL STREET, LLC<br>414 Gough Street, Suite 2<br>San Francisco, CA 94102<br><br>920 POWELL STREET, LLC<br>294 29TH ST<br>SAN FRANCISCO, CA 94131-2407 | *By U.S. MAIL, Certified, Return Receipt*<br>920 Powell Street, LLC<br>Jeffrey H. Lowenthal<br>Thomas J. Lloyd<br>STEYER LOWENTHAL<br>One California Street, Third Floor<br>San Francisco, California 94111 |
| *By U.S. MAIL*<br>State of California Franchise Tax Board<br>PO BOX 2952 MS A454<br>Sacramento, CA 95812-2952 | *By U.S. MAIL*<br>Alicia M. Gamez<br>220 Montgomery Street, Suite 1200<br>San Francisco, CA 94104<br>[Attorney for Executor Stuart Gordon Schoenmann] |

4

Case No: PR1801087

**NOTICE OF PENDENCY OF ACTION (LIS PENDENS)**

EXHIBIT 4  PAGE 95

# Exhibit 5

Thomas H. Casey – Bar No. 138264
LAW OFFICE OF THOMAS H. CASEY, INC.
A PROFESSIONAL CORPORATION
26400 La Alameda, Suite 210
Mission Viejo, CA 92691
Telephone:    (949) 766-8787
Facsimile:    (949) 766-9896
Email:        TomCasey@tomcaseylaw.com

Attorneys for Jason M. Rund
Chapter 7 Bankruptcy Trustee

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| In re | ) Case No. 22-30028-DM |
|  | ) |
| E. LYNN SCHOENMANN, | ) Chapter 7 |
|  | ) |
| Debtor. | ) **STIPULATION BETWEEN THE** |
|  | ) **CHAPTER 7 TRUSTEE AND STUART** |
|  | ) **SCHOENMANN AS EXECUTOR OF THE** |
|  | ) **PROBATE ESTATE OF DONN R.** |
|  | ) **SCHOENMANN REGARDING THE** |
|  | ) **TRUSTEE'S SALE OF THE REAL** |
|  | ) **PROPERTY LOCATED AT 25380 GREEN** |
|  | ) **OAKS COURT AND ADJOINING LOT** |
|  | ) **20, IDYLLWILD, CALIFORNIA** |
|  | ) **PURSUANT TO SECTION 363(h)** |
|  | ) |
|  | ) Hearing Date |
|  | ) Date:   November __, 2024 |
|  | ) Time:   10:00 a.m. |
|  | ) Judge:  Honorable Dennis Montali |
|  | ) By:     Video/Teleconference |
|  | ) |
|  | ) |

This stipulation ("Stipulation") is entered into by and between Jason M. Rund in his capacity as Chapter 7 Trustee ("Trustee") of the bankruptcy estate of E. Lynn Schoenmann and Stuart Schoenmann in his capacity as Executor of the probate estate of Donn R. Schoenmann (collectively the "Parties") regarding the Trustee's sale of the real property located at 25380

1

Green Oaks Court and adjoining Lot 20, Idyllwild, California, ("Idyllwild Real Property") to the proposed buyer subject to overbid as follows:

## BACKGROUND FACTS.

1. On January 31, 2019, Executor Stuart Gorden Schoenmann, beneficiaries Stuart Schoenmann, Celeste Lytle, Beth Schoenmann, and Collete Sims ("Petitioners") per Order of the Marin County Probate Court amended their petitions to one petition and filed their First Amended Verified Petition For Order To Establish Estate's Claim Of Ownership To Property; Directing Its Transfer To Estate; Enforcing Agreement; For Damages;  For Attorney's Fees; For Financial Elder Abuse; For Breach Of Fiduciary Duty; For Fraud; For Allocation; Voidable Transfer; And Recover Of Estate Assets; Probate Code §§ 850, 859, 11444; Civil Code §§ 1575; 3294, 3345, 3439; Family Code §§ 1101, 1102; W&I Code §§ 15610.07, 15610.30, 15610.70, 15657.50 against E. Lynn Schoenmann in the Marin County Probate Court, Case No. PRO 1801087 ("First Amended Verified Petition").

2. On February 1, 2019 the Petitioners caused two lis pendens to be recorded against the Idyllwild Real Property in the Riverside County Recorder's Office, California.

3. On December 27, 2021 the Probate Court entered a twenty-six (26) page Tentative Decision and Proposed Statement of Decision On Petitioner's Motion To Invalidate The Post Marital Agreement Between Donn and Lynn Schoenmann in favor of the Petitioners ("Tentative Decision").

4. On January 14, 2022 the Debtor filed her Chapter 11 petition in this Bankruptcy Court.

5. On January 25, 2022 the Debtor recorded her Affidavit – Death of Spouse in the County of Riverside, Instrument No. 2022 – 0040809.

6. In the Bankruptcy Court adversary proceeding Plaintiff Debtor E. Lynn Schoenmann v.  Stuart Gordon Schoenmann, Celeste Lytle, Beth Schoenmann, and Collete Sims, Adv. Pro. No. 22-3024, and by Judgment entered December 5, 2022, the Bankruptcy Court ordered in pertinent part: "…the so called March Deeds...are validated and upheld in this

2

EXHIBIT 5    PAGE 976

adversary proceeding, with no right of survivorship in favor of Plaintiff, but subject to administration in this bankruptcy estate via Plaintiff's undisputed one-half interest as jointly owned property." (Doc. 22).

7. By Order Approving And Authorizing Sale of Real Property (39 Ethel, Mill Valley, CA) ("Mill Valley Property") entered July 17, 2023 (Doc. 340) and Order In Aid Of Order Approving And Authorizing Sale of Real Property entered August 2, 2023 (Doc. 353), the Bankruptcy Court approved the Debtor's sale of the Mill Valley Property and ordered the disbursement of half of the net sale proceeds to be disbursed to counsel for Executor Stuart Schoenmann. By Motion in Adversary Proceeding No. 22-03024, Debtor moved to stay distribution of these sale proceeds to Defendant the Probate Estate pending appeal of the bankruptcy court's December 5, 2022 judgment. The Court denied this motion and by Order dated August 22, 2023 in Adversary Proceeding 22-03017, the Court ordered disbursement of the Probate Estate's net sale proceeds to it.

8. Upon the filing of the Debtor's Notice of Conversion in the Bankruptcy Court on September 7, 2023, the Debtor's Chapter 11 case was converted to one under Chapter 7.

9. On September 7, 2023, and on behalf of Chapter 7 Trustee Jason M. Rund, the Office of the United States Trustee filed the Notice of Appointment of Trustee.

10. On October 4, 2023, the Debtor filed her Amended Schedule A/B listing the bankruptcy estate's interest in the Idyllwild Real Property.

11. Executor Stuart Schoenmann asserts a Fifty Percent (50%) interest in the Idyllwild Real Property.

12. The Trustee's real estate agent has marketed the Idyllwild Real Property for sale and has accepted an offer subject to certain terms and conditions.

13. The Preliminary Title Report dated July 1, 2024 on the Idyllwild Property is attached hereto as **Exhibit "1"** and is incorporated herein by this reference.

14. The Parties have agreed to the Trustee's sale of the Idyllwild Real Property subject to the following terms and conditions and to address certain exceptions in the Preliminary Title Report to the satisfaction of the Trustee's title insurer as stated below.

3

## STIPULATION.

The Parties hereby stipulate as follows:

a.)     The legal description of the Idyllwild Real Property stated in the Preliminary Title Report attached hereto as **Exhibit "1"** is accurate;

b.)     The Donn R. Schoenmann and E. Lynn Schoenmann 2003 Family Trust, UDT dated March 13, 2003 was revoked on March 12, 2015 and is of no force and effect as to the Idyllwild Real Property;

c.)     Title to the Idyllwild Real Property is now vested in the Trustee and the Executor per their respective fifty percent (50%) interests as tenants in common;

d.)     Per the Bankruptcy Court Order entered December 5, 2022, the Idyllwild Real Property is subject to administration by the Trustee;

e.)     The Parties agree to the Trustee's sale of the Idyllwild Real Property per Section 363(h) to the proposed buyer;

f.)     The Parties agree the Trustee may sell their collective 100% title and equitable interests in the Idyllwild Real Property and:

       1.   Partition in kind of the Idyllwild Real Property among the estate and the Executor is impracticable;

       2.   Sale of the estate's undivided interest in the Idyllwild Real Property would realize significantly less for the estate than sale of the Idyllwild Real Property free of the interests of such co-owners;

       3.   The benefit to the estate of a sale of the Idyllwild Real Property free of the interest of the Executor as co-owner outweighs the detriment, if any, to the Executor; and

4

4.   The Idyllwild Real Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural of synthetic gas for heat, light, or power.

g.)   The Executor waives his rights to purchase the Idyllwild Real Property per Section 363(i) provided this Order is entered and becomes final, and the current sale is approved by this Court and closes;

h.)   The purchase price for the Idyllwild Real Property is $572,500 subject to overbid;

i.)   Total real estate commissions are six percent (6%) of the gross sales price;

j.)   Per Section 363(j), fifty Percent (50%) of the net sale proceeds shall be disbursed from escrow to Estate of Donn R. Schoenmann, Stuart Gordan Schoenmann Executor and Fifty Percent (50%) of the net sale proceeds shall be disbursed from escrow to Trustee Jason M. Rund.  Net sale proceeds are defined as the gross sales price after deducting real estate commissions, escrow fees, closing costs, homeowner associate fees and real property taxes;

k.)   The Trustee on the one hand, and Executor Stuart Schoenmann on the other hand, are responsible for the potential capital gains taxes, if any, from the sale of their respective interests in the Idyllwild Real Property;

l.)   Executor Stuart Gordon Schoenmann releases his lis pendens recorded on January 31, 2019, instrument number 2019-0034798, against the Idyllwild Real Property;

m.)   Executor Stuart Gordon Schoenmann releases his lis pendens recorded on January 31, 2019, instrument number 2019-0034799, against the Idyllwild Real Property;

n.)   Per Bankruptcy court Order entered December 5, 2022, that certain conveyance from Donn R. Schoenmann, as Trustee of the Donn R. Schoenmann and E. Lynn

Case: 22-30028   Doc# 606   Filed: 11/07/24   Entered: 11/07/24 16:57:57   Page 109 of 118

EXHIBIT 5 PAGE 100

Schoenmann 2003 Family Trust, UDT dated March 19, 2003 as grantor and Donn R. Schoenmann, as tenant in common, all of his one-half interest as grantee recorded April 21, 2016, instrument number 2016-0158107, is valid;

o.) Per Bankruptcy court Order entered December 5, 2022, that certain conveyance from Donn R. Schoenmann as Trustee of the Donn R. Schoenmann and E. Lynn Schoenmann 2003 Family Trust, UDT dated March 19, 2003 as grantor and Donn R. Schoenmann, as tenant in common, all of his one-half interest as grantee recorded April 21, 2016, instrument number 2016-0158108, is valid;

p.) The Trustee withdraws and releases the Affidavit-Death of Spouse (Community Property With Right of Survivorship) recorded January 25, 2022, instrument number 2022-0040809;

q.) The Parties will prepare and execute all documents necessary to close escrow.

r.) This Stipulation shall be included in the Trustee's motion to sell the Idyllwild Real Property; and,

s.) This Stipulation is subject to approval of the Bankruptcy Court. Absent an order of the Bankruptcy Court approving this Stipulation it is of no force and effect.

Respectfully submitted,

Law Offices of Thomas H. Casey, Inc.

DATED: November 4, 2024    By:    /s/Thomas H. Casey
                                    Thomas H. Casey
                                    Attorney for Jason M. Rund, Chapter 7 Trustee

Law Offices of Law Office of Wayne A. Silver

DATED: November 4, 2024    By:    _Wayne A. Silver_____
                                    Wayne A. Silver
                                    Attorney for Stuart Schoenmann, Executor of the

6

probate estate of Donn R. Schoenmann

Law Office of Alicia M. Gamez

DATED:  November 4, 2024

By: _____

Alicia M. Gamez
Attorney for Stuart Schoenmann, Executor of the
probate estate of Donn R. Schoenmann

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7

# Exhibit 6

1

2

3

4

5

6

Thomas H. Casey – Bar No. 138264
LAW OFFICE OF THOMAS H. CASEY, INC.
A PROFESSIONAL CORPORATION
26400 La Alameda, Suite 210
Mission Viejo, CA 92691
Telephone: (949) 766-8787
Facsimile: (949) 766-9896
Email: TomCasey@tomcaseylaw.com

Attorneys for Jason M. Rund
Chapter 7 Bankruptcy Trustee

**Signed and Filed: June 4, 2024**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

7

8

9

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

10

11

12

13

14

15

16

17

18

In re

E. LYNN SCHOENMANN,

              Debtor(s).

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 22-30028-DM

Chapter 7

**ORDER GRANTING APPLICATION OF
CHAPTER 7 TRUSTEE JASON M. RUND
TO EMPLOY AND COMPENSATE REAL
ESTATE CO-AGENTS (COLDWELL
BANKER RESIDENTIAL BROKERAGE
AND DESERT SANDS REALTY)**

(No Hearing Required)

19

20

21

22

23

24

25

26

27

28

     Upon consideration of the Chapter 7 Trustee Jason M. Rund's ("Trustee") Application to

Employ and Compensate Real Estate Co-Agents William Friedman ("Mr. Friedman") of

Coldwell Banker Residential Brokerage and Steve Enlow ("Mr. Enlow") of Desert Sands Realty

("Application") in this Chapter 7 bankruptcy case, to market and sell 25380 Green Oaks Court,

Idyllwild, CA 92549 and the adjoining vacant lot ("Idyllwild Property") pursuant to the Listing

Agreement and Addendum as submitted as an Exhibit to the Application, it appearing that

William Friedman and Steve Enlow are qualified to act as Co-Agents for the Trustee, and it

appearing that the employment of the Co-Agents would be in the best interests of the estate, that

Co-Agents are disinterested and represents no interest adverse to the estate, and good cause

1

therefor appearing:

IT IS HEREBY ORDERED that:

1.      The Trustee's Application is approved.

2.      The Trustee is hereby authorized to employ Mr. Friedman of Coldwell Banker Residential Brokerage and Mr. Enlow of Desert Sands Realty as his real estate co-agents pursuant to the terms of the Listing Agreement and Addendum under 11 U.S.C. §328 of the Bankruptcy Code to perform the services set forth in the Application.

3.      Mr. Friedman, Mr. Enlow, Coldwell Bank Residential Brokerage, and Desert Sands Realty shall not represent anyone other than the Trustee with respect to the sale of the Idyllwild Property.

4.      Coldwell Bank Residential Brokerage and Desert Sands Realty are authorized to receive compensation for its services in the Listing Agreement and Addendum directly from the proceeds of the sale of the Idyllwild Property.

5.      The Court shall retain exclusive jurisdiction to resolve any disputes regarding this employment or the Listing Agreement and Addendum.

**\*\*\*END OF ORDER\*\*\***

2

COURT SERVICE LIST

Coldwell Banker Residential Brokerage
1608 Montana Ave.
Santa Monica, CA 90403

Desert Sands Realty
78000 Fred Waring Drive, Ste. 205
Palm Desert, CA 92211

3

# Notice Recipients

District/Off: 0971–3          User: admin                    Date Created: 6/4/2024

Case: 22–30028               Form ID: pdfeoc                Total: 3

**Recipients of Notice of Electronic Filing:**

ust          Office of the U.S. Trustee / SF          USTPRegion17.SF.ECF@usdoj.gov

                                                                        TOTAL: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

Coldwell Banker Residential Brokerage          1608 Montana Ave.          Santa Monica, CA 90403

Desert Sands Realty          78000 Fred Waring Drive, Ste. 205          Palm Desert, CA 92211

                                                                        TOTAL: 2

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the City of Mission Viejo, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 26400 La Alameda, Suite 210, Mission Viejo, California 92691.

On **November 7, 2024,** I served the documents named below on the parties in this action as follows:

DOCUMENT(S) SERVED: **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) APPROVING SALE OF REAL PROPERTY LOCATED AT 25380 GREEN OAKS COURT AND ADJOINING LOT 20, IDYLLWILD, CALIFORNIA PURSUANT TO 11 U.S.C. SECTIONS 363(b), (h), (i), and (j); (2) APPROVING STIPULATION BETWEEN THE TRUSTEE AND EXECUTOR STUART SCHOENMANN; (3) APPROVING COMPENSATION OF REAL ESTATE BROKER; (4) APPROVING OVERBID PROCEDURES; (5) APPROVING DISTRIBUTION OF SALE PROCEEDS; (6) FOR A GOOD FAITH FINDING PURSUANT TO 11 U.S.C. SECTION 363(m); AND (7) WAIVER OF THE STAY RULE 6004(h); MEMORANDUM OF POINTS AND AUTHORITIES; CONCURRENTLY FILED DECLARATIONS OF CHAPTER 7 TRUSTEE JASON M. RUND, CPA DONALD T. FIFE, BROKER STEVE ENLOW, AND PROPOSED BUYER DAVID D. HERTZING & TERRIE R. HERTZING LIVING TRUST IN SUPPORT**

SERVED UPON: **SEE ATTACHED SERVICE LIST**

**[X]** **(TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF))** The foregoing document will be served by the court via NEF and hyperlink to the document. On **November 7, 2024,** I checked the CM/ECF docket for this case and determined that the persons on the following page are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated on the following page.

**[X]** **(BY MAIL)** I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Mission Viejo, California.  I am readily familiar with the practice of the Law Office of Thomas H. Casey, Inc. for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.

**[X]** **(BY EMAIL SERVICE)** I served the foregoing document by e-mail service to the person(s) on the following page.

**[X]** **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**[X]** **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on **November 7, 2024**, at Mission Viejo, California.

/s/Kathy Driggers
Kathy Driggers

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Bachecki, Crom & Co., LLP    JCrom@bachcrom.com**
- **Nathan D. Borris    nateborris@gmail.com, BorrisNR94995@notify.bestcase.com**
- **Frank Busch    ef-fhb@coblentzlaw.com, pallister@wvbrlaw.com**
- **Thomas Casey    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com**
- **Kimberly S. Fineman    kfineman@fhlawllp.com**
- **Stephen D. Finestone    sfinestone@fhlawllp.com**
- **Miriam E. Hiser    mhiser@hiserlaw.com**
- **Loren Kieve    lk@kievelaw.com**
- **Anthony B. Leuin    aleuin@sflaw.com, stimmerman@sflaw.com**
- **Patricia H. Lyon    phlyon@frenchlyontang.com, mwoodward@frenchandlyon.com**
- **Garry Alan Masterson    BnkEcf-CA@weltman.com, gmasterson@weltman.com**
- **Brent D. Meyer    brent@meyerllp.com**
- **Office of the U.S. Trustee / SF    USTPRegion17.SF.ECF@usdoj.gov**
- **Audrey Pak    audrey.pak@usdoj.gov**
- **Corina Pandeli    corina.pandeli@usdoj.gov, ustp.region15@usdoj.gov,tiffany.l.carroll@usdoj.gov,abram.s.feuerstein@usdoj.gov**
- **Jason M Rund    jrund@srlawyers.com**
- **Joshua L. Scheer    jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com**
- **Wayne A. Silver    ws@waynesilverlaw.com, ws@waynesilverlaw.com**
- **Michael St. James    ecf@stjames-law.com**
- **Christopher D. Sullivan    csullivan@sullivanblackburn.com, AJTorio@sullivanblackburn.com**
- **Reilly Wilkinson    rwilkinson@scheerlawgroup.com, rwilkinson@ecf.courtdrive.com**
- **Jennifer C. Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com**

**TO BE SERVED VIA US MAIL:**

**Interested Parties**

United States Bankruptcy Court
Attn: Hon. Dennis Montali
450 Golden Gate Avenue, 18th Floor
Mailbox 36099
San Francisco, CA 94102

**Debtor**

E. Lynn Schoenmann
81 Pinheiro Circle
Novato, CA 94945

**Interested Parties**

Coldwell Banker Residential Brokerage
1608 Montana Avenue
Santa Monica, CA 90403

Desert Sands Realty
78000 Fred Waring Drive, Suite 205
Palm Desert, CA 92211

Keller Williams Luxury Homes
47100 Washington Street, Suite 101
La Quinta, CA 92253

Riverside County Treasurer – Tax Collector
4080 Lemon Street
Riverside, CA 92501

**TO BE SERVED VIA EMAIL:**

**Counsel for Executor**

Alicia Gamez: alicia@gamezlaw.com