Entered on Docket
September 3, 2025
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed and Filed: September 3, 2025**



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case<br>) No. 22-30028-DM<br>)<br>) Chapter 7<br>) |
| E. LYNN SCHOENMANN, | |
| Debtor. | |
| | |
| STUART SCHOENMANN, in his capacity as Executor of the Probate Estate of Donn R. Schoenmann, | ) Adversary Proceeding<br>) No. 22-03105-DM<br>)<br>) Consolidated with Adv. Proc.<br>) No. 24-03035-DM |
| Plaintiff, | |
| v. | |
| E. LYNN SCHOENMANN, | |
| Defendant. | |
| | |
| E. LYNN SCHOENMANN, | ) Adversary Proceeding<br>) No. 24-03035-DM |
| Plaintiff, | |
| v. | |

Case: 22-30028    Doc# 750    Filed: 09/03/25    Entered: 09/03/25 19:48:42    Page 1 of 18

```
STUART SCHOENMANN, Individually )
and as Executor of the Probate   )
Estate of Donn R. Schoenmann,    )
CELESTE LYTLE; BETH SCHOENMANN;  )
and COLETTE SIMS,                )
                                 )
               Defendants.       )
_____)
```

**MEMORANDUM DECISION REGARDING CONSOLIDATED ADVERSARY PROCEEDINGS AND REMAINING MAJOR ISSUES IN BANKRUPTCY CASE**

**I.   INTRODUCTION[1]**

   These consolidated adversary proceedings and underlying bankruptcy case span many years, many counsel, and many interrelated requests, decisions, and appeals of those decisions.  This Memorandum Decision sets forth a brief history of relevant matters and disposes of significant outstanding issues in a way that allows for a possible conclusion of bankruptcy-related matters and a long-anticipated return to state court for final decision making on the rest.

   The outstanding issues to be disposed of are the following:

1. Dissolution of the Sequestration Order (Main Case Dkts. 156 and 315)[2] and protection of the funds in the accounts that are subject to the Sequestration Order ("Sequestered Funds"). The Sequestered Funds are:

   - The funds held in an ERISA qualified Profit-Sharing Plan ("Profit Sharing Plan") (First Republic Bank

---

[1]  The court has read all submissions from the parties, has made its own changes, and concludes that no further hearing is necessary and this Memorandum Decision and corresponding orders reflect its final decisions.

[2]  "Main Case" means Lynn's bankruptcy case, No. 22-30028.

-2-

account '1525) totaling approximately $388,959 as of August 2022, which are now held with the Bank of Marin certificate of deposit account '9318 in the amount of $393,166.55. Debtor[3] contends that these funds are not property of her bankruptcy estate and are immune from attack by anyone.

- The funds held in an Individual Retirement Account ("IRA") (First Republic Bank account '1556) totaling approximately $118,637 as of August 2022, which are now held in Bank of Marin certificate of deposit account '3533 in the amount of $132,214.97. Debtor contends these funds stem entirely from an inheritance from her brother, who passed away nine months after Donn. Petitioners contend they are entitled to these funds, and may seek a determination of their rights from the Probate Court without violating Debtor's discharge.

- The funds formerly held in Wells Fargo Bank account '1661, which was opened to deposit the IRA's Required Minimum Distribution ("RMD") for the year 2022,

---

[3] Most of those involved or relevant to this case share the same last name. For the sake of clarity, the court will refer to the parties in the following manner:
    a. E. Lynn Schoenmann: "Debtor" or "Lynn."
    b. The late Donn Schoenmann and his probate estate: "Donn" or "probate estate."
    c. Stuart Schoenmann, personally and as executor of the probate estate; state court probate petitioners Celeste Lytle, Beth Schoenmann, and Collette Sims: "Stuart Schoenmann," "Stuart," or, for clarity's sake, collectively, "Petitioners."

totaling $23,070.03 (Main Case Dkt. 314). These funds are now held in a Bank of Marin certificate of deposit account in the amount of $19,384.88.

- The funds formerly held in Bank of Marin certificate of deposit account '0799, which was opened to deposit the 2023 RMD of the IRA in the amount of $18,959.81 (Main Case Dkt. 630), now held in a Flagstar Bank certificate of deposit account in the amount of $18,405.65.

- The funds formerly held in the Bank of Marin certificate of deposit account '9279, which was opened to deposit the 2024 RMD of the IRA in the amount of $18,405.65 (Main Case Dkt. 640), now being held in a Flagstar Bank certificate of deposit account in the amount of $23,068.14.[4]

2. Possible division in favor of the probate estate of the cash on hand currently held by the chapter 7 Trustee, which is comprised of:

- $922,482.08 from the sale of three pieces of real property previously co-owned by Debtor and Donn's probate estate. That amount is 50% of the net sale proceeds, less Debtor's allowed and paid Homestead exemption, with the other 50% already having been paid to Donn's estate pursuant to stipulations to move forward with those sales.

---

[4] The court notes, without further commentary, the discrepancies between the amount of each year's RMD at the time of deposit and listed by Debtor in her Response (AP No. 22-3105 Dkt. 58).

-4-

- $20,000 of cash paid by the Petitioners for certain appellate rights previously held by the Trustee.
- $73,982.19 ($92,397.58 minus $18,415.39 from a Business DIP Account since abandoned by the Trustee) collected by the Trustee while administering the bankruptcy.

The court will take each issue, along with the critical history behind them, in turn.

## II. Preliminary Concerns

For the benefit of any future state or federal court audience, the court briefly describes certain critical concepts that are relevant to the bankruptcy process, the Main Case and these consolidated adversary proceedings.

When an individual files bankruptcy, most of that person's assets become **property of the estate** ("POE") by virtue of Section 541.[5] Some of that individual's assets, however, are excluded from POE because of some other law such as ERISA. In this case the significant property so excluded is the Profit-Sharing Plan.

An individual debtor is entitled to carve out from POE assets that may be claimed as **exempt** under Section 522. Creditors and the Trustee are entitled to object to those exemptions.

---

[5] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-5-

The Petitioners timely filed objections to Lynn's claimed exemptions; the Trustee did not.

A point of potential confusion is that in practice, debtors sometimes list property that never became POE in their bankruptcy schedules with their exemptions, as there may not be any other convenient place to identify assets they assert as their own, even though those assets, not being POE, cannot be exempted from the bankruptcy estate because the assets were never in the bankruptcy estate to begin with.

Another point of confusion may arise when a debtor claims as exempt, assets that individual does not even own. A creditor, to protect its position, will object to the claimed exemption because the debtor has no right to that asset at all, the creditor contending that it is neither POE nor the debtor's property that did not become POE.

A chapter 7 trustee or other interested party may seek to **abandon** POE that is burdensome or of inconsequential value pursuant to Section 554. Section 554(c) clarifies that property that is properly scheduled under Section 521(a)(1) and not otherwise administered is abandoned to the debtor upon closing of the bankruptcy case. That section is silent on the impact on claimed exemptions that have been objected to prior to abandonment by someone other than the Trustee, as is the situation here.

Another point of possible confusion here has to do with **cash collateral.** Under Section 363(a), cash collateral is defined as cash or cash equivalent, and the proceeds thereof, in which both the bankruptcy estate and another entity claim an

Case: 22-30028   Doc# 750   Filed: 09/03/25   Entered: 09/03/25 19:48:42   Page 6 of 18

interest. The most common example of cash collateral is rent from a real property in which the mortgage contains a clause assigning the rents to the mortgage creditor. The term is not interchangeable with any cash that is either owned by the debtor, or that a creditor asserts is owned by the creditor and wrongfully being retained by the debtor.

**III. Relevant Case History**

Lynn and Donn were married from 1993 until Donn's death in 2018. Upon Donn's passing in 2018, a probate was opened and the Petitioners challenged the validity of a Post-Marital Agreement ("PMA") that granted the right of survivorship to Lynn in nearly all community property held by the couple during the marriage. On December 27, 2021, after a ten-day trial, the probate court entered a Tentative Decision and concluded that the PMA was a product of undue influence by Lynn against Donn, that Lynn had abused Donn, and that the PMA was invalid as a result. The result of that Tentative Decision meant that at the time of Donn's death, Lynn only owned her 50-percent share of the community, with the other 50-percent going to Donn's probate estate to be divided among his heirs.

Prior to the Tentative Decision becoming final, on January 14, 2022, Lynn filed bankruptcy. Almost immediately, Petitioners sought relief from the automatic stay of Section 362(a) to allow the Tentative Decision to become final and to complete the remainder of the probate litigation against Lynn (Main Case Dkt. 24).

-7-

After a hearing on the request for relief from stay held on March 10, 2022, the court continued the matter to April without explicitly granting or denying the request.

At the same time Lynn fought the request for relief from stay, she requested permission from the court to hire special appellate counsel to seek a "prompt appeal of the Tentative Decision." (Main Case Dkt. 45). The court granted the request (Main Case Dkt. 49).

Lynn also sought the employment of more special litigation counsel (Main Case Dkt. 54), to work with her probate court counsel in anticipation of filing an adversary proceeding to determine the extent of ownership of Lynn claimed to be POE. Petitioners opposed, and the court ultimately granted the request (Main Case Dkt. 64). At the same hearing, the court also deferred granting relief from stay in favor of determining the extent of POE via the forthcoming adversary proceeding.

On May 16, 2022, Lynn filed Adversary Proceeding No. 22-3024 to determine the extent of ownership of four pieces of real property she claimed were owned by her at the time of bankruptcy: a residence and adjoining lot located in Idyllwild, California ("Idyllwild Property"); a residence located in Mill Valley, California ("Mill Valley Property"); and a condominium located in Scottsdale, Arizona ("Scottsdale Property"). Ultimately, the court determined that the joint tenancy deeds were void, the real properties were held as tenants in common at the time of Donn's death (and later at the time Debtor filed bankruptcy) (the "Quiet Title Judgment"), and that the real properties were subject to administration in Lynn's bankruptcy

-8-

(AP No. 22-3024, Dkts. 21-22). The court's Quiet Title Judgment was affirmed on appeal to the District Court. By that time, the case had been converted, and the chapter 7 Trustee stood in Lynn's shoes as the proper appellant. The Trustee appealed the District Court's decision to the Ninth Circuit, and he later voluntarily dismissed his appeal after he sold his appellate rights to Petitioners. The sale proceeds are part of the cash on hand currently held by the Trustee as described above.

On June 2, 2022, Petitioners filed an objection to Lynn's claims of exemptions (Main Case Dkt. 82). In her bankruptcy schedules, Lynn claims exemptions in the entire amount of the following accounts:

| ACCOUNT | STATED VALUE |
|---|---|
| First Republic '1556 IRA | $135,561.16 |
| First Republic '1525 | $445,436.60 |
| First Republic '3581 | $48,651 |
| First Republic '1460 Aho Family Trust | $244,744.40 |

The first two accounts are subject to the Sequestration Order described below, while the second two are not.

On June 24, 2022, Lynn filed a Motion for Authority to Use Specified Cash Accounts (Main Case Dkt. 96).[6] That Motion sought authority to use cash in two Well Fargo accounts that were not subject to the exemption objection and not subject to the later entered Sequestration Order. The cash in those accounts, according to Lynn, consisted of post-petition earned income and the proceeds of a COVID Economic Injury Disaster Loan.

---

[6] Debtor referred to "cash", not "cash collateral", but the docket text referring to the Motion uses the term cash collateral".

-9-

The Small Business Administration objected (Main Case Dkt. 112). That objection was resolved (Main Case Dkt. 136) and is not relevant to the remaining disputes between Lynn and Petitioners or the Trustee and Petitioners.

Petitioners also objected and requested further relief in a "Motion To Prohibit Or Condition Debtor's Use Of Cash Collateral And For Adequate Protection" (Main Case Dkt. 104) even though Petitioners did not have a specific interest in cash collateral. In response and after the court indicated that sequestering funds until the probate estate's ownership could be established was appropriate, Lynn filed an Adequate Protection Proposal (Main Case Dkt. 150). That Adequate Protection Proposal offered to sequester the funds in her Profit-Sharing Plan and her IRA with a waiver of any exemption or any comparable right should the Sequestered Funds be distributed to the probate estate. The Adequate Protection Proposal also made clear Lynn was unwilling to sequester the funds in the Aho Family Trust. The Adequate Protection Proposal ends with the line "cash is fungible, and Lynn's proposal adequately protects any interest the court believes should be protected."

After the Adequate Protection Proposal was filed and another hearing on the matter was held, the parties agreed to, and the court entered, the Sequestration Order (Main Case Dkt. 156). In that Order, Lynn stipulated to not use the Sequestered Funds until a later date, when probate issues were further resolved. The Sequestration Order states at Paragraph 3, "This Order specifically acknowledges Debtor's offer that, should the Court subsequently determine it necessary and appropriate to

-10-

Case: 22-30028   Doc# 750   Filed: 09/03/25   Entered: 09/03/25 19:48:42   Page 10 of 18

require a distribution of the Sequestered Funds, the Debtor will waive any exemption or comparable right which might impede implementation of such determination."

Paragraph 5 of the Sequestration Order further states: "Nothing contained in this Order or the relief granted by it shall be deemed to implicate or rule upon the merits or substance of the contentions of the Debtor or of Stuart Schoenmann. This Order is entered as an exercise of the Court's plenary control over the administration of the above estate." The Sequestration Order was later expanded to encompass the 2022 RMD distribution of IRA funds (Main Case Dkt. 315), the 2023 RMD (Main Case Dkt. 630), and the 2024 RMD (Main Case Dkt. 640).

On September 6, 2022, Petitioners filed Adversary Proceeding No. 22-3015, which is part of these consolidated adversary proceedings. The underlying complaint sought an accounting of the amount and location of Donn's separate property being held by Lynn, as well as former community personal property, cash, and rents that belonged to Donn's probate estate that were being held by Lynn. The complaint also sought delivery of Donn's separate property and all former community property, cash, and rents that belonged to Donn's estate. Lynn and the Petitioners agreed to continue a scheduled status conference to allow two other related adversary proceedings (one not relevant to this Memorandum Decision) to conclude. That continuance lasted until March 2024.

Meanwhile, on April 24, 2023, Lynn filed Adversary Proceeding No. 23-3017 to sell the Mill Valley Property. Documents related to the sale were filed both in Adversary

-11-

Proceeding No. 23-3017 and the Main Case. Ultimately, the court approved a sale in August 2023, with 50% of the net sale proceeds, or $1,064,468.94, being paid to the probate estate (See Main Case Dkt. 340, AP No. 23-3017 Dkt. 25).

On September 7, 2023, the case was converted to chapter 7 and the Trustee commenced carrying out his duties in administering the bankruptcy estate.

On March 22, 2024, the court held a hearing that encompassed a request by Lynn to dissolve the Sequestration Order (Main Case Dkt. 485) and doubled as a status conference in consolidated Adversary Proceeding No. 22-3015.

On March 27, 2024, the court authorized the sale of the Scottsdale Property (Main Case Dkt. 523). That authorization included approval of a stipulation between the Trustee and Stuart that the probate estate would receive fifty percent of net sale proceeds (Main Case Dkt. 499).

On April 1, 2024, the court approved the Trustee's request to abandon any interest (if any) the bankruptcy estate may have had in the Profit Sharing Plan (Main Case Dkt. 526). That approval made clear that the abandonment did not affect the Sequestration Order in any way.

On September 16, 2024, Lynn filed Adversary Proceeding No. 24-3035, also part of this consolidated proceeding, seeking a determination that the Profit Sharing Plan and IRA are both the sole and separate property of Lynn and for a dissolution of the Sequestration Order.

On December 11, 2024, the court granted the Trustee's request to abandon any interest the bankruptcy estate had in the

-12-

IRA and the 2022 and 2023 RMDs (Main Case Dkt. 630), though they remained subject to the Sequestration Order.

The same day, the court entered an Order Consolidating Adversary Proceedings 22-3105 and 24-3035 (Main Case Dkt. 632)

On December 18, 2024, the court authorized the sale of the Idyllwild Property (Main Case Dkt. 633). That authorization included approval of a stipulation between the Trustee and Stuart that the probate estate would receive fifty percent of net sale proceeds (Main Case Dkt. 606).

On August 5, 2025, the Trustee filed a motion to abandon several things, including, any interest the bankruptcy estate may have in the Aho Family Trust account (Main Case Dkt. 742).

In short, the bankruptcy estate no longer has (or will soon no longer have), or otherwise has not claimed an interest in any of the above-listed accounts, any other tangible and intangible assets and there is no more real property to administer.

The amounts in the accounts that are also subject to the Sequestration Order are dealt with in Part A of the Discussion that follows. The remaining funds, and any other assets are dealt with in Part C. The issue regarding the $922,482.08 in real estate sale proceeds and other miscellaneous moneys held by the Trustee are dealt with in Part B.

**IV. DISCUSSION**

    A.    The Sequestration Order

The Sequestration Order maintained the status quo, much the way a traditional provisional remedy, the preliminary injunction, frequently operates. By preserving the status quo between Lynn and the Petitioners as to administration of the

-13-

probate estate, the court did not decide the merits of either side's contention, namely whether some or all the Sequestered Funds were exempt or not, were POE or not, or were part of the probate estate.  At that time, the court's contemplation was that those questions would be decided by it, and no other court, because this court imposed the status quo via the Sequestration Order, contrary to Petitioners, who wanted to return to state court, and contrary to Lynn, who wanted free access to and use of funds that she either contended were exempt or were immune (per ERISA) from any challenge by the Trustee or Petitioners because they were not POE at all.

The court notes that at a recent hearing held on July 18, 2025, one of Petitioners' counsel analogized the Sequestered Funds to funds subject to a secured claim.  But even that assumes a perfected interest, another issue not resolved to date. No such perfected security interest or other sort of equitable property interest has been determined prior to or after Lynn's bankruptcy filing.

The status quo has been maintained through the administration of this bankruptcy, and the appropriate forum for any tracing and determination of who would own or be entitled to the funds subject to the Sequestration Order or other assets that have or will be abandoned is now the probate court.  The status quo was maintained in lieu of sending the parties back to the probate court in 2022, and Lynn voluntarily chose the accounts subject to the Sequestration Order despite the character of those accounts to allow her bankruptcy to proceed.  The status quo no longer should be maintained by this court, but

by the probate court to make those final determinations. There is no longer any bankruptcy purpose to be served.[7] There is no longer any Gordian Knot to unravel or sever.

B. <u>Distribution of the Real Estate Proceeds</u>

The Petitioners contend that due to Lynn's conduct prior to Donn's death and described in the probate court's Tentative Decision, that Donn's probate estate actually owns more than fifty percent of former community property, including the proceeds of the real property sales. Thus, the Petitioners apparently claim an entitlement to more proceeds from the real estate sales described above, even though the probate estate received fifty percent of the net sale proceeds at the time of each of those approved sales. There is also a question of whether the Petitioners are entitled to any portion of the Trustee's cash on hand, aside from the $20,000 Stuart paid directly for the appellate rights described above.

What the Petitioners seek to do is ignore the law of the case that Petitioners themselves helped to craft. Lynn's bankruptcy filing froze in time the parties' respective rights. The music stopped then. There had not been any previous determination by the probate court that Donn's probate estate was entitled to more than half of the former community property

---

[7] The court notes that Lynn, via her counsel, has mentioned at various hearings in seeking to dissolve the Sequestration Order, that there are tax consequences to be borne with any distributions from the IRA and Profit-Sharing Plan. Should the Petitioners prevail, those tax consequences are Lynn's to bear. She is the one who made those specific accounts available for the Sequestration Order, even noting the fungibility of money at the time. She could have picked different accounts that did not have tax consequences if money had to be distributed.

-15-

at the time of his death.  The court is not inclined to overturn the law of the case at the Trustee's expense.

The Trustee wants to proceed to determine his rights are superior in the funds he holds and should be able to do so.

If the probate court determines that Lynn owes Petitioners anything because no community property vested in Lynn upon Donn's death due to her alleged wrongdoings as set forth in the Tentative Decision, then that is a pre-petition debt that Lynn has discharged.  The time to object to discharge has passed, as have the Section 523(a)(2), (4), and (6) deadlines.  There is no deadline for other avenues of 523 the Petitioners may wish to explore. None is dealt with here.

C. <u>The Disputed Accounts Not Subject to the Sequestration Order</u>

The court clarifies that whatever rights Petitioners may claim in the accounts or other assets that have been subject to Lynn's claimed exemptions and their objections that were not subject to the Sequestration Order, have not been dealt with simply because the Trustee has abandoned any interest in those accounts or other assets.

What follows the Trustee's abandonment (or his non-objection to Lynn's claimed exemptions) is that the parties retain whatever rights they have.  The court cannot determine the Debtor is immune to any claim of ownership of the funds in those accounts or other assets just because the Trustee has abandoned his interest in them.  However, as noted above, those accounts are not subject to the Sequestration Order, and any determination that certain amounts in those accounts may be owed

-16-

to the probate estate is likely a discharged claim at this point.

To the extent there is a stay in place for Lynn and Petitioners to finalize who owned what former community property at the time of Donn's passing, it is being lifted by the Order that accompanies this Memorandum Decision.

**V. <u>Conclusion</u>**

The court is concurrently issuing two orders consistent with this Memorandum Decision. The first directs that the court will proceed to adjudicate the Trustee's objections to the Petitioners' claim to a portion of assets he holds for distribution based upon their alleged secured or ownership entitlement to some of those assts ahead of normal distribution in accordance with Section 726. The Trustee will not object to the amount of Petitioners' unsecured claims. His objections will be in the nature of a declaration of rights in the funds he holds, as interpreted by the record in this case from the January 14, 2022 date of bankruptcy, et. seq., including orders, stipulations, and other events. Any discovery will also be limited to post-January 14, 2022 events.

The court regrets that the parties were unable, or unwilling, to agree on a vehicle for moving the Sequestered Funds to either a jointly controlled account or some other device to ensure their safekeeping pending final agreement among the parties or a final ruling by the probate court on issues relating to those funds. It will give them one more chance to do so under their own control.

1     Debtor is to maintain the Sequestered Funds in their
2 present locations and accounts for thirty days after the entry
3 of the Order that accompanies this Memorandum Decision. If
4 there is no agreement for moving them then the court retains
5 jurisdiction to control them and Debtor is ordered to transfer
6 them by cashier's check(s) or by certified bank check(s) payable
7 to the Clerk, U. S Bankruptcy Court, Northern District of
8 California, 450 Golden Gate Avenue, Mail Box 36099, San
9 Francisco, CA 94102. They will be deposited to the Court's
10 Registry, to be held in interest-bearing account, subject to
11 withdrawal in accordance with further order of the court and
12 with the court's normal procedures for the disbursement of funds
13 from the Court's Registry. See FRBP 7067.
14     The court is aware of the possible adverse tax consequences
15 this may involve, but those are natural consequences that follow
16 from the decision made years ago to provide them for the
17 purposes they were put there in the first place.
18     It will also abstain and grant relief from stay for
19 determination in the probate court as to all issues presented in
20 the Sequestration Order and regarding the other assets and
21 dismiss the above captioned Consolidated Adversary Proceeding.

                        **END OF MEMORANDUM DECISION**